## THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

|  |  |
|---|---|
| KAMIL KUKLINESKI, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>BINANCE CAPITAL MANAGEMENT CO., LTD. d/b/a BINANCE, BAM TRADING SERVICES d/b/a BINANCE.US and JUMIO CORPORATION,<br><br>        Defendants. | Civil Action No. 3:21-cv-01425-SPM<br><br>Judge:    Hon. Stephen P. McGlynn |

## DEFENDANT BAM TRADING SERVICES INC.'S MOTION TO DISMISS
## THE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant BAM Trading Services Inc. ("BAM") respectfully submits this motion to dismiss the "Class Action Complaint" (the "Complaint") against BAM with prejudice and the following incorporated memorandum of law in support thereof.

## I.      **PRELIMINARY STATEMENT**

This Court should dismiss the Complaint against BAM with prejudice.  Plaintiff brings claims against BAM for violations of the Illinois Biometric Information Privacy Act ("BIPA") and unjust enrichment.  On their face, these claims are fatally defective.  Plaintiff ignores that by its express terms BIPA does not apply to financial institutions that are subject to the Gramm-Leach-Bliley Act of 1999 (the "GLBA").  BAM, which operates a trading platform that allows users to purchase and sell digital assets using (among other things) fiat currency (i.e., money), is just such a financial institution.  BAM is exempt from BIPA and, therefore, this Court should dismiss Plaintiff's BIPA claim – as well as his unjust enrichment claim, which rests on the same conduct and is derivative of the BIPA claim.  This Court need go no further.

But even if BAM were not exempt from BIPA (and it is), this Court should dismiss Plaintiff's BIPA claim against BAM for at least three additional reasons.  **First**, California law applies to Plaintiff's BIPA claim under BAM's governing Terms of Use, which are incorporated by reference into the Complaint.  Plaintiff brought his BIPA claim under Illinois (not California) law and, consequently, this Court should dismiss it.  **Second**, BIPA does not apply extraterritorially.  Plaintiff does not plead any facts showing that the alleged BIPA violation by BAM (which is headquartered in California and not a resident of Illinois) occurred primarily and substantially in Illinois and, as a result, this Court should dismiss his BIPA claim.  **Third**, the Complaint does not adequately allege that BAM violated BIPA.  Plaintiff asserts claims against three separate defendants – BAM, Binance Capital Management Co., Ltd. ("Binance"), and

Jumio Corporation ("Jumio") – but largely fails to plead which Defendant did what and instead lumps them together, leaving BAM and this Court to speculate as to BAM's alleged BIPA violation.  Accordingly, this Court should dismiss Plaintiff's BIPA claim.

Similarly, even if Plaintiff's unjust enrichment claim were not derivative of his BIPA claim (and it is), this Court should dismiss his unjust enrichment claim against BAM because it is not adequately alleged.  Although Plaintiff alleges that BAM received fees from users of its trading platform, he fails to plead facts showing that BAM did not earn those fees (by, for example, providing trading services) or that those fees were obtained to the detriment of users because they resulted from biometric information (or for any other reason).  Therefore, this Court should dismiss Plaintiff's unjust enrichment claim.

Finally, even if this Court does not dismiss Plaintiff's BIPA and unjust enrichment claims against BAM (and it should), this Court should dismiss his class action allegations against BAM as a matter of law.  By agreeing to BAM's Terms of Use, Plaintiff waived all rights to assert class action claims against BAM because the Terms of Use include an express "Class Action Waiver."  The Supreme Court, as well as Illinois and California courts, have repeatedly enforced such class action waivers.  Thus, if Plaintiff's claims against BAM proceed at all, they can proceed only on an individual basis.

For all of these reasons and those that follow, this Court should dismiss the Complaint against BAM with prejudice.[1]

## II.   **LEGAL STANDARD**

To survive a motion to dismiss, a complaint must "state a claim for relief that is plausible on its face."  Diedrich v. Ocwen Loan Servicing, LLC, 839 F.3d 583, 588 (7th Cir. 2016) (citing

---

[1] BAM joins the arguments of Jumio and Binance in their respective motions to dismiss to the extent applicable to BAM.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  A plaintiff "must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8."  Bell v. City of Chicago, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).  Plaintiff does not satisfy the pleading requirements of Federal Rule of Civil Procedure 8.

## III.   ARGUMENT

### A.     This Court Should Dismiss Plaintiff's BIPA Claim against BAM.

This Court should dismiss Plaintiff's BIPA claim against BAM because (1) BIPA does not apply to financial institutions; (2) California law, not Illinois law, applies as to BAM; (3) BIPA does not apply extraterritorially; and (4) the Complaint does not adequately allege that BAM violated BIPA.

#### 1.     This Court Should Dismiss Plaintiff's BIPA Claim Against BAM Because BIPA Does Not Apply to Financial Institutions Such as BAM.

By its express terms, BIPA does not apply to financial institutions that – like BAM – are subject to the GLBA.  "Nothing in [BIPA] shall be deemed to apply **in any manner** to a financial institution . . . subject to Title V of the [GLBA] and the rules promulgated thereunder." 740 ILCS 14/25(c) (emphasis added).  "[This] exemption is explicit in that BIPA does not apply to financial institutions already subjected to GLBA."  Stauffer v. Innovative Heights Fairview Heights, LLC, 480 F. Supp. 3d 888, 903 (S.D. Ill. 2020).

"The General Assembly likely excluded financial institutions because they are already subject to a comprehensive privacy protection regime under federal law."  Bryant v. Compass Grp. USA, Inc., 503 F. Supp. 3d 597, 601 (N.D. Ill. 2020).  Specifically, the GLBA reflects "the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those

customers' nonpublic personal information."  15 U.S.C. § 6801(a).  "Title V of the GLBA

contains a number of provisions designed to protect the privacy of 'nonpublic personal

information' . . . that consumers provide to financial institutions."  Trans Union LLC v. FTC,

295 F.3d 42, 46 (D.C. Cir. 2002) (citing 15 U.S.C. §§ 6801-6809).

Title V of the GLBA defines a "financial institution" as "any institution the business of

which is engaging in financial activities as described in section 1843(k) of Title 12."  15 U.S.C.

§ 6809(3)(A).  Pursuant to Section 1843(k), the "activities . . . considered to be financial in

nature" include (1) "[l]ending, exchanging, transferring, investing for others, or safeguarding

money or securities" and (2) "any activity that the [Board of Governors of the Federal Reserve

System (the "Federal Reserve Board")] has determined, by order or regulation that is in effect on

November 12, 1999, to be so closely related to banking or managing or controlling banks as to

be a proper incident thereto."  12 U.S.C. §§ 1843(k)(4)(A), (F).

Courts have understood the term "financial institution" as used in the GLBA to have a

broad reach.  "The GLBA does not exhaustively list the types of 'financial institutions' subject to

its coverage."  FTC v. AmeriDebt, Inc., 343 F. Supp. 2d 451, 456 (D. Md. 2004).  Rather,

'"financial institution' is defined 'very broadly' under the GLBA and includes several entities

not traditionally recognized as financial institutions."  Id. at 457.  BAM is a "financial

institution" under the GLBA for at least two separate and independent reasons.

**First**, BAM is engaged in activities that are "financial in nature," including exchanging,

transferring, and safeguarding money.  12 U.S.C. § 1843(k)(4).  The Complaint alleges: "[BAM]

is a digital asset marketplace or cryptocurrency exchange which allows Illinois account holders

using the company's platform to purchase various cryptocurrencies including, but not limited to,

Bitcoin [and] Ethereum."  (Compl. ¶ 4.)[2]  The Complaint continues:  "Plaintiffs and Class

members . . . create[ed] accounts and us[ed] [BAM's] software and exchange platform for

purchases relating to digital assets."  (Id. ¶ 62; see also id. ¶¶ 7, 17.)  BAM's Terms of Use as

last updated on April 26, 2021, which are incorporated by reference into the Complaint (see id.

¶ 38),[3] show that BAM is engaged in activities that are "financial in nature," including

exchanging, transferring, and safeguarding money:

- "BAM operates a platform ('Platform') that provides you with Trading Services for digital assets (also known as a 'cryptocurrency' or 'virtual currency'), which is issued, stored, and/or transferred based on the protocol of a computer network known as a blockchain or a public transaction ledger ('Digital Assets').  You may use the Platform to execute the following trades: (1) sale of a Digital Asset for fiat or another Digital Asset; and (2) purchase of a Digital Asset with fiat or another Digital Asset."  (Ex. A. at 4-5.)

- "You can purchase Digital Asset(s) using: (1) Digital Asset(s) or fiat monies in your BAM Account(s); (2) a valid bank account in the name that matches your Account(s); or (3) a credit or debit card in the name that matches your Account(s) ('Payment Methods'). . . . Digital Asset(s) that you purchase will be deposited into your Account(s) as soon as the funds have settled to BAM, which may take up to five Business Days if the purchase was made via a bank account, credit, or debit card."  (Id. at 8-9.)

- "You authorize BAM to credit or debit (or provide settlement information to third parties for the purposes of the third-party crediting or debiting) your Digital Assets and/or fiat monies from your Account(s) in accordance with your Instruction.  We reserve the right not to effect any Transaction if you have insufficient fiat monies or Digital Assets in your Account(s) (i.e. less than the required amount to settle the Transaction and to pay all the fees associated with the Transaction)."  (Id. A at 10.)

- "U.S. dollar deposits stored in your Account(s) are held in pooled custodial accounts at one or more U.S. banks.  Our custodial accounts have been established with the intention that they be eligible for Federal Deposit Insurance Corporation ('FDIC') pass-through, up

---

[2] Cryptocurrency is a "digital or virtual currency that is not issued by any central authority" and "is designed to function as a medium of exchange."  Black's Law Dictionary (11th ed. 2019).
[3] (Declaration of Ezekiel L. Hill in Support of BAM Trading Inc.'s Motion to Dismiss the Complaint ("Hill Decl."), Ex. A (BAM's Terms of Use as last updated on April 26, 2021).)  This Court may consider BAM's Terms of Use in deciding this motion to dismiss because they are incorporated by reference.  "[T]he incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment."  Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012).

to the per-depositor coverage limit then in place (currently $250,000 per eligible individual). . . . It is our policy to comply with the regulations and other requirements of the FDIC for pass-through deposit insurance."  (Id. at 5.)

BAM's Trading Rules, which are part of BAM's Terms of Use, continue:[4]

- "The BAM Platform settles the Fiat Currency payments in all Filled Orders on a periodic basis, by debiting and crediting the relevant Fiat Currency balances in the Linked Fiat Wallet(s)."  (Ex. B § 2.9.3.)

- "Subject to any Limits imposed by BAM and the terms set out in any Linked Wallet Addendums, a Trader may withdraw some or all of its Fiat Currency from the Linked Fiat Wallet(s)."  (Id. § 3.3.2.)

BAM's Terms of Use, including its Trading Rules, demonstrate that BAM is engaging in "financial activities" and, therefore, is a "financial institution" under the GLBA.

**Second**, BAM is engaged in "[an] activity that the [Federal Reserve Board] has determined, by order or regulation that is in effect on November 12, 1999, to be so closely related to banking or managing or controlling banks as to be a proper incident thereto."  12 U.S.C. § 1843(k)(4)(F).  The Federal Reserve Board determined by orders in effect on November 12, 1999, that "money transmission services are closely related to banking."  As it stated: "[F]or the reasons discussed in this order and the Board's previous orders, the Board concludes that domestic money transmission services are closely related to banking."  Norwest Corp., 81 Fed. Res. Bull. 1130, 1131 (1995), reprinted at 1995 WL 736783, at *2; see also 12 C.F.R. § 225.86(a)(2)(v) ("money transmission" is an "[a]ctivit[y] determined to be closely related to banking" (citing Norwest, 81 Fed. Res. Bull. 1130 (1995))).

---

[4] (Hill Decl., Ex. B (BAM's Platform Trading Rules as last revised on Sept. 18, 2019 ("Trading Rules")).)  This Court may consider BAM's Trading Rules in deciding this motion to dismiss because they are part of BAM's Terms of Use, which are incorporated by reference into the Complaint.  (Ex. A at 1 ("[The Trading Rules] are incorporated into these Terms."); see supra n.3.)

BAM provides domestic money transmission services.  BAM is "a money services business registered with the U.S. Department of the Treasury's Financial Crimes Enforcement Network ['FinCEN']."  (Ex. A at 6.)[5]  More specifically, BAM is registered with FinCEN (and holds similar registrations in 34 states and the District of Columbia) as a "money transmitter," the designation for an entity that "provides money transmission services," which include "the acceptance of currency, funds, or other value that substitutes for currency from one person and the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means."  31 C.F.R. 1010.100(ff)(5).[6]

For all of these reasons, BAM is a financial institution subject to the GLBA.  Indeed, BAM's Privacy Policy as last updated on July 7, 2021, which is incorporated by reference into the Complaint (see Compl. ¶ 39),[7] expressly states that "the personal information we collect, use, or disclose about . . . consumers who initiate or complete the process of applying for financial products or services . . . is subject to the federal Gramm-Leach-Bliley Act and implementing regulations."  (Ex. D at 6.)

---

[5] (See also Hill Decl., Ex. C (BAM's MSB Registration Status Information dated Jan. 31, 2022).) This Court may take judicial notice of BAM's FinCEN registration via its MSB Registration Status Information, which is a matter of public record and available on FinCEN's website, in deciding this motion to dismiss.  "[A] district court [may] take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment," which "allow[s] courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard."  Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080-81 (7th Cir. 1997); see also Laborers' Pension Fund v. Blackmore Sewer Constr., Inc., 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of bank ownership information on the FDIC website).
[6] As a registered money services business, BAM also is a "financial institution" pursuant to FinCEN's regulations promulgated under the Bank Secrecy Act.  See 31 C.F.R. 1010.100(t)(3) (defining a "financial institution" to include "[a] money services business").
[7] (Hill Decl., Ex. D (BAM's Privacy Policy as last updated on July 7, 2021).)  This Court may consider BAM's Privacy Policy in deciding this motion to dismiss because it is incorporated by reference into the Complaint.  (See supra n.3.)

Therefore, this Court should dismiss Plaintiff's BIPA claim against BAM because BIPA does not apply to financial institutions such as BAM.[8]

### 2. This Court Should Dismiss Plaintiff's BIPA Claim against BAM Because California Law, Not Illinois Law, Applies as to BAM.

California law applies as to BAM. BAM's Terms of Use provide: "These Terms shall be construed in accordance with and governed for all purposes by the laws and public policy of the State of California applicable to contracts executed and to be wholly performed within such state." (Ex. A at 19.) Since California law governs, this Court should dismiss Plaintiff's BIPA claim against BAM, which is brought under Illinois law.

### a. Plaintiff's BIPA Claim Is Subject to the Choice-of-Law Provision in the Terms of Use.

A federal court exercising diversity jurisdiction – including, as here, under the Class Action Fairness Act – applies the choice-of-law rules of the state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Cunningham Charter Corp. v. Learjet, Inc., 592 F.3d 805, 806 (7th Cir. 2010) (the Class Action Fairness Act "creates federal diversity jurisdiction"). Therefore, this Court should apply the choice-of-law rules of Illinois.

Under Illinois law, non-contract claims that are "dependent upon [a] contract are subject to [the] contract's choice-of-law clause regardless of the breadth of the clause." Medline Indus. Inc. v. Maersk Med. Ltd., 230 F. Supp. 2d 857, 862 (N.D. Ill. 2002). While "[t]he issue of whether a claim is 'dependent' upon a contract most often arises in the context of tort claims,"

---

[8] It is precisely because BAM is a financial institution that BAM verifies users like Plaintiff as part of the account creation process. "Financial institutions that fail to implement effective anti-money laundering programs . . . can face severe civil, regulatory, and criminal penalties." JM Adjustment Servs., LLC v. J.P. Morgan Chase Bank, N.A., No. 16-10630, 2018 WL 1168940, at *5 (E.D. Mich. Mar. 6, 2018). As the Complaint acknowledges: "The purpose of [BAM's] identify verification process is to avoid fraudulent activity or unauthorized users from accessing [BAM's] exchange." (Compl. ¶ 9.) BAM's Terms of Use explain BAM's "Identity Verification" process. (Ex. A at 6; see also infra at pp. 9-10.)

the "same analytical approach should apply to determine whether [a statutory claim] is dependent upon a contract." Johnson v. Diakon Logistics, No. 16-CV-06776, 2021 WL 4477893, at *6 (N.D. Ill. Sept. 30, 2021).  A non-contract claim is dependent upon a contract if "(1) the claim alleges a wrong based on the construction and interpretation of the contract, (2) the . . . claim is closely related to the parties' contractual relationship, or (3) the  . . . claim could not exist without the contract."  Amakua Dev. LLC v. Warner, 411 F. Supp. 2d 941, 955 (N.D. Ill. 2006); see also Miyano Mach. USA, Inc. v. Zonar, No. 92 C 2385, 1994 WL 233649, at *2 (N.D. Ill. May 23, 1994) ("[I]t [is] appropriate to apply contract provisions to . . . claims closely related to the parties' contractual relationship." (internal quotation marks omitted)). Plaintiff's BIPA claim is dependent upon BAM's Terms of Use for at least two reasons.

**First**, Plaintiff's BIPA claim is closely related to BAM's Terms of Use.  The Complaint alleges that "[BAM] and Jumio obtained biometric identifiers and information from users of its exchange, including facial geometry data, without first notifying them, without disclosing the length for collection, storage and use of this information and without obtaining proper written consent."  (Compl. ¶ 14.)  The Terms of Use govern the data received from a user to confirm his/her identity when creating an account, as well as the process by which those data are collected, recorded, and stored.  For example, under the heading "Account Creation," the Terms of Use provide for (among other things) "Identity Verification":

> As a money services business registered with [FinCEN], BAM is required to, among other things, identify users on our Platform.  You agree to provide us with the information we request for the purposes of identity verification and the detection of money laundering, terrorist financing, fraud, or any other financial crime and permit us to keep a record of such information for at least six years . . . The information we request may include certain personal information . . . .

(Ex. A at 6.)  Identity verification as part of account creation is at the heart of Plaintiff's BIPA claim and governed by the Terms of Use.  As a result, Plaintiff's BIPA claim is closely related to

the Terms of Use.  Indeed, Plaintiff himself concedes that his BIPA claim is related to the Terms

of Use, referring to the Terms of Use in his Complaint.  (<u>See</u> Compl. ¶ 38 ("This Terms of Use

document makes no mention of the collection of biometric data by its application or website.").)

    **Second**, Plaintiff's BIPA claim could not exist without BAM's Terms of Use.  The

Complaint alleges that – "during the account creation process" – "[P]laintiff . . . and other

Illinois users and account holders with [BAM] had their biometric data collected, recorded and

stored to confirm their identities in order to trade on the cryptocurrency exchange."  (<u>Id.</u> ¶¶ 24-

30.)  The Terms of Use dictate the account creation process.  For example, under the heading

"Account Creation," the Terms of Use provide for the "Setup" of accounts: "Full use of our

Services requires that you create an Account(s) by: (1) providing us with information such as

your full name, email address . . . , and such other information as we may require; (2) selecting a

strong password; and (3) accepting these Terms."  (Ex. A. at 5.)  The Terms of Use then provide

for "Identity Verification" as described above, which requires users "to complete certain

verification procedures before [they] are permitted to use the Services."  (<u>Id.</u> at 6.)  Since the

account creation process is governed by the Terms of Use and Plaintiff's BIPA claim turns on

the account creation process, Plaintiff's BIPA claim could not exist without the Terms of Use.

    For all of these reasons, Plaintiff's BIPA claim against BAM is subject to the choice-of-

law provision in the Terms of Use.

        **b.**    **This Court Should Enforce the Choice-of-Law Provision in the Terms of Use.**

    Under Illinois law, a choice-of-law provision is enforced "unless it would **both** violate

fundamental Illinois public policy **and** Illinois has a materially greater interest in the litigation

than the chosen State."  <u>Midway Home Entm't, Inc. v. Atwood Richards, Inc.</u>, No. 98 C 2128,

1998 WL 774123, at *2 (N.D. Ill. Oct. 29, 1998) (emphasis added; internal quotation marks

omitted).  Neither is the case here.

**First**, the choice-of-law provision applying California law does not violate fundamental Illinois public policy.  Under Illinois law, a court "should not refuse to apply the law of a foreign State, however unlike its own, unless it is contrary to pure morals and abstract justice, or unless enforcement would be of evil example and harmful to its people."  Potomac Leasing Co. v. Chuck's Pub, Inc., 156 Ill. App. 3d 755, 759 (2d Dist. 1987).  "The fact that a different state may provide certain statutory rights for a plaintiff which are not available under the chosen state's law does not invalidate a choice-of-law provision as contrary to public policy."  WTM, Inc. v. Henneck, 125 F. Supp. 2d 864, 868 (N.D. Ill. 2000).  "Illinois courts . . . have enforced parties' choice-of-law provision even though a foreign state's [law] left the Illinois residents no recourse."  Midway, 1998 WL 774123, at *3 ("[T]he choice-of-law provision requiring the application of New York law bars the Illinois Consumer Fraud Act claim.").

To state the obvious, the application of California law is not "contrary to pure morals and abstract justice" or "of evil example and harmful to [Illinois'] people."  Id.  "[T]he public policy of [Illinois] must be sought in its constitution, legislative enactments and judicial decisions," and "there is no Illinois legislative enactment, judicial decision, or constitutional provision which articulates a public policy against applying [California law]."  Id. at *2, *3.  Moreover, California law itself protects biometric information.  The California Consumer Privacy Act of 2018 (the "CCPA") – like BIPA – regulates the collection, use, and disclosure of biometric information.  Cal. Civ. Code § 1798.100 et seq.  For example, the CCPA enumerates "consumer rights to request information regarding personal information collected by businesses," id. § 1798.110(a), and requires businesses to "inform consumers as to the categories of personal information to be collected and the purposes for which the categories of personal information

shall be used," id. § 1798.100(b).  That "personal information" includes "[b]iometric

information," id. § 1798.140(o), which is "an individual's physiological, biological, or

behavioral characteristics," including but not limited to "imagery of the . . . face . . . from which

an identifier template . . . can be extracted, " id. § 1798.140(b).  Further, in November 2020,

California voters passed an amendment to the CCPA, the California Privacy Rights Act of 2020

(the "CPRA"), which expands and enhances the CCPA.  See generally Cal. Civ. Code

§ 1798.100, et seq. (operative Jan. 1, 2023).  The CPRA contains additional regulations

concerning biometric information, including categorizing biometric information as "sensitive"

information entitled to heightened protections.  See generally id.  Indeed, it is well-recognized

that California is at the forefront of privacy regulation in the United States.[9]  Since the choice-of-

law provision in the Terms of Use applying California law does not violate fundamental Illinois

public policy, this Court should enforce it.[10]

     **Second**, Illinois does not have a materially greater interest in this litigation than

California.  California has an interest in the application of California law to California

---

[9] See, e.g., Daisuke Wakabayashi, California Passes Sweeping Law to Protect Online Privacy, N.Y. Times (Jun. 28, 2018) (calling the CCPA "one of the most significant regulations overseeing the data-collection practices of technology companies in the United States").

[10] Although the court in In re Facebook Biometric Information Privacy Litig., 185 F. Supp. 3d 1155 (N.D. Cal. 2016), held that a choice-of-law provision that would have applied California law to a BIPA claim was unenforceable under California's choice-of-law rules, that decision is not only non-binding (and, in BAM's view, wrongly decided) but also inapplicable.  **First**, the Facebook court concluded that application of California law would violate fundamental Illinois public policy because "California has no law or policy equivalent to BIPA" and, "[u]nlike Illinois, California has not legislatively recognized a right to privacy in personal biometric data." Id. at 1169-70.  That is no longer true.  In 2018 – two years after the Facebook decision – California **did** legislatively recognize a right to privacy in personal biometric data.  (See supra at p. 12.)  **Second**, the Facebook court applied California's choice-of-law rules, not Illinois'.  Id. at 1168.  As the Facebook court recognized, that was "potentially significant" to its decision because "Illinois uses a 'pure morals and abstract justice' consideration" while California does not.  Id. at 1167 n.1 (quoting Potomac Leasing, 156 Ill. App. 3d at 759).

businesses.  "[C]ourts have noted the importance of enforcing choice of law provisions for businesses with nationwide consumers to limit the risk and expenses of litigation under different laws in every state."  Abat v. Chase Bank USA, N.A., 738 F. Supp. 2d 1093, 1096 (C.D. Cal. 2010).  That is certainly true here.  Both BAM and Jumio maintain their principal places of business in California with users that cross state lines.  (See Compl. ¶¶ 17-18.)  In contrast, Illinois' interest is in protecting its citizens' rights under BIPA, but that is not enough to establish a materially greater interest than California.  Indeed, Illinois courts consistently enforce choice-of-law provisions even when it results in Illinois citizens losing statutory rights under Illinois law.  (See supra at p. 11.)

Since the choice-of-law provision in the Terms of Use would not violate fundamental Illinois public policy and Illinois does not have a materially greater interest in this litigation than California, this Court should enforce the choice-of-law provision and apply California law.  This Court should dismiss Plaintiff's BIPA claim – which is brought under Illinois, not California, law – against BAM.  See, e.g., M. Block & Sons, Inc. v. IBM Corp., No. 04 C 340, 2004 WL 1557631, at *7 (N.D. Ill. July 8, 2004) ("Because New York law controls . . . , Plaintiff cannot bring an Illinois statutory claim against Defendant.").

### 3.    This Court Should Dismiss Plaintiff's BIPA Claim against BAM Because BIPA Does Not Apply Extraterritorially.

An Illinois "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute."  Avery v. State Farm Mut. Auto. Ins. Co., 216 Ill. 2d 100, 184-85 (2005) (quoting Dur-Ite Co. v. Indus. Comm'n, 394 Ill. 338, 350 (1946)).  "[W]ith regard to [BIPA], there is no sign of that sort of intent from the Illinois legislature."  Rivera v. Google Inc., 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017).  As a result, "[BIPA] is not authorized to have extraterritorial effect."  Id.  "BIPA violations must occur in Illinois in order

for plaintiffs to obtain any relief." McGoveran v. Amazon Web. Servs., Inc., C.A. No. 20-1399-LOS, 2021 WL 4502089, at *3 (D. Del. Sept. 30, 2021).

A violation is deemed to occur in Illinois when "the circumstances that relate to [it] occur primarily and substantially in Illinois." Avery, 216 Ill. 2d at 187.  To satisfy this standard, the "majority of circumstances relating to the alleged violation" must have occurred in Illinois. Landau v. CNA Fin. Corp., 381 Ill. App. 3d 61, 65 (1st Dist. 2008).  The Complaint alleges only the following connection to Illinois: Plaintiff is an Illinois resident who used BAM's application to create an account.  (Compl. ¶¶ 15, 17.)  That allegation does not adequately allege that the majority of the circumstances giving rise to BAM's alleged BIPA violation occurred in Illinois.

Neither Plaintiff's residency nor his ability to use BAM's application to create an account establishes that the alleged BIPA violation occurred primarily and substantially in Illinois.  "A plaintiff's residency is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality."  McGoveran, 2021 WL 4502089, at *4 (collecting cases). Nor is Plaintiff's ability to use BAM's application enough: "The only connection to Illinois was [the victim's] status as a resident and [defendant's] remote solicitation of [the victim].  That was insufficient to allow Illinois regulatory law . . . to apply to [defendant]."  Stroman Realty, Inc. v. Allison, 2017 IL App (4th) 150501-U, 2017 WL 2589983, at *7 (4th Dist. 2017).[11]

McGoveran is directly on point.  There, Illinois residents alleged that non-residents "violated BIPA by collecting, possessing, redisclosing, profiting from, and failing to safeguard their biometric identifiers and biometric information, including their voiceprints."  2021 WL

---

[11] The Complaint also makes the formulaic recitation that "Defendants' acts and omissions, at relevant times, have occurred in the course of trade or commerce in the State of Illinois." (Compl. ¶ 51.)  That naked legal conclusion may not be considered on a motion to dismiss. "While factual allegations must be accepted as true, legal conclusions may not be considered." Agnew v. Nat'l Collegiate Athletic Ass'n, 683 F.3d 328, 334 (7th Cir. 2012) (citing Iqbal).

4502089, at *2 (internal quotation marks omitted).  The plaintiffs asserted that their biometric identifiers and information were extracted from "calls originating from Illinois, from Illinois citizens, and from . . . Illinois phone numbers." Id. at *4.  The court dismissed the BIPA claim because the "[p]laintiffs failed to allege conduct that occurred primarily and substantially in Illinois." Id.  The court held that the "location of the caller does not . . . say anything about the location where the rest of the conduct occurred." Id.  Since the defendants were "located wholly outside Illinois," the complaint provided "no indication . . . that [d]efendants did anything in Illinois." Id.  In attempt to save their BIPA claim, the plaintiffs urged "the adoption of a rule" holding that, "under BIPA, as long as the source of the biometric data is Illinois, that's enough to establish liability." Id. at *6.  The court rejected that "overly broad and ultimately untenable" rule, finding that it "flies in the face of Illinois cases holding that a plaintiff's residency is not enough to survive a motion to dismiss based on extraterritoriality." Id.  The court concluded: "BIPA does not apply extraterritorially, but the complaint alleges an extraterritorial application of BIPA." Id.

The same is even more true here.  The Complaint does not plead any facts plausibly showing that BAM's alleged BIPA violation occurred in Illinois, much less primarily and substantially in Illinois.  The Complaint concedes that BAM (and each of the other Defendants) is a non-resident and has a principal place of business outside of Illinois.  (Compl. ¶¶ 16-18, 21.) Plaintiff alleges only that he is a resident of Illinois who used BAM's application to create an account.  (See supra at p. 14.)  That is not enough.  See McGoveran, 2021 WL 4502089, at *6; Vulcan Golf, LLC v. Google Inc., 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (finding the allegation that the plaintiffs were Illinois residents insufficient to "plausibly suggest" that the alleged violation "occurred primarily and substantially in Illinois").

Therefore, this Court should dismiss Plaintiff's BIPA claim against BAM because BIPA does not apply extraterritorially and the Complaint does not plead facts showing that BAM's alleged BIPA violation occurred primarily and substantially in Illinois.

> **4.      This Court Should Dismiss Plaintiff's BIPA Claim against BAM Because the Complaint Does Not Adequately Allege That BAM Violated BIPA.**

Pursuant to the basic pleading requirements of Federal Rule of Civil Procedure 8, BAM – like any defendant – "is entitled to know what [it] did that is asserted to be wrongful." <u>Bank of Am., N.A. v. Knight</u>, 725 F.3d 815, 818 (7th Cir. 2013).  "Notice pleading and vague allegations of collective conduct don't go hand-in-hand; these types of lumped allegations are inadequate under Federal Rule of Civil Procedure 8." <u>Patel v. Fendler</u>, No. 15-CV-0366-MJR-SCW, 2016 WL 336017, at *1 (S.D. Ill. Jan. 28, 2016).  Indeed, details about the specific conduct of each defendant "are not merely nice-to-have features of an otherwise-valid complaint; to pass muster under [Rule 8], a claim to relief must include such particulars." <u>Atkins v. Hasan</u>, No. 15 CV 203, 2015 WL 3862724, at *2 (N.D. Ill. June 22, 2015).

The Complaint largely fails to plead which Defendant did what, leaving BAM and this Court to speculate as to BAM's alleged BIPA violation.  As discussed above, the Complaint alleges that "[P]laintiff . . . and other Illinois users and account holders with [BAM] had their biometric data collected, recorded and stored to confirm their identities in order to trade on the cryptocurrency exchange."  (Compl. ¶ 24.)  The Complaint, however, lumps together Defendants with respect to the alleged collection, recording, and storage of the biometric data.  For example:

- "[BAM] and Jumio obtained biometric identifiers and information from users of its exchange, including facial geometry data, without first notifying them, without disclosing the length for collection, storage and use of this information and without obtaining proper written consent."  (<u>Id.</u> ¶ 14.)

- "Binance, with assistance and control from or as an alter ego of [BAM], was the entity that directly collected [Plaintiff]'s and other Illinois [BAM] users' biometric information and identifiers or is otherwise responsible for the collection of this biometric data."  (Id. ¶ 40.)

- "Defendants recorded, collected, and stored [Plaintiff]'s and other Class members' 'biometric information', based on 'biometric identifiers' used to identify them, through the use of facial scanning and mapping and as defined by [BIPA]."  (Id. ¶ 52.)

On their face, such allegations do not identify the conduct by BAM (as distinct from that by other Defendants) with respect to the alleged collection, recording, and storage of biometric data – i.e., the conduct that constitutes BAM's alleged BIPA violation.  The Complaint "without any details about who did what . . .  is inadequate" and "does not propound a plausible contention that a particular person," much less BAM, "did anything wrong."  Knight, 725 F.3d at 818.

Therefore, this Court should dismiss Plaintiff's BIPA claim against BAM because the Complaint does not adequately allege that BAM violated BIPA.[12]

## B.    This Court Should Dismiss Plaintiff's Unjust Enrichment Claim against BAM.

This Court should dismiss Plaintiff's unjust enrichment claim against BAM because (1) it is derivative of the BIPA claim and (2) the Complaint does not adequately allege it.

**First**, Plaintiff's unjust enrichment claim is derivative of his BIPA claim.  "Unjust enrichment is not a separate cause of action under Illinois law."  Horist v. Sudler & Co., 941 F.3d 274, 281 (7th Cir. 2019).  "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim – and, of course, unjust enrichment will stand or fall with the related claim."  Cleary v.

---

[12] In an apparent effort to sidestep this fatal defect, the Complaint makes a series of naked legal conclusions that expressly lump together Defendants.  (Compl. ¶19.)  Those conclusory allegations do not state a claim (see supra at pp. 2-3, n.11) and only highlight the Complaint's failure to plead each Defendant's – and specifically BAM's – alleged BIPA violation.

Philip Morris Inc., 656 F.3d 511, 517 (7th Cir. 2011).  Plaintiff's unjust enrichment claim depends on the same conduct as his BIPA claim.  Therefore, this Court should dismiss Plaintiff's unjust enrichment claim alongside the dismissal of his BIPA claim.

**Second**, the Complaint does not adequately allege an unjust enrichment claim against BAM.  To plead an unjust enrichment claim, "a plaintiff must allege that the defendant has [1] unjustly retained a benefit [2] to the plaintiff's detriment, and that [3] defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."  HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 131 Ill. 2d 145, 160 (1989).  Plaintiff does not.

As an initial matter, Plaintiff does not plead facts showing that BAM unjustly retained a benefit.  The Complaint alleges that "Binance and [BAM] received monetary gain via payment of fees from its users and account holders for the purchase and transfer of digital assets and cryptocurrency."  (Compl. ¶ 61.)  Plaintiff does not plead that BAM failed to provide the trading services for which it allegedly collected fees.  Plaintiff cannot claim unjust enrichment "if he received from the other that which it was agreed the . . . other should give in return."  Cummings by Techmeier v. Briggs & Stratton Ret. Plan, 797 F.2d 383, 390 (7th Cir. 1986).

Moreover, Plaintiff does not plead facts showing a detriment.  The Complaint alleges that "Plaintiffs and Class members, to their detriment, have conferred benefits on Defendants Binance and [BAM] by creating accounts and using their software and exchange platform for purchases relating to digital assets."  (Compl. ¶ 62.)  Plaintiff does not identify the "benefits" conferred on BAM to his "detriment" but, whatever those "benefits" may be, they are not related to biometric information.  The Complaint does not plead any facts showing that BAM's fees resulted from the biometric information of Plaintiff (or anyone else).  Indeed, Plaintiff himself admits that the "payment of fees from [BAM's] users and account holders" was "for the

-18-

purchase and transfer of digital assets and cryptocurrency." (Id. ¶ 61.)

Further, Plaintiff does not plead facts showing that BAM's retention of fees from users and account holders violates fundamental principles of justice, equity, and good conscience. The Complaint alleges that "Defendants' retention of fees from sales and transfers to and for Plaintiff and the Class violates fundamental principles of justice, equity, and good conscience." (Id. ¶ 63.) Plaintiff's formulaic recitation of this element is legally inadequate. (See supra at pp. 2-3, n.11.) The Complaint does not plead any facts showing that it violates fundamental principles for BAM to retain the fees that it has received from users trading on its platform.

For all of these reasons, this Court should dismiss Plaintiff's unjust enrichment claim against BAM.

### C.     This Court Should Dismiss Plaintiff's Class Action Allegations against BAM Because Plaintiff Has Waived Any Class Action Claims against BAM.

This Court should dismiss Plaintiff's class action allegations against BAM because, by agreeing to BAM's Terms of Use, Plaintiff has waived all rights to assert class action claims against BAM. See, e.g., Niiranen v. Carrier One, Inc., No. 20-CV-06781, 2022 WL 103722, at *9 (N.D. Ill. Jan. 11, 2022) (dismissing class allegations based on a class action waiver). The Terms of Use expressly "govern [Plaintiff's] access and use of the Services provided by BAM." (Ex. A at 1.) The Terms of Use contain the following "Class Action Waiver":

> TO THE EXTENT PERMITTED BY LAW, ALL CLAIMS MUST BE BROUGHT IN A PARTY'S INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, COLLECTIVE ACTION, OR REPRESENTATIVE PROCEEDING. UNLESS BOTH YOU AND BAM AGREE, NO . . . JUDGE MAY CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS . . . . BY AGREEING TO THESE TERMS, YOU ACKNOWLEDGE THAT YOU AND BAM EACH WAIVE THE RIGHT TO . . . PARTICIPATE IN A CLASS ACTION.

(Ex. A at 20.)

The Supreme Court has repeatedly held that such class action waivers are enforceable.

See, e.g., Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1628 (2018); Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 238 (2013); AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 352 (2011). So have Illinois and California courts.  See, e.g., Kinkel v. Cingular Wireless LLC, 223 Ill. 2d 1, 41 (2006); Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 364 (2014).

This Court should do the same – especially on the facts here.  The Terms of Use (1) directed users to read them "carefully" and explained that "[t]he Terms you see below are important" because (among other things) "they . . . [c]ontain a class action waiver" (Ex. A at 1); (2) informed users that "[t]hese Terms . . . constitute valid and legally binding obligations, enforceable against you in accordance with their respective terms" (id. at 12); and (3) confirmed with users that "[y]ou agree that you have read, understand, and accept these Terms by signing up for an Account(s) . . . with BAM" and that, "[i]f you do not agree with these Terms, do not access or use the Services, Sites, or any other aspect of our business" (id. at 1).

Therefore, this Court should dismiss Plaintiff's class action allegations against BAM because Plaintiff has waived any class action claims against BAM.  If Plaintiff's claims against BAM proceed at all, they can proceed only on an individual basis.[13]

## IV.    CONCLUSION

For all of these reasons, this Court should dismiss the Complaint against BAM with prejudice.

---

[13] Alternatively, this Court should strike Plaintiff's class action allegations against BAM pursuant to Federal Rule of Civil Procedure 12(f) for the same reasons.  See, e.g., Hill v. Wells Fargo Bank, N.A., 946 F. Supp. 2d 817, 832-33 (N.D. Ill. 2013) (striking class allegations where a class could not be maintained).

Dated:  January 31, 2022

Respectfully submitted

GOODWIN PROCTER LLP

*/s/ Daniel Roeser*
Daniel Roeser (admitted *pro hac vice*)
droeser@goodwinlaw.com
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: +1 212 813-8800
Fax: +1 212 355-3333

Ezekiel L. Hill (admitted *pro hac vice*)
ehill@goodwinlaw.com
**GOODWIN PROCTER LLP**
1900 N Street NW
Washington, DC 20036
Tel.: + 1 202 346-4000
Fax: + 1 202 346-4444

*Attorneys for Defendant BAM Trading
Services Inc.*

## CERTIFICATE OF SERVICE

I, Daniel Roeser, an attorney, hereby certify that, on January 31, 2022, I caused the foregoing to be electronically filed via the Court's CM/ECF system, which effected service on all counsel of record.


*/s/ Daniel Roeser*
Daniel Roeser