**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

KAMIL KUKLINSKI, individually and )
on behalf of all others similarly situated, )
                                  )
       Plaintiff, )
                                  )
v. )       Case No.:  3:21-cv-01425-SPM
                                  )
BINANCE CAPITAL MANAGEMENT )
CO., LTD. d/b/a BINANCE, BAM )
TRADING SERVICES INC. d/b/a )
BINANCE.US and JUMIO )
CORPORATION, )       JURY TRIAL DEMANDED
                                  )
       Defendants. )

## FIRST AMENDED CLASS ACTION COMPLAINT

NOW COMES Plaintiff KAMIL KUKLINSKI, individually and on behalf of all others similarly situated, by and through his attorneys, FREEARK, DENNIS, MURPHY & MOSKOP, P.C. and upon personal knowledge as to facts known to Plaintiff and otherwise upon information and belief following investigation of counsel, alleges as follows against Defendants BINANCE CAPITAL MANAGEMENT CO., LTD. d/b/a BINANCE, BAM TRADING SERVICES INC. d/b/a BINANCE.US and JUMIO CORPORATION:

### INTRODUCTION AND BACKGROUND

1.     Defendant Binance is a digital asset marketplace or cryptocurrency exchange which allows account holders using the company's platform to purchase over 500 different types of cryptocurrency. Binance was founded in 2017 by Changpeng Zhao. Binance is currently considered to be the world's largest cryptocurrency exchange by volume.

2.      A uniform definition of "cryptocurrency" is lacking, but it is sometimes referred to as "digital assets," "digital tokens" or occasionally just "crypto." Cryptocurrency is not legal tender in the United States. It is not considered "money" or a "security" and the Board of Governors of the Federal Reserve System has not defined the purchase and sale of cryptocurrency as being such a financial activity under the Gramm-Leach-Bliley Act.

3.      On or about June 2019, and due to increasing U.S. regulatory requirements, Binance began ending trade for U.S. customers. On June 13, 2019, Binance announced a partnership with BAM Trading Services Inc. to launch trading services for users within the United States.

4.      Together Binance and BAM Trading Services Inc. launched "Binance.US" for U.S. citizens in September 2019. Leaked documents reported by news outlets have since suggested that the formulation of Binance.US was an attempt by Changpeng Zhao and Binance to avoid U.S. regulations.[1] It has also been reported that Changpeng Zhao owns nearly 90% of Binance.US.[2]

5.      BAM Trading Services Inc. (hereafter "Binance.US") is a digital asset marketplace or cryptocurrency exchange which allows Illinois account holders using the company's platform to purchase various cryptocurrencies including, but not limited to,

---

[1] Michael del Castillo, *Leaked 'Tai Chi' Document Reveals Binance's Elaborate Scheme to Evade Bitcoin Regulators,* FORBES (October 29, 2020), https://www.forbes.com/sites/michaeldelcastillo/2020/10/29/leaked-tai-chi-document-reveals-binances-elaborate-scheme-to-evade-bitcoin-regulators/?sh=28e9aed22a92 (last visited February 18, 2022).

[2] Emily Flitter, *The World's Biggest Crypto Exchange Still Lacks U.S. Footing*, THE NEW YORK TIMES (August 19, 2021), https://www.nytimes.com/2021/08/19/business/binance-cryptocurrency-exchange-ipo.html (last visited February 14, 2022).

Bitcoin, Ethereum, Dogecoin, Chainlink, Cardano and many others.

6.      Binance and Binance.US collect fees and earn revenue for the purchase and sale of cryptocurrency by its account holders.

7.      In order to commence trading on the Binance.US exchange a user will typically download the application or "app" via Apple's App Store for iOS/iPadOS devices or via Google Play for Android based devices. Users may also simply visit the Binance.US website to sign up with a desktop computer or PC.

8.       Once the Binance.US app is downloaded or the website is visited, users must then create an account. To create an account, a user must first input personal and private information about their identity.  Private information which is requested by Binance.US will typically include items such as the user's full name, address, social security number and birthdate. Only after the user's private information is submitted and the user's identity verified, will an account be created which allows the user to trade and purchase on the Binance.US exchange.

9.      As part of its personal identity verification process the Binance.US website and mobile applications utilized the Jumio Corporation's (hereafter "Jumio") identity automation process. This process required in part, the taking of images of a user's driver's license or other state and federal photo identification and a "selfie" of the user to capture, analyze and compare biometric data of the user's facial features.

10.    The apparent purpose of the identity verification process is to avoid fraudulent activity or unauthorized users from accessing the Binance.US exchange.

11.     The collection and processing of a user's biometric data without proper

notice and consent as required by the Illinois Biometric Information Privacy Act (BIPA),

740 ILCS § 14/1 et seq. is unlawful.

12.     Except for surgery, there is no way to reassign someone's personal

biometric data. A person can obtain a new social security number, but not new facial

features for example, which makes the protection of, and control over, biometric data

particularly important. This is especially true considering there is an increasing trend in

the use of biometric information to obtain goods and services.

13.     The State of Illinois takes the privacy of biometric data seriously. Illinois

law requires companies such as Binance.US and Jumio to obtain written consent to

collect and store biometric identifiers, such as the mapping of an individual's facial

features, and the biometric information derived from it. Specifically, when these

identifiers include a "scan of hand or face geometry." 740 ILCS 14/10.

14.     Illinois law requires Binance.US and Jumio to 1) inform users that a

biometric identifier or biometric information is being collected or stored, 2) informs them

of the specific purpose and length or term for which a biometric identifier or information

is being collected, stored and used, and 3) receives a written release executed by the

user or subject of the biometric identifier or information.

15.     Binance, Binance.US, and Jumio obtained biometric identifiers and

information from users of the Binance.US exchange, including facial geometry data,

without first notifying them, without disclosing the length for collection, storage and use

of this information and without obtaining proper written consent- all of which constitute

violations of the law under BIPA.

## PARTIES, JURISDICTION AND VENUE

16.    Plaintiff Kamil Kuklinski resides in Cook County, Illinois.

17.    Binance is a foreign corporation which was initially founded in China in 2017, but later the company headquarters were moved to Japan. Due to the increasing regulations in Japan, Binance again relocated the company to Malta. However, Binance CEO Changpeng Zhao has publicly denied that Binance has a headquarters in Malta or the Cayman Islands and that the Binance company operates in a "decentralized manner."[3] Despite these claims, and on information and belief, Binance conducts business operations under Binance Capital Management Co., Ltd. which is a registered entity in the British Virgin Islands.

18.    BAM Trading Services Inc. d/b/a Binance.US is a foreign corporation headquartered in San Francisco, California and operates under the laws of the State of Delaware. The Binance.US online and/or mobile application is used to create an account for Illinois residents to trade digital assets on the Binance.US exchange. Binance.US claims that it is "powered by matching engine and wallet technologies licensed from the world's largest cryptocurrency exchange, Binance." The Binance.US application and website prompted users and potential users to input personal information into the application for purposes of identity verification.

19.    Jumio Corporation is a foreign corporation headquartered in Palo Alto, California and operates under the laws of the State of Delaware. The capture process for biometric identifiers and information integrated within the Binance.US application

_____

[3] Samuel Haig, *Malta Regulator Clarifies Legal Status of Binance*, COIN TELEGRAPH (February 28, 2020), https://cointelegraph.com/news/malta-regulator-clarifies-legal-status-of-binance, (last visited February 18, 2022).

utilized technology which was leased, owned, issued, created or otherwise implemented by Jumio Corporation which is the subject of this lawsuit. The Binance.US application and/or website displayed "Powered by Jumio" during the identity verification process.

20.    Each defendant acted as an aider, abettor and co-conspirator of the other defendant, or is obligated by law to be financially responsible for such conduct. In engaging in the conduct alleged herein, each defendant acted as the agent, employee, representative, partner or joint venture of the other defendant in the commission of the acts alleged herein, and acted within the course and scope of its duty as such agent, employee, representative, partner or joint venturer. The acts of each defendant were authorized or ratified by each other defendant, and together constitute a single and continuing course of conduct.

21.    Defendants have transacted business related to the matters complained of herein and have made or performed related contracts substantially connected with the State of Illinois.

22.    Per 735 ILCS 5/2-101, all defendants are nonresidents of the State of Illinois therefore an action may be commenced in any county.

## FACTUAL ALLEGATIONS

23.    Since at least 2018, Binance has worked in conjunction or partnered with Jumio Corporation to verify the identities of users on its exchange using "Liveness Detection for Web" and other methods.

24.    Jumio also partnered with Binance.US and integrated their technology within the Binance.US mobile application. When creating a new account, users of the application would be prompted to take a photograph of their state or federal

identification card followed by an additional prompt to take a unique type of "selfie" using the camera of their mobile, cellular or desktop device. This "selfie" would then be used to collect certain biometric identifiers and geometry of the user's facial features.

25.     The plaintiff Kamil Kuklinski (hereafter Kamil) and other Illinois users and account holders with Binance.US had their biometric data collected, recorded and stored to confirm their identities in order to trade on the cryptocurrency exchange.

26.     On or about March 15, 2021, Kamil downloaded the Binance.US iPhone application and created an account while he was present in Cook County, Illinois.

27.     During the account creation process, Kamil entered his personal information including his name, birthdate and home address.

28.     During the account creation process, Kamil and other Class members were prompted to review and accept a "Self-Directed Custodial Account Agreement" for an entity known as Prime Trust, LLC which had no reference to the collection of any biometric data.

29.     As part of the account creation and flow process, Kamil and other Class members were next prompted to take photographs of their driver's licenses. The user's camera was then activated. The text on the camera screen within the Binance.US application read "Scan Document," "Powered by Jumio," "Scan identity Card Front," and "Scan identity Card Back." Kamil and other Class members then submitted photographs of their driver's licenses.

30.      After submitting photographs of their driver's licenses, Kamil and other Class members were prompted to take photographs of their face. The text prompts on the camera screen within the Binance.US application stated "Capture your face" and

"Center your face in the frame and follow the on-screen instructions." At this time the user was not prompted with an option to return to a previous account creation stage. Once a user's face was close enough and positioned correctly within a provided oval shape, the screen would automatically flash and state "Scanning completed."

31.    The following screen briefly stated "Analyzing biometric data," "Uploading your documents" and "This should only take a couple of seconds, depending on your network connectivity."

32.    During the account creation process Kamil was not given proper notice from defendants that the images being taken with his iPhone would be used to capture and store his personal biometric data including facial geometry.

33.    Prior to providing his facial images, Kamil was not informed in writing by defendants that his biometric data would be collected, or the specific purpose and length of time for which his biometric data was being collected, stored and used by Binance.US and Jumio.

34.    Kamil did not sign a proper written release under BIPA, implied or otherwise, regarding the collection of his biometric information by Binance.US and Jumio.

35.    On or about May 25, 2021, the Binance.US Android and iOS/iPadOS applications were updated to version 2.4.5. These versions of the application included the following notification prior to activating the desktop or mobile camera device:

**By clicking "Continue" you consent to Jumio collecting and disclosing your biometric data pursuant to its <u>Privacy Policy</u>**

36.     Prior versions or iterations of the Binance.US software or applications did not display the aforementioned warning and notice to all prospective Illinois users and/or account holders.

37.     Jumio was referenced during the account creation and identity verification process with a phrase on the camera screen, written in small transparent font, which ambiguously stated "*Powered by Jumio.*"

38.     Jumio describes its own biometric data authentication process in a video on its website:

> "Here's how Jumio authentication works: when a new online account is created, Jumio captures a photo of the user's valid, government-issued ID, and the user takes a quick selfie that Jumio uses to create a baseline, biometric template.  Instantly, certified liveness detection analyzes the user's biometric template to prove they are a live person and not a spoof . . . . Now, any time the user needs to be authenticated, they simply take a selfie with the liveness check, generating a new biometric template that Jumio compares to the user's baseline template."[4]

39.     Illinois Binance.US users and account holders were not only made oblivious to how their biometric data was being collected and stored, but that Jumio was, in fact, a company that collected biometric data on behalf of Binance.US.

40.     Binance.US maintains a Terms of Use document on their website with a last known update of January 4, 2022. This Terms of Use document makes no mention of the collection of biometric data by its application or website. And in any event, Kamil and other Class members were not required to scroll through these Terms of Use during the account creation process and proper assent was not otherwise obtained.

_____
[4] https://www.jumio.com/use-case/high-risk-transactions/ (last visited February 15, 2022).

41.     Jumio maintains a Privacy Policy on their own website which makes reference to the collection of biometric data.  Included within that policy, Jumio states that "*Jumio makes the Services available to third parties for integration into those third parties' websites, applications, and online services.*"

42.     Jumio's Privacy Policy also states that "*to fully understand how your information will be handled when you use the Services, you must review not just this Policy, but also the privacy policy of the third party with whom you are dealing directly (the "Customer Data Controller")*."

43.     Binance.US maintains a Privacy Policy on their website with a last known update of July 7, 2021. This Privacy Policy makes no mention of the collection of biometric data by its application or website.

44.     Binance, with assistance and control from or as an alter ego of Binance.US, collected Kamil's and other Illinois Binance.US users' biometric information and identifiers or is otherwise responsible for the collection of this biometric data.

45.     Binance maintains a Privacy Policy on their website with a last known update of December 4, 2020. This Privacy Policy makes only a one sentence reference to biometric data and fails to disclose the purpose or length of term for which the data is being collected, stored, and used.

46.     Binance.US was a "Customer Data Controller" as identified within Jumio's Privacy Policy who failed to maintain a proper public privacy policy as required under BIPA and Illinois law.

47.    Jumio assisted in the capture and collection of the biometric data of Binance.US users and Jumio knew, or should have known, that Binance.US did not have a proper public Privacy Policy under BIPA.

## CLASS ALLEGATIONS

48.    Plaintiff brings this action pursuant to 735 ILCS § 5/2-801 on behalf of himself and the following Illinois class:

> All Illinois users and account holders whose facial and biometric data have been collected by the Binance.US applications, software and website.

To be expressly excluded from the Class, by request or notice, are Defendant's officers, directors, and employees, Plaintiff's counsel, and any member of the judiciary presiding over this action.[5]

49.    The Class is so numerous that joinder of all members is impracticable.

50.    Questions of fact or law are common to the Class, predominate over any questions affecting only individual members, and frame issues for class-wide adjudication, including, by way of example, as follows:

a)    Did Defendants have a practice of collecting or capturing Class members' biometric identifiers or information?

b)    Did Defendants provide notice to users of its application and website that biometric identifiers or information was being collected?

_____

[5] Plaintiff reserves the right to amend the class definition or allege subclasses.

c)     Did Defendants provide notice to users of its application and website regarding the specific purpose for which biometric identifiers or information was being collected?

d)     Did Defendants provide users of its application and website for what length of time their biometric identifier or information would be kept and stored?

e)     Did Defendants receive a valid written release from users of the Binance.US application and website prior to obtaining any biometric identifiers or information?

f)     Did Defendants share or distribute users' biometric data among themselves or other parties?

g)     Did Jumio advise Binance.US to prepare and maintain a proper Privacy Policy under the Illinois Biometric Information Privacy Act?

h)     Did Defendants' conduct violate the Illinois Biometric Information Privacy Act, 740 ILCS § 14/15(a)?

i)     Did Defendants' conduct violate the Illinois Biometric Information Privacy Act, 740 ILCS § 14/15(b)1?

j)     Did Defendants' conduct violate the Illinois Biometric Information Privacy Act, 740 ILCS § 14/15(b)2?

k)     Did Defendants' conduct violate the Illinois Biometric Information Privacy Act, 740 ILCS § 14/15(b)3?

l)     Have Defendants been unjustly enriched by their conduct?

51.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to said Class members.

52.     A class action provides a manageable method for fairly and efficiently adjudicating this controversy because, among other things, addressing the common issues in one action will aid judicial administration and many members of the Class cannot feasibly vindicate their rights by individual suit because the monetary value of their recoveries are outweighed by the burden and expense of litigating against corporate Defendants.

## CAUSES OF ACTION

53.     The facts and following causes are pleaded individually and on behalf of others similarly situated, and in the alternative to the extent permitted or required by applicable law.

## COUNT I

## VIOLATIONS OF ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT
### (Damages)
### (All Defendants)

54.     Plaintiff repeats and re-alleges the preceding paragraphs 1-53 as though fully set forth herein.

55.     The Illinois Biometric Information Privacy Act is a remedial statute designed to protect consumer privacy by requiring consent and disclosures associated with the handling of biometric identifiers and information, and particularly in the context of an individual's facial geometry. 740 ILCS § 14/5(g), 14/10.

56.    Codified in the statute is the Illinois Legislature's recognition of the importance of the public policy underpinning its enactment. E.g., 740 ILCS § 14/5(a), (c), (g).

57.    Defendants' acts and omissions, at relevant times, have occurred in the course of trade or commerce in the State of Illinois. Defendants are or have been a "private entity" in possession of Kamil's and other Class members' biometric identifiers and information, and they collected and captured the biometric identifiers and information within the meaning of the Act as set forth more fully above.

58.    As more fully set forth above, at relevant times Defendants recorded, collected, and stored Kamil's and other Class members' "biometric information", based on "biometric identifiers" used to identify them, through the use of facial scanning and mapping and as defined by the Illinois Biometric Information Privacy Act.

59.    Section 14/15(a) of the Illinois Biometric Information Privacy Act states:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

60.    In violation of Section 14/15(a), Defendants failed to create a sufficient biometric data privacy policy and/or failed to identify its location to provide notice to users of their software and website prior to the collecting of the biometric data, verifying the identification of the user, and prior to the creation of the users' accounts.

61.    Section 14/15(b) of the Illinois Biometric Information Privacy Act states:

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first: (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

62.    In violation of Section 14/15(b), Defendants have collected, captured, stored or obtained Kamil's and other Class members' biometric identifiers and biometric information, without:

    i.    informing Plaintiff and the Class in writing that the biometric identifiers or biometric information were being collected or stored;

    ii.    informing Plaintiff and the Class in writing of the specific purpose and length of term for which the biometric identifiers or biometric information were being collected, stored, and used;

    iii.    receiving a written release executed by Plaintiff and the Class.

63.    Defendants scanned the facial geometry and facial biometric identifiers of Kamil and other Class members, and knowingly caused their biometric identifiers and information to be collected and stored, without first obtaining the required written consent, without making the required written disclosures, and without revealing or identifying a required policy that explains, for example, a retention schedule and provides guidelines for permanently destroying biometric identifiers and information.

64.    Defendants' conduct is negligent and reckless.

65.     Defendants' conduct violated Plaintiff and the Class's rights under the Biometric Information Privacy Act, and they are entitled to the maximum applicable statutory damages provided under the Biometric Information Privacy Act.

## COUNT II

## UNJUST ENRICHMENT
**(Binance and Binance.US)**

66.     Plaintiff repeats and re-alleges the preceding allegations made in paragraphs 1-65 as though fully set forth herein.

67.     Defendants Binance and Binance.US received monetary gain via payment of fees from its users and account holders for the purchase and transfer of digital assets and cryptocurrency.

68.     Plaintiffs and Class members, to their detriment, have conferred benefits on Defendants Binance and Binance.US by creating accounts and using their software and exchange platform for purchases relating to digital assets.

69.     Defendants' retention of fees from sales and transfers to and for Plaintiff and the Class violates fundamental principles of justice, equity, and good conscience.

70.     Accordingly, Plaintiff and the Class seek restitution of monies that Defendants Binance and Binance.US received from such purchases and transfers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays that the Court grant the following relief:

a) Certify the Class, and designate Plaintiff as Class Representative and his counsel as Class counsel;

b) Find that Defendants have violated applicable law as set forth above;

   c)  Award damages to Plaintiff and the Class in the maximum amount

allowable under applicable law, including without limitation statutory

damages;

   d)  Award restitution of monies Defendants Binance and Binance.US received

from the sales and transfer of digital assets to Plaintiff and Class.

   e)  Award reasonable attorney's fees and costs.

**PLAINTIFFS DEMAND TRIAL BY JURY**

FREEARK, DENNIS, MURPHY & MOSKOP, P.C.

BY:   /s/ Joel D. Beckwith
JOEL D. BECKWITH
SHANE M. MOSKOP
115 W. Washington Street, P.O. Box 546
Belleville, IL 62222-0546
jbeckwith@freeark.com
smoskop@freeark.com
618-233-2686 - 618-233-5677(fax)

LYNCH CARPENTER, LLP

KATRINA CARROLL
KYLE SHAMBERG (application for admission pending)
111 W. Washington Street
Suite 1240
Chicago, IL 60602
katrina@lcllp.com
kyle@lcllp.com
312-750-1265 - 773-598-5609 (fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Alexander Southwell
*asouthwell@gibsondunn.com*
Jacob Kahn
*jkahn@rshc-law.com*
Attorneys for Binance Capital Management Co., Ltd.

Daniel P. Roeser
*droeser@goodwinlaw.com*
Ezekiel L. Hill
*ehill@goodwinlaw.com*
Attorneys for BAM Trading Services Inc.

Susan Fahringer
*sfahringer@perkinscoie.com*
Anna Mouw Thompson
*annathompson@perkinscoie.com*
Debra R. Bernard
*dbernard@perkinscoie.com*
Nicola Menaldo
*nmendalo@perkinsscoie.com*
Attorneys for Jumio Corporation

/s/ Joel D. Beckwith
JOEL D. BECKWITH
115 West Washington Street, P.O. Box 546
Belleville, IL  62220
jbeckwith@freeark.com
618-233-2686 - 618-233-5677 (fax)