**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | |
|---|---|
| KAMIL KUKLINSKI, individually, and on behalf of similarly situated individuals, | Civil Action No. 3:21-cv-01425-SPM |
| Plaintiff, | Hon. Stephan P. McGlynn |
| v. | |
| BINANCE CAPITAL MANAGEMENT CO., LTD. d/b/a BINANCE, BAM TRADING SERVICES INC. d/b/a BINANCE.US and JUMIO CORPORATION, | |
| Defendants. | |

**JUMIO CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED**
**COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 2

    A.    Kuklinski's allegations................................................................... 2

    B.    Kuklinski's claims against Jumio ................................................. 3

ARGUMENT ...................................................................................................... 3

    A.    Legal Standard .............................................................................. 3

    B.    Kuklinski's claims are barred by BIPA's GLBA exception. ............. 4

        1.    BAM is a financial institution subject to the GLBA............... 4

        2.    The GLBA exception bars Kuklinski's claims against Jumio. .............. 6

    C.    Kuklinski's claims must be dismissed because BIPA does not apply extraterritorially, and Kuklinski has not alleged that the relevant conduct occurred primarily and substantially in Illinois. .................................................. 8

    D.    Kuklinski's section 14/15(a) claim against Jumio should be dismissed because his allegations show that Jumio has complied with the requirements of that section. .............................................................. 11

    E.    To the extent Kuklinski's claims against Jumio are based on the period before December 24, 2019, they should be dismissed under the release granted to Jumio in the class action settlement of *Prelipceanu v. Jumio*. ........ 13

    F.    Interpreting BIPA 14/15(b) to apply to Jumio's conduct here would render BIPA unconstitutional, an outcome the Court should construe the statute to avoid.......................................................................................... 14

CONCLUSION.................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*American Civil Liberties Union of Illinois v. Alvarez,*
679 F.3d 583 (7th Cir. 2012) ................................................................14, 15

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).................................................................................3, 9

*Avery v. State Farm Mut. Auto. Ins. Co.,*
216 Ill. 2d 100 (2005) .........................................................................8, 9, 10

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
140 S. Ct. 2335 (2020)..............................................................................16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)....................................................................................3

*Brooks v. Ross,*
578 F.3d 574 (7th Cir. 2009) .....................................................................3, 4

*Bryant v. Compass Grp. USA, Inc.,*
503 F. Supp. 3d 597 (N.D. Ill. 2020) ............................................................4

*Cassell v. Snyders,*
458 F. Supp. 3d 981 (N.D. Ill. 2020) ..........................................................11

*Clark v. Martinez,*
543 U.S. 371 (2005)...................................................................................18

*Daniel v. Cantrell,*
375 F.3d 377 (6th Cir. 2004) .....................................................................17

*Doermer v. Callen,*
847 F.3d 522 (7th Cir. 2017) ............................................................... passim

*Dur-Ite Co. v. Indus. Comm'n,*
394 Ill. 338 (1946) ......................................................................................8

*Gen. Elec. Cap. Corp. v. Lease Resol. Corp.,*
128 F.3d 1074 (7th Cir. 1997) ....................................................................13

*Goplin v. WeConnect, Inc.,*
893 F.3d 488 (7th Cir. 2018) .....................................................................11

*Hartley v. Villa Scalabrini Nursing & Rehab. Ctr.,*
No. 08-CV-3830, 2009 WL 3188070 (N.D. Ill. Sept. 30, 2009) .............................6

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Jane Doe v. Elmhurst Univ.*,
    No. 2020 L 001400 (Cir. Ct. DuPage Cnty. Ill. June 9, 2021) ..................................................4

*Jane Doe v. Nw. Univ.*,
    No. 21 C 1579 (N.D. Ill. Feb. 22, 2022) ..................................................................4

*Larroza v. Resurgence Cap., LLC*,
    No. 17 C 8512, 2018 WL 2118134 (N.D. Ill. May 8, 2018) ...........................................11, 12

*McGoveran v. Amazon Web Services., Inc.*,
    C.A. No. 20-1399, 2021 WL 4502089 (D. Del. Sept. 30, 2021) .......................................10, 11

*Monroy v. Shutterfly, Inc.*,
    No. 16 C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017)..........................................8, 9

*Mosby v. Ingalls Mem'l Hosp.*,
    2022 IL App (1st) 200822....................................................................................6

*Nielen-Thomas v. Concorde Inv. Servs., LLC*,
    914 F.3d 524 (7th Cir. 2019) ...............................................................................7

*People ex rel. Broch v. Hogg*,
    571 N.E.2d 888 (Ill. App. Ct. 1991) ......................................................................7

*People ex rel. Sherman v. Cryns*,
    203 Ill. 2d 264 (2003) .....................................................................................12

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015).......................................................................................16

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ..................................................................8, 9

*Roberts v. City of Chi.*,
    817 F.3d 561 (7th Cir. 2016) ..............................................................................3

*Santana v. Take-Two Interactive Software, Inc.*,
    717 F. App'x 12 (2d Cir. 2017) ..........................................................................17

*Sheeley v. Wilson Sporting Goods Co.*,
    No. 17-cv-3076, 2017 WL 5517352 (N.D. Ill. Nov. 17, 2017) .........................................10

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011).....................................................................................15, 16

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
    480 F. Supp. 3d 888 (S.D. Ill. 2020) ........................................................................4

*Stevenson v. FedEx Ground Package Sys., Inc.*,
    69 F. Supp. 3d 792 (N.D. Ill. 2014) .........................................................................7

*Stroman Realty, Inc. v. Allison*,
    2017 IL App (4th) 150501-U ....................................................................................9

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) ................................................................................3, 9

*Tropp v. W.S. Life Ins. Co.*,
    381 F.3d 591 (7th Cir. 2004) ..................................................................................14

*Walker v. S.W.I.F.T. SCRL*,
    491 F. Supp. 2d 781 (N.D. Ill. 2007) .......................................................................9

*Wilson v. Dep't of Revenue*,
    169 Ill.2d 306 (1996) .............................................................................................18

**STATUTES**

720 ILCS 570/505 .............................................................................................................7

820 ILCS 305/4 .................................................................................................................7

Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. .................... passim

12 U.S.C. § 1841 ..............................................................................................................4

12 U.S.C. § 1843 ..............................................................................................................4

Gramm-Leach-Bliley Act of 1999, 15 U.S.C. §§ 6801–09 ........................................ passim

**RULES**

FED. R. CIV. P. 8 ...............................................................................................................3

FED. R. CIV. P. 12 .............................................................................................................3

FED. R. EVID. 201 ................................................................................................11, 12, 13

**REGULATIONS**

12 C.F.R. § 225.86 ............................................................................................................5

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

31 C.F.R. § 1010.100 ........................................................................................................5

**OTHER AUTHORITIES**

*Cryptocurrency*, BLACK'S LAW DICTIONARY (11th ed. 2019) ..........................................5

*In re Paypal, Inc.*,
    No. C-4651, File No. 162-3201 (F.T.C. May 23, 2018) ...........................................5

*Orders Issued Under Section 4 of the Bank Holding Company Act*,
    81 Fed.Res.Bull. 1130, 1995 WL 736783 ...............................................................5

U.S. Const. amend. I ............................................................................... passim

**INTRODUCTION**

Defendant Jumio Corporation ("Jumio") offers software to businesses to help them verify the identities of their customers. One such business is defendant BAM Trading Services Inc. ("BAM"), also known as Binance.US, a cryptocurrency exchange. Plaintiff Kamil Kuklinski ("Kuklinski") alleges that he used BAM's mobile application (the "BAM App") to create an account to trade on the exchange in March 2021. When he did this, the BAM App allegedly verified his identity by comparing a photograph of his face taken through his mobile device to a photograph of his driver's license. Kuklinski asserts that in connection with this process, Jumio, along with both BAM and defendant Binance Capital Management Co., Ltd. ("Binance"), violated sections 14/15(a) and 14/15(b) of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*

The Court should dismiss Kuklinski's claims against Jumio for at least five independent reasons, and the dismissal should be with prejudice. *First*, by its express terms, BIPA does not apply to this case, because "[n]othing" in BIPA "shall be deemed to apply in any manner" to a financial institution that is subject to the Gramm-Leach-Bliley Act of 1999 (the "GLBA"). BIPA 14/25(c). Kuklinski's claims against Jumio would require the Court to unlawfully apply BIPA to BAM, which is a financial institution subject to the GLBA. This fatal defect cannot be cured by amendment, so the dismissal should be with prejudice because "it is clear that amendment would be futile." *Doermer v. Callen*, 847 F.3d 522, 528 (7th Cir. 2017).

*Second,* it is well-established that BIPA has no extraterritorial application, so Kuklinski must allege that the conduct by Jumio that is relevant to his claims occurred primarily and substantially in Illinois. But he alleges no such facts, and the facts that he does allege lead to the opposite conclusion—that any such conduct occurred outside Illinois.

*Third,* Kuklinski's section 14/15(a) claim against Jumio should be dismissed because judicially noticeable facts show that Jumio has developed the publicly available retention policy that is required by that section. This pleading defect also cannot be cured.

*Fourth,* to the extent Kuklinski's claims against Jumio are based on the period before December 24, 2019, they should be dismissed pursuant to the court-approved class settlement and release set forth in the final order and judgment attached as Exhibit A, which was granted to Jumio by "all individuals in Illinois whose Biometrics or photos were collected, captured, purchased, received through trade, otherwise obtained or in the possession of Jumio." *Id.* ¶ 7; *see also* Ex. B (settlement agreement).

*Finally,* the Court should dismiss Kuklinski's section 14/15(b) claim against Jumio because to apply BIPA as urged by Kuklinski would violate the First Amendment of the United States Constitution, a result the Court should construe the statute to avoid.

## BACKGROUND

### A.   Kuklinski's allegations

Kuklinski alleges[1] that BAM "partnered with" Jumio to verify the identities of users on its cryptocurrency exchange. Am. Compl. ¶ 24. In March 2021, Kuklinski "downloaded the [BAM] iPhone application and created an account while he was present in Cook County, Illinois" so that he could trade cryptocurrency. *Id.* ¶¶ 25, 26. Before he could trade, the BAM App required him to confirm his identity "to avoid fraudulent activity or unauthorized users from accessing the [BAM] exchange." *Id.* ¶ 10. The BAM App did this by "prompt[ing]" Kuklinski "to take a photograph of [his] state or federal identification card" and "to take a unique type of 'selfie' using the camera of [his] . . . device." *Id.* ¶ 24.

Kuklinski alleges that "Binance, with the assistance and control from or as an alter ego of [BAM], collected" his biometric data. *Id.* ¶ 44 (emphasis added). As to Jumio, he alleges that the words "Powered by Jumio" appeared onscreen during the account creation process, *id.* ¶ 19, that the BAM App "utilized [Jumio's biometric-based] identity automation process," *id.* ¶ 9, and that Jumio "collected biometric data on behalf of [BAM]," *id.* ¶ 39.

---

[1] Jumio accepts the complaint's allegations as true solely for purposes of this motion.

**B.**     **Kuklinski's claims against Jumio**

BIPA regulates the collection and possession of "biometric identifiers"[2] and "biometric information"[3] (collectively, for purposes of this motion, "biometric data," although BIPA does not use that term). Section 14/15(a) of BIPA requires a private entity "in possession of" biometric data to "develop" a publicly available retention schedule and "guidelines" for the destruction of the data. Section 14/15(b) requires private entities that "collect . . . or otherwise obtain" an individual's biometric data to provide notice and obtain the individual's consent before doing so. Kuklinski claims that in connection with his use of the BAM App, Jumio violated both of these sections. Am. Compl. ¶¶ 60, 62. He seeks to represent a putative class of "All Illinois users and account holders whose facial and biometric data have been collected by the [BAM] applications, software and website." *Id.* ¶ 48.

## ARGUMENT

**A.**     **Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts to "show[] that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff must "provid[e] some specific facts to ground [his] legal claims," *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009), and "give enough details about the subject-matter of the case to present a story that holds together," *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Although courts must "accept all well-pleaded facts as true and draw reasonable inferences in [a plaintiff's] favor," *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016), "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v.*

---

[2] BIPA defines "biometric identifier" to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." BIPA 14/10.

[3] BIPA defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* § 14/10.

*Twombly*, 550 U.S. 544, 555 (2007)). It is not enough for a plaintiff to "merely parrot the statutory language of the claims that they are pleading," *Brooks*, 578 F.3d at 581.

**B.      Kuklinski's claims are barred by BIPA's GLBA exception.**

Kuklinski's claims against Jumio fall squarely within the GLBA exception and must be dismissed, with prejudice, on that basis. His claims are based solely on his allegations that BAM incorporated Jumio's technology into its mobile application and website in order to verify Kuklinski's identity so that he could trade on its cryptocurrency exchange. But BAM is a financial institution subject to the GLBA, so to apply BIPA to Jumio under these facts would be to apply BIPA "in any manner" to a financial institution subject to the GLBA. This is expressly forbidden and justifies dismissal with prejudice of the claims against Jumio. *See Doermer*, 847 F.3d at 528.

**1.      BAM is a financial institution subject to the GLBA.**

By its reference to a "financial institution subject to the GLBA," BIPA section 14/25(c) incorporates the GLBA definition of "financial institution." [4] The GLBA defines financial institution to mean "any institution the business of which is engaging in financial activities as described in section 1843(k) of Title 12." 15 U.S.C. § 6809(3)(A). Section 1843(k) of Title 12 lists activities such as (1) "[l]ending, exchanging, transferring, investing for others, or safeguarding money," and (2) "any activity that the [Federal Reserve] Board has determined, by order or regulation that is in effect on November 12, 1999, to be so closely related to banking or managing or controlling banks as to be a proper incident thereto." 12 U.S.C. §§ 1841(f), 1843(k)(4)(A).

---

[4] *See* Order, *Jane Doe v. Elmhurst Univ.*, No. 2020 L 001400 (Cir. Ct. DuPage Cnty. Ill. June 9, 2021) (attached as Ex. C) (the term "financial institution" under BIPA "means an entity that is subject to [the GLBA]"); *see also* Order at 2, *Jane Doe v. Nw. Univ.*, No. 21 C 1579 (N.D. Ill. Feb. 22, 2022), ECF No. 31 (same) (attached as Ex. D); *Bryant v. Compass Grp. USA, Inc.*, 503 F. Supp. 3d 597, 601 (N.D. Ill. 2020) (same); *Stauffer v. Innovative Heights Fairview Heights, LLC*, 480 F. Supp. 3d 888, 903 (S.D. Ill. 2020) (same).

Since at least 1995, the Federal Reserve Board has expressly determined that "money transmission services are closely related to banking." *Orders Issued Under Section 4 of the Bank Holding Company Act*, 81 Fed.Res.Bull. 1130, 1131, 1995 WL 736783, at *2; *see also* 12 C.F.R. § 225.86(a)(2)(v) (providing that "money transmission" is an "[a]ctivit[y] determined to be closely related to banking."); 31 C.F.R. § 1010.100(ff)(5)(i)(A) ("The term 'money transmission services' means the acceptance of currency, funds, or other value that substitutes for currency from one person and the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means."). Cryptocurrency is "value that substitutes for currency." *Id.*; *see, e.g.*, *Cryptocurrency*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining cryptocurrency as "[a] digital or virtual currency that is . . . designed to function as a medium of exchange"). An institution in the business of exchanging money for cryptocurrency is therefore a financial institution subject to the GLBA.

Here, Kuklinski alleges that BAM users can "exchang[e]" or "transfer[]" money for cryptocurrency. Am. Compl. ¶¶ 5, 18, 67, 68; *see also, e.g.*, *id.* ¶¶ 6, 8. He therefore alleges that BAM is in the business of "exchanging" and "transferring" money—money transmission services.[5] *See* 31 C.F.R. § 1010.100(ff)(5)(i)(A) (broadly defining "money transmission services" to include "the acceptance of currency, funds, *or other value that substitutes for currency* from one person and the transmission of currency, funds, *or other value that substitutes for currency* to another location or person by any means.") (emphases added); *Cryptocurrency*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining cryptocurrency as "[a] digital or virtual currency that is . . . designed to function as a medium of exchange"). This is true regardless of

---

[5] Consistent with this, the Federal Trade Commission ("FTC"), which enforces the GLBA, recently made clear that it considered the "peer-to-peer payment service" Venmo to qualify as a financial institution because, like BAM, it is "significantly engaged in 'transferring money.'" *See* FTC Compl. ¶¶ 4, 35, *In re Paypal, Inc.*, No. C-4651, File No. 162-3201 (F.T.C. May 23, 2018), *available at* https://www.ftc.gov/enforcement/cases-proceedings/162-3102/paypal-inc-matter.

whether cryptocurrency is "legal tender in the United States." *See, e.g.*, Am. Compl. ¶ 2 (alleging that cryptocurrency is not technically "legal tender" "money" or "currency").

In addition, BAM is registered as a money transmitter with the U.S. Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN"); and this fact is subject to judicial notice. *See Hartley v. Villa Scalabrini Nursing & Rehab. Ctr.*, No. 08-CV-3830, 2009 WL 3188070, at *1 n.1 (N.D. Ill. Sept. 30, 2009) ("The court takes judicial notice that the corporate entity registered with the Secretary of State is Resurrection Senior Services, Inc., doing business as Villa Scalabrini Nursing and Rehabilitation Center."); Ex. E (attaching results of registrant search via https://www.fincen.gov/msb-registrant-search). Because Kuklinski's own allegations as well as judicially noticeable facts establish that BAM is a "financial institution subject to the GLBA," BIPA cannot be applied to BAM "*in any manner*." BIPA 14/25(c).

### 2. The GLBA exception bars Kuklinski's claims against Jumio.

The Court should dismiss Kuklinski's claims against Jumio with prejudice because allowing them to proceed would require this Court to apply BIPA "in any manner" to BAM, a financial institution subject to the GLBA.

In enacting BIPA, the Illinois legislature recognized that "[t]he use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings." BIPA 14/5. To enable streamlined financial transactions, the legislature specifically provided that "[n]othing in this Act shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution that is subject to [the GLBA]." BIPA 14/25(c). The phrase "in any manner" is clearly intentional: the same language is not found in any of the other exclusions set forth in Section 14/25. *See, e.g.,* BIPA 14/25(e) (government contractor exception). And the phrase does important work: by including the phrase "in any manner" after the word "apply," the legislature made clear that BIPA cannot be applied, even *indirectly*, to entities that are subject to the GLBA. *See Mosby v. Ingalls Mem'l Hosp.*, 2022 IL App (1st) 200822, ¶ 44 (comparing BIPA's "blanket exclusion" for financial institutions subject to the GLBA to the narrower exception for certain healthcare

information). Any contrary interpretation would render the phrase "in any manner" surplusage and should be avoided. *See Nielen-Thomas v. Concorde Inv. Servs., LLC*, 914 F.3d 524, 528 (7th Cir. 2019) ("We must also, if possible, give effect to 'every clause and word' of a statute, taking care not to read words into the text or to treat any words as surplusage.") (citation omitted).

Further, the phrase "in any manner" is broadly construed under Illinois law. For example, the Illinois Controlled Substances Act provides that a vehicle is subject to forfeiture if it is used "in any manner to facilitate the . . . possession . . . of substances manufactured, distributed, dispensed, or possessed in violation of th[e] Act." 720 ILCS 570/505(a)(3). Because of this language, a car was subject to forfeiture where the occupant of the car hid cocaine in a vial in his sock. *See People ex rel. Broch v. Hogg*, 571 N.E.2d 888, 892 (Ill. App. Ct. 1991). The court reasoned that the car added an additional "dimension of privacy" to aid in the concealment, and so "facilitated" the possession of the drug in violation of the statute. *Id.* Similarly, the Illinois Workers' Compensation Act, which states that employers may not interfere "*in any manner whatsoever*" with an employee's exercise of rights, 820 ILCS 305/4(h) (emphasis added), has been interpreted to prohibit an employer from requiring an employee to give notice before seeking medical treatment for a work injury, on the theory that requiring an employee to make a phone call or leave a voicemail on the way to the doctor "interferes" with the employee's exercise of rights. *See Stevenson v. FedEx Ground Package Sys., Inc.*, 69 F. Supp. 3d 792, 796 (N.D. Ill. 2014) ("[T]he unqualified language of the statute states plainly that employers may not interfere 'in any manner whatsoever' with an employee's exercise of his rights. This unambiguous statutory text compels this Court to conclude that imposing even modest requirements as a precondition to seeking medical treatment is 'interfere[nce]' within the meaning of section 4(h).") (internal citation omitted).

Here, Kuklinski's allegations make clear that his claims against Jumio are founded entirely on his use of the BAM App in order to use the BAM cryptocurrency exchange, and that Jumio's technology is incorporated into the BAM App. Kuklinski alleges that Jumio's technology is "integrated . . . within" the BAM App, which Kuklinski used in order to trade on

the BAM exchange. *See* Am. Compl. ¶¶ 24 (Jumio technology is "integrated . . . within the [BAM] mobile application"), 9 ("[T]he [BAM] website and mobile applications utilized [Jumio's] identity automation process."), 19 ("The capture process for biometric identifiers and information [is] integrated within the [BAM] application . . . ."). Kuklinski also alleges that Jumio "partnered with [BAM] and integrated their technology within the [BAM] mobile application," *id.* ¶ 24, and that Jumio "collected biometric data *on behalf of* [BAM]," *id.* ¶ 39 (emphasis added).

To apply BIPA to Jumio here would be to apply BIPA to BAM, a financial institution that is subject to the GLBA, "in any manner." The statute forbids this. BIPA 14/25(c). This defect is fatal, and it cannot be cured by amendment, so the claims against Jumio must be dismissed with prejudice. *Doermer*, 847 F.3d at 528.

**C.    Kuklinski's claims must be dismissed because BIPA does not apply extraterritorially, and Kuklinski has not alleged that the relevant conduct occurred primarily and substantially in Illinois.**

To state a claim under BIPA, Kuklinski must allege facts showing that the statute applies. He has failed to do so as to Jumio, because he has not alleged facts showing that the conduct relevant to his claims against Jumio occurred primarily and substantially in Illinois.

Every court to consider the issue has agreed that BIPA does not apply extraterritorially. *See, e.g., Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017) ("[BIPA] is not authorized to have extraterritorial effect"); *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017) ("BIPA does not apply extraterritorially."); *see also Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184–85 (2005) (holding that an Illinois statute cannot impose liability based on conduct occurring outside the state unless "the express provisions of the statute" make clear that the statute is intended to apply extraterritorially.) (quoting *Dur-Ite Co. v. Indus. Comm'n*, 394 Ill. 338, 350 (1946)).

BIPA therefore applies only to conduct that occurs in Illinois. Conduct is deemed to occur in Illinois when "the circumstances that relate to [a] disputed transaction occur primarily and substantially" in Illinois. *Avery*, 216 Ill. 2d at 187; *see also Rivera*, 238 F. Supp. 3d at 1101.

"[T]here is no single formula or bright-line test for determining whether a transaction occurs within this state. Instead, a court must analyze whether the circumstances relating to the transaction occur primarily and substantially within Illinois." *Id*. (cleaned up). No single factor is determinative, and in the context of BIPA, courts consider factors such as where the alleged "scan" of facial geometry took place and the location where a company develops its policy regarding the retention of biometric data. *See, e.g.*, *Monroy*, 2017 WL 4099846, at *6 (applying *Avery* in BIPA action and observing that "each case must be decided on its own facts"); *Rivera*, 238 F. Supp. 3d at 1101–02 (citing *Avery*, 216 Ill. 2d at 187).

To state claims against Jumio under BIPA sections 14/15(a) and (b), Kuklinski must allege facts showing that the relevant conduct—Jumio's alleged failure to "develop" a publicly-available retention policy (14/15(a)), and its alleged failure to notify him and obtain his consent before collecting his biometric data (14/15(b))—occurred primarily and substantially in Illinois.

Kuklinski has not done so. The scant allegations that even mention Illinois are conclusory and insufficient. For example, Kuklinski alleges that he "resides in Cook County, Illinois." Am. Compl. ¶ 16. But this is not enough: if "[t]he only connection to Illinois" is the plaintiff's "status as a resident," the *Avery* test is not satisfied. *Stroman Realty, Inc. v. Allison*, 2017 IL App (4th) 150501-U, ¶ 62; *see also Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 795 (N.D. Ill. 2007) (same). He alleges that "Defendants have transacted business related to the matters complained of herein and have made or performed related contracts substantially connected with the State of Illinois," Am. Compl. ¶ 21, but this is conclusory and insufficient to establish any connection between Illinois and the facts giving rise to his BIPA claims against Jumio. To state a plausible claim, a plaintiff must "plead[] *factual* content," *Iqbal*, 556 U.S. at 678 (emphasis added), and "give enough details . . . to present a story that holds together," *Swanson*, 614 F.3d at 404. "[C]onclusory legal statements" like those offered by Kuklinski are not enough. *Id*. at 405. Finally, Kuklinski alleges that he "downloaded the [BAM] iPhone application and created an account while he was present in Cook County Illinois." Am. Compl. ¶ 26. But these unilateral actions by Kuklinski do nothing to show conduct *by Jumio* in Illinois.

Indeed, the reasonable inference to draw from Kuklinski's allegations is that any relevant conduct by Jumio occurred *outside* Illinois. Kuklinski claims that Jumio failed to "develop" the publicly available policy required by section 14/15(a), Am. Compl. ¶¶ 59–60, but does not allege where Jumio failed to do so, and the only reasonable inference to draw from the allegations in the Amended Complaint is that the alleged failure occurred in California, where Jumio is headquartered, Am. Compl. ¶ 19. Kuklinski claims that Jumio failed to provide notice and obtain the consent required under section 14/15(b) before collecting his biometric data, and that Jumio's software, or "automation process," is "integrated within" the BAM App. Am. Compl. ¶ 19. But he does not allege that any of this occurred in Illinois, and again, the reasonable inference to draw from the complaint is that it occurred outside Illinois. This is not enough. *See, e.g.*, *Sheeley v. Wilson Sporting Goods Co.*, No. 17-cv-3076, 2017 WL 5517352, at *2 (N.D. Ill. Nov. 17, 2017) (finding *Avery* test not met where defendant was "headquartered in Illinois and . . . deceptive marketing scheme at issue was created and implemented from [defendant's] headquarters").

This case is strikingly similar to *McGoveran v. Amazon Web Services., Inc.*, C.A. No. 20-1399, 2021 WL 4502089 (D. Del. Sept. 30, 2021), where the court dismissed BIPA claims on extraterritoriality grounds. In *McGoveran*, the plaintiffs alleged that Pindrop, a Delaware corporation with a principal place of business in Atlanta, Georgia, violated BIPA by analyzing the voices of its clients' customers who phoned call centers, and that Amazon Web Services (AWS), a Delaware corporation with data centers in Virginia, Ohio, California, and Oregon, violated BIPA by storing and processing that information. *See id.* at *1–2. They further alleged that Pindrop "extracted biometric information from calls originating from Illinois, from Illinois citizens, and from clearly recognizable Illinois phone numbers," and that AWS "'intercepted biometric information' from Illinois callers." *Id*. at *4. The court held that this was insufficient under *Avery*, and dismissed the complaint on extraterritoriality grounds. The court explained that "[a]t bottom," plaintiffs alleged only that the phone calls from which their biometric data were allegedly extracted "originated from Illinois," not that any conduct by the defendant took place

-10-

in Illinois. *Id.* Similarly here, Kuklinski fails to allege any facts showing relevant conduct by Jumio in Illinois.

**D.      Kuklinski's section 14/15(a) claim against Jumio should be dismissed because his allegations show that Jumio has complied with the requirements of that section.**

Jumio's Privacy Policy satisfies the requirements of BIPA section 14/15(a). The Court may take judicial notice of the Privacy Policy,[6] because its existence and content "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b); *see, e.g.*, *Cassell v. Snyders*, 458 F. Supp. 3d 981, 990 n.2 (N.D. Ill. 2020) (taking judicial notice of YouTube video posted by a party to the litigation), *aff'd*, 990 F.3d 539 (7th Cir. 2021); *Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018) (affirming finding by district court that an affidavit was "conclusory" when the party's "own website" undermined the conclusory statements in the affidavit). Additionally, Kuklinski quotes Jumio's Privacy Policy, *see, e.g.*, Am. Compl. ¶ 41, and it is "central to [Kuklinski's] claim" that Jumio violated BIPA section 14/15(a). *See Larroza v. Resurgence Cap., LLC*, No. 17 C 8512, 2018 WL 2118134, at *4 n.1 (N.D. Ill. May 8, 2018) (considering printout of web page where complaint "refer[red] to the services listed on SPI's website").

The Privacy Policy provides in relevant part that:

> Jumio will store your biometric data for as long as the Customer Data Controller requests (e.g., the duration of your use of its services), which shall be no longer than the earlier of the date when (i) the Customer Data Controller ceases to have a relationship with Jumio or (ii) within three (3) years after the Customer Data Controller informs Jumio that its last interaction with you has occurred.

Privacy Policy at *Information for Illinois residents*. It further provides that:

> Jumio will retain your facial recognition information, including the photo of your face and photo or scan of your identification document, for the amount of time requested by the Jumio customer through which you used Jumio's identity verification service. In no event will Jumio store your facial recognition information after Jumio ceases to have a customer relationship with the customer through which you used Jumio's identity verification service.

---

[6] The Policy is found at https://www.jumio.com/legal-information/privacy-policy/jumio-corp-privacy-policy-for-online-services, and is attached as Exhibit F for convenience.

*Id*. at *Facial recognition*. The Privacy Policy therefore establishes a retention schedule and guidelines for permanently destroying biometric data within the timeframes set forth in section 14/15(a), which provides in relevant part:

> A private entity in possession of biometric identifiers or biometric information *must develop a written policy, made available to the public*, establishing a *retention schedule* and *guidelines for permanently destroying biometric identifiers and biometric information* when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. . . .

BIPA 14/15(a) (emphasis added).

Jumio's Privacy Policy satisfies these requirements. The fact that the Privacy Policy is "made available to the public" online is "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," and is therefore judicially noticeable. FED. R. EVID. 201(b). The Privacy Policy establishes a retention schedule and guidelines for permanently destroying biometric data, by stating that Jumio will retain the data "for the amount of time requested by the Jumio customer through which you used Jumio's identity verification service," Ex. F at *Facial recognition*, but in no event longer than "when (i) the Customer Data Controller ceases to have a relationship with Jumio or (ii) within three (3) years after the Customer Data Controller informs Jumio that its last interaction with you has occurred," *id.* at *Information for Illinois residents*. BIPA section 14/15(a) cannot be interpreted to require more than this. *See People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 291 (2003) ("A statute [is unconstitutionally vague] if its terms are so ill-defined that the ultimate decision as to its meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts.") (cleaned up).

Kuklinski also alleges that "[i]n violation of Section 14/15(a), Defendants failed to create a sufficient biometric data privacy policy and/or failed to identify its location to provide notice to users of their software and website prior to the collecting of the biometric data, verifying the identification of the user, and prior to the creation of the users' accounts." Am. Compl. ¶ 60. But

the conclusion that "defendants" "failed to create a sufficient biometric data privacy policy" is unsupported by any facts, and the facts that are alleged—the Privacy Policy itself, *see id.* ¶ 35—support the opposite conclusion. Kuklinski's confusing allegation that "defendants" "failed to identify its location to provide notice to users of their software and website prior to the collecting of the biometric data, verifying the identification of the user, and prior to the creation of the users' accounts" is both unsupported and irrelevant, because section 14/15(a) includes no such requirement. Accordingly, the Court should dismiss Kuklinski's section 14/15(a) claim with prejudice. *Doermer*, 847 F.3d at 528.

**E.    To the extent Kuklinski's claims against Jumio are based on the period before December 24, 2019, they should be dismissed under the release granted to Jumio in the class action settlement of *Prelipceanu v. Jumio*.**

The claims brought on behalf of both Kuklinski himself as well as the putative class are based on the alleged collection of "facial and biometric data" as to "All Illinois users [of] . . . the [BAM] applications, software, and website." Am. Compl. ¶ 48. But any such claims based on collection that allegedly occurred before December 24, 2019, were released in a class action settlement approved by the Illinois Circuit Court, Cook County, on July 21, 2020. The Final Order approving that settlement, along with the settlement agreement, are attached as Exhibits A (Final Approval Order) and B (Settlement Agreement) to this motion. *See Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) ("Like other court records, judicial approval of a class action settlement is an appropriate subject for judicial notice because it is a source 'whose accuracy cannot reasonably be questioned.'") (quoting FED. R. EVID. 201(b)).

The Final Approval Order provides that the Class released all Settled Claims against the Released Parties, as those terms were defined in the Settlement Agreement. Ex. A ¶¶ 1, 14. The Settlement Agreement defines the Class as "[a]ll individuals in Illinois whose Biometrics or photos were collected, captured, purchased, received through trade, otherwise obtained or in the possession of Jumio and/or any of its parents, subsidiaries or agents, or their technology, at any time between December 21, 2013 and December 23, 2019." *Id.* ¶ 7. The term Settled Claims is defined to mean "any and all claims . . . that the Plaintiff and Settlement Class Members, had,

have, or may have, against all Released Parties with respect to [Jumio's] collection, capture, receipt, purchase, storage, dissemination, transfer, use, sale, lease, trade, or profit from biometric information, biometric identifiers, or any data derived from or relating to the images of faces in photographs or videos. . . ." Ex. B § 1.27. "Released Parties" "means [Jumio] and all of its . . . Customers." *Id.* § 1.25.

The claims against Jumio in this case are "with respect to [Jumio's] collection, capture, receipt, purchase, storage, dissemination, transfer, use, sale, lease, trade, or profit from biometric information, biometric identifiers, or any data derived from or relating to the images of faces in photographs or videos." Ex. B § 1.27; *see, e.g.*, Am. Compl. ¶¶ 60, 62. They are therefore Settled Claims to the extent that Kuklinski asserts them for the time period preceding December 24, 2019, *see id.* ¶ 48 (specifying no time limitation), and to the extent he asserts them against Released Parties—including Jumio—under the Settlement Agreement. Ex. B § 1.25.

Accordingly, any claims against Jumio based on the time period before December 24, 2019 are barred by the Release as set forth in the Final Approval Order, and should be dismissed with prejudice. *See Tropp v. W.S. Life Ins. Co.*, 381 F.3d 591, 596 (7th Cir. 2004) ("[A] release incorporated into an order approving a class action settlement bars subsequent litigation based on the released claims."); *Doermer*, 847 F.3d at 528.

## F. Interpreting BIPA 14/15(b) to apply to Jumio's conduct here would render BIPA unconstitutional, an outcome the Court should construe the statute to avoid.

If BIPA were interpreted to cover Jumio's conduct as alleged here, then Kuklinski's claim under section 14/15(b) would also fail because it would violate the First Amendment.

The First Amendment protects the right to make recordings, even in certain circumstances where such recordings would violate reasonable expectations of privacy. In *American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012), the Seventh Circuit reversed the denial of a preliminary injunction against Illinois's eavesdropping statute because it would apply to recording police activity in public places even at normal voice levels, which the Seventh Circuit held would violate the First Amendment's protection of the

-14-

"upstream" activities that precede protected speech. Recording, data mining, and other speech-facilitating activities receive protection "upstream" from the speech itself because "[f]acts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).

Here, Kuklinski obviously was aware that he was being recorded for purposes of identification. Kuklinski alleges that the BAM App prompted him to "[s]can identity Card Front," "[s]can identity Card Back," and "[c]apture your face." Am. Compl. ¶¶ 29, 30. He did those things, and was then notified that the BAM App was "[a]nalyzing biometric data." Am. Compl. ¶ 31. The capturing of his image and biometric data properly falls within First Amendment protection as a type of "recording"—indeed, Kuklinski himself alleges that "Defendants *recorded*, collected, and stored" his biometric data. Am. Compl. ¶ 58 (emphasis added); *see also* Am. Compl. ¶ 25 (same).

There is also no consent or privacy-based reason why, in this case, biometric recordings should be afforded less First Amendment protection than audio recordings were afforded in *Alvarez.* That case extends First Amendment protection to even entirely unconsenting and unknown recordings, so long as the recorded individual was in a public place and speaking at a normal volume. *Alvarez*, 679 F.3d at 606. Here, far from having his image captured in a public location without his knowing it, Kuklinski was asked for his "scan[s]" and "capture" and readily provided them while knowing they would be used to verify his identity. The First Amendment naturally protects consenting people wishing to have their face recordings used for identity verification—and those people's rights must be protected despite Kuklinski's sudden desire to sue Jumio and put an end to the very identity verification service from which he benefited. The First Amendment also protects companies like Jumio when they collect biometric recordings from consenting people in order to review, analyze, and form opinions on those recordings and then tell customers like BAM when "unauthorized users" may be trying to "access[] the [BAM] exchange." Am. Compl. ¶ 10.

If construed as Kuklinski urges, BIPA would thus interfere with the First Amendment right to consent to a recording and the right to make a recording.

It also would do so in a content-discriminatory manner that is properly subject to strict scrutiny. Content-based restrictions must be narrowly tailored to serve a compelling state interest. *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020); *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). BIPA imposes content-based restrictions because it "draw[s] distinctions based on the message a speaker conveys" and "singles out specific subject matter for differential treatment." *Barr*, 140 S. Ct. at 2346.

For example, BIPA restricts the collection, creation, and dissemination of information obtained from a "scan of face . . . geometry," *except* "for health care treatment, payment, or operations," BIPA 14/10, in order "to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening," for use by a financial institution, BIPA 14/25(c), or for use by state or local government actors, BIPA 14/25(e). These purpose-driven exceptions make some types of recordings permissible and others impermissible based upon their purpose and how they are used, which is a type of content regulation. It is no different from requiring written consent to take someone's photograph except when that is done on behalf of hospitals, banks, or the government. The government is preferring how certain actors use an information-based technology that facilitates protected speech compared to others. That is content discrimination. Indeed, it is content discrimination akin to that at issue in *Sorrell*, where restrictions only applied to the use of factual prescriber-identifying information if used for marketing purposes, 564 U.S. at 564, and in *Barr*, where certain autodialing technology was only restricted if used for purposes *other than* collecting government debt. 140 S. Ct. at 2346.

The interests served by BIPA are set forth in section 14/5: biometric data cannot be changed, so "once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions" (14/5(c)); people are "weary of the use of biometrics when such information is tied to finances and other personal information" (14/5(d)) and are "deterred from partaking in biometric identifier-facilitated

transaction" (14/5(e)); and the "full ramifications" of biometrics are unknown (14/5(f)), so "the public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information" (14/5(g)).

But it is difficult to see how the government has a compelling interest in keeping someone in Kuklinski's position from consenting to a recording. For the same reason, the degree of regulation that Kuklinski alleges BIPA requires is not "narrowly tailored" to serve the statutory interests. Kuklinski alleges that the BAM App prompted him to "[s]can identity Card Front," "[s]can identity Card Back," and "[c]apture your face." Am. Compl. ¶¶ 29, 30. Kuklinski therefore knew his biometric data was being collected. *See* BIPA 14/15(b)(1). Kuklinski alleges that his biometric data was collected "to confirm [his] identity." Am. Compl. ¶ 25. He therefore knew the purpose for which his biometric data was being collected. *See* BIPA 14/15(b)(2). And Jumio's Privacy Policy, which is available online to anyone who cares to view it, sets forth guidelines for the destruction of biometric data. *See supra* § E. Kuklinski therefore could readily determine the length of term for which his biometric data was retained. *See* BIPA 14/15(b)(2). To read section 14/15(b) as prohibiting a recording in those circumstances would render it not narrowly tailored in achieving whatever compelling interests are at issue.

Even if BIPA's purpose-based distinctions were somehow treated as content-neutral and subject to intermediate scrutiny, the lack of tailoring is still so egregious that BIPA cannot constitutionally be applied as Kuklinski seeks. The existing, transparent Jumio user flow described in the complaint already promotes any legitimate interest just as effectively as the additional, technical requirements that Kuklinski argues for here. *See Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12, 15 (2d Cir. 2017) (holding that "BIPA's purpose . . . to prevent the unauthorized use, collection, or disclosure of an individual's biometric data" was not undermined by failure to include the word "geometry" in user flow, even assuming use of the word "geometry" is required under section 14/15(b) where user flow made clear that a "scan of . . . face geometry" was being collected); *Daniel v. Cantrell*, 375 F.3d 377, 383–84 (6th Cir. 2004) ("Just because Congress' goal was to prevent the disclosure of private information, does

-17-

not mean that Congress intended the implementation of every conceivable method of preventing disclosures."). Under either test, BIPA would be unconstitutional if read as Kuklinski urges.

It is a basic tenet of statutory construction that "when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice . . . [and] [i]f one of them would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court." *Clark v. Martinez*, 543 U.S. 371, 380–81 (2005); *see also Wilson v. Dep't of Revenue*, 169 Ill.2d 306, 310 (1996) ("We presume statutes to be constitutional and must construe enactments by the legislature so as to uphold their validity whenever it is reasonably possible to do so."). The Court should avoid applying a statute in a way that would render it unconstitutional, and reject Kuklinski's interpretation of BIPA.

## CONCLUSION

Multiple, independent reasons justify dismissal with prejudice of Kuklinski's claims against Jumio. BIPA does not apply to the conduct alleged here, both because the claims are barred by BIPA's GLBA exception, and because the plausible inference to be drawn from Kuklinski's allegations is that any relevant conduct by Jumio occurred outside Illinois. These flaws are fatal to all of Kuklinski's claims against Jumio. Kuklinski's section 14/15(a) claim should also be dismissed because his own allegations show that Jumio complies with that section. In addition, to the extent Kuklinski seeks to assert claims that predate December 24, 2019, they are barred by the prior *Prelipceanu v. Jumio* release. Finally, his section 14/15(b) claim should be dismissed because to apply the statute as Kuklinski urges would require the Court to apply BIPA in violation of the First Amendment. Accordingly, Jumio respectfully requests that the Court dismiss, with prejudice, all claims against Jumio.

Dated:  March 15, 2022                     Respectfully submitted,


                                           */s/ Susan D. Fahringer*
                                           _____

                                           Susan D. Fahringer
                                           Nicola C. Menaldo (*Pro Hac Vice*)
                                           Anna Mouw Thompson (*Pro Hac Vice*)
                                           **PERKINS COIE LLP**
                                           1201 Third Avenue, Suite 4900
                                           Seattle, WA  98101-3099
                                           Telephone: (206) 359-8000
                                           Facsimile: (206) 359-9000
                                           SFahringer@Perkisncoie.com
                                           NMenaldo@Perkinscoie.com
                                           AnnaThompson@perkinscoie.com

                                           Debra R. Bernard
                                           **PERKINS COIE LLP**
                                           110 North Wacker Drive
                                           34th Floor
                                           Chicago, IL 60606
                                           Telephone: (312) 324-8400
                                           Facsimile: (312) 324-9400
                                           DBernard@perkinscoie.com

                                           *Attorneys for Defendant Jumio Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 15, 2022, a copy of the foregoing was filed electronically and sent to all counsel of record by operation of the Court's ECF System.


*/s/ Susan D. Fahringer*