**THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| KAMIL KUKLINSKI, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>BINANCE CAPITAL MANAGEMENT CO., LTD. d/b/a BINANCE, BAM TRADING SERVICES INC. d/b/a BINANCE.US and JUMIO CORPORATION,<br><br>        Defendants. | Civil Action No. 3:21-cv-01425-SPM<br><br>Judge:    Hon. Stephen P. McGlynn |

**DEFENDANT BAM TRADING SERVICES INC.'S MOTION TO DISMISS
THE AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant BAM Trading Services Inc. ("BAM") respectfully submits this motion to dismiss the First Amended Class Action Complaint (the "FAC") against BAM with prejudice and the following incorporated memorandum of law in support thereof.

## PRELIMINARY STATEMENT

This Court should dismiss the FAC against BAM with prejudice.  Plaintiff brings claims against BAM for violations of the Illinois Biometric Information Privacy Act ("BIPA") and unjust enrichment.  As BAM explained in its motion to dismiss the previous complaint (ECF No. 30), Plaintiff's claims are fatally defective on their face.  Plaintiff did not oppose BAM's motion to dismiss but instead amended his complaint in an apparent attempt to cure the grounds for dismissal.  Plaintiff's amendments, however, only confirm that the defects cannot be cured.

By its express terms, BIPA does not apply to financial institutions that are subject to the Gramm-Leach-Bliley Act of 1999 (the "GLBA").  BAM, which operates a trading platform that allows users to purchase and sell digital assets with (among other things) fiat currency (i.e., money), is just such a financial institution.  BAM is exempt from BIPA and, therefore, this Court should dismiss Plaintiff's BIPA claim – as well as his unjust enrichment claim, which rests on the same conduct and is derivative of the BIPA claim.  This Court need go no further.

But even if BAM were not exempt from BIPA (and it is), this Court should dismiss Plaintiff's BIPA claim against BAM for at least three additional reasons.  **First**, California law applies to Plaintiff's BIPA claim under BAM's governing Terms of Use ("TOU").  Plaintiff, however, brought his BIPA claim under Illinois law.  **Second**, BIPA does not apply extraterritorially.  Plaintiff still does not plead facts sufficient to show that the alleged BIPA violation by BAM (which is not a resident of Illinois) occurred primarily and substantially in Illinois.  **Third**, Plaintiff still does not adequately allege that BAM violated BIPA.  Plaintiff

1

asserts claims against three separate defendants – BAM, Binance Capital Management Co., Ltd. ("Binance"), and Jumio Corporation ("Jumio") – but largely fails to plead which Defendant did what and instead impermissibly lumps them together, leaving BAM and this Court to speculate.

Similarly, even if Plaintiff's unjust enrichment claim were not derivative of his BIPA claim (and it is), this Court should dismiss the unjust enrichment claim against BAM because Plaintiff does not adequately plead it. Although Plaintiff alleges that BAM received fees from users of its trading platform, he fails to plead facts showing that BAM did not earn those fees (by, for example, providing trading services) or that those fees were obtained to the detriment of users because the fees resulted from biometric information (or for any other reason).

Finally, even if this Court does not dismiss Plaintiff's BIPA and unjust enrichment claims against BAM (and it should), this Court should dismiss his class action allegations against BAM. Plaintiff waived all rights to assert class action claims against BAM by accepting BAM's TOU, which include a "Class Action Waiver." The Supreme Court, as well as Illinois and California courts, have repeatedly enforced such class action waivers. If Plaintiff's claims against BAM proceed at all, they can proceed only on an individual basis.

For all of these reasons and those that follow, this Court should dismiss the FAC against BAM with prejudice.[1]

## **LEGAL STANDARD**

To survive a motion to dismiss, a complaint must "state a claim for relief that is plausible on its face." Diedrich v. Ocwen Loan Servicing, LLC, 839 F.3d 583, 588 (7th Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A plaintiff "must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her

---

[1] BAM joins the arguments of Jumio and Binance in their respective motions to dismiss the FAC to the extent applicable to BAM.

complaint to be considered adequate under Federal Rule of Civil Procedure 8." Bell v. City of Chicago, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

## ARGUMENT

## I.    THIS COURT SHOULD DISMISS PLAINTIFF'S BIPA CLAIM AGAINST BAM.

This Court should dismiss Plaintiff's BIPA claim against BAM because (1) BIPA does not apply to financial institutions; (2) California law, not Illinois law, applies; (3) BIPA does not apply extraterritorially; and (4) Plaintiff does not adequately allege that BAM violated BIPA.

### A.    This Court Should Dismiss Plaintiff's BIPA Claim Against BAM Because BIPA Does Not Apply To Financial Institutions Like BAM.

By its express terms, BIPA does not apply to financial institutions subject to the GLBA: "Nothing in [BIPA] shall be deemed to apply **in any manner** to a financial institution . . . subject to Title V of the [GLBA] and the rules promulgated thereunder." 740 ILCS 14/25(c) (emphasis added). BAM is such a financial institution, and that is the end of Plaintiff's BIPA claim.

"The General Assembly likely excluded financial institutions because they are already subject to a comprehensive privacy protection regime under federal law." Bryant v. Compass Grp. USA, Inc., 503 F. Supp. 3d 597, 601 (N.D. Ill. 2020). Specifically, the GLBA reflects "the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a). "Title V of the GLBA contains a number of provisions designed to protect the privacy of 'nonpublic personal information' . . . that consumers provide to financial institutions." Trans Union LLC v. FTC, 295 F.3d 42, 46 (D.C. Cir. 2002) (citing 15 U.S.C. §§ 6801-6809).

Title V of the GLBA defines a "financial institution" as "any institution the business of which is engaging in financial activities as described in section 1843(k) of Title 12." 15 U.S.C.

§ 6809(3)(A).  Pursuant to Section 1843(k), the "activities . . . considered to be financial in nature" include (1) "[l]ending, exchanging, transferring, investing for others, or safeguarding money or securities" and (2) "any activity that the [Board of Governors of the Federal Reserve System (the "Federal Reserve Board")] has determined, by order or regulation that is in effect on November 12, 1999, to be so closely related to banking or managing or controlling banks as to be a proper incident thereto."  12 U.S.C. §§ 1843(k)(4)(A), (F).

Courts have understood the term "financial institution" as used in the GLBA to have a broad reach.  "The GLBA does not exhaustively list the types of 'financial institutions' subject to its coverage."  FTC v. AmeriDebt, Inc., 343 F. Supp. 2d 451, 456 (D. Md. 2004).  Rather, "'financial institution' is defined 'very broadly' under the GLBA and includes several entities not traditionally recognized as financial institutions."  Id. at 457.  Indeed, courts interpreting the GLBA in applying BIPA's "financial institution" exemption have taken a similarly broad view of the term.  See Jane Doe v. Northwestern Univ., No. 21 C 1579 (N.D. Ill. Feb. 22, 2022), Order at 2-3 (holding that a university qualified as a "financial institution" under the GLBA and, therefore, was not subject to BIPA) (Ex. A);[2] Jane Doe v. Elmhurst Univ., 2020-L-001400 (Ill. Cir. Ct. DuPage Cty. Nov. 18, 2021), Transcript of Oral Argument at 26 (same) (Ex. B).

BAM discloses to its users that it is subject to the GLBA.  BAM's Privacy Policy as last updated on July 7, 2021, which is incorporated by reference into the FAC (see FAC ¶ 43), expressly states that "the personal information we collect, use, or disclose about . . . consumers who initiate or complete the process of applying for financial products or services . . . is subject

---

[2] "Ex. _" refers to exhibits to the Declaration of Brendan R. Blake in Support of BAM Trading Inc.'s Motion to Dismiss the Amended Complaint.

to the [GLBA] and implementing regulations." (Ex. C. at 6.)[3] BAM is a "financial institution" under the GLBA for at least two separate and independent reasons.

**First**, BAM is engaged in activities that are "financial in nature," including exchanging, transferring, and safeguarding money. 12 U.S.C. § 1843(k)(4). Plaintiff alleges: "[BAM] is a digital asset marketplace or cryptocurrency exchange which allows Illinois account holders using the company's platform to purchase various cryptocurrencies including, but not limited to, Bitcoin [and] Ethereum." (FAC ¶ 5.)[4] Plaintiff continues: "Plaintiffs and Class members . . . create[ed] accounts and us[ed] [BAM's] software and exchange platform for purchases relating to digital assets." (Id. ¶ 68; see also id. ¶¶ 8, 18.) BAM's TOU as last updated on January 4, 2022, which are incorporated by reference into the FAC (see id. ¶ 40),[5] show that BAM is engaged in activities that are "financial in nature," including exchanging, transferring, and safeguarding money:

- "BAM operates a platform ('Platform') that provides you with Trading Services for digital assets (also known as a 'cryptocurrency' or 'virtual currency'), which is issued, stored, and/or transferred based on the protocol of a computer network known as a blockchain or a public transaction ledger ('Digital Assets'). You may use the Platform to execute the following trades: (1) sale of a Digital Asset for fiat or another Digital Asset; and (2) purchase of a Digital Asset with fiat or another Digital Asset." (Ex. D. at 4-5.)

---

[3] This Court may consider BAM's Privacy Policy in deciding this motion to dismiss because it is incorporated by reference into the FAC. "[T]he incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012). This Court also may take judicial notice of BAM's Privacy Policy, which is available on BAM's public website and the terms of which are undisputed. See Goplin v. WeConnect, Inc., 893 F.3d 488, 491 (7th Cir. 2018); Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080-81 (7th Cir. 1997).

[4] Cryptocurrency is a "digital or virtual currency that is not issued by any central authority" and "is designed to function as a medium of exchange." Black's Law Dictionary (11th ed. 2019).

[5] This Court may consider BAM's TOU in deciding this motion to dismiss because they are incorporated by reference into the FAC. (See supra n.3.) In addition, this Court may take judicial notice of BAM's TOU, which are available on BAM's public website and the terms of which are undisputed. (See supra n.3.)

- "You can purchase Digital Asset(s) using: (1) Digital Asset(s) or fiat monies in your BAM Account(s); (2) a valid bank account in the name that matches your Account(s); or (3) a credit or debit card in the name that matches your Account(s) ('Payment Methods'). . . . Digital Asset(s) that you purchase will be deposited into your Account(s) as soon as the funds have settled to BAM, which may take up to five Business Days if the purchase was made via a bank account, credit, or debit card." (<u>Id.</u> at 8-9.)

- "You authorize BAM to credit or debit (or provide settlement information to third parties for the purposes of the third-party crediting or debiting) your Digital Assets and/or fiat monies from your Account(s) in accordance with your Instruction. We reserve the right not to effect any Transaction if you have insufficient fiat monies or Digital Assets in your Account(s) (i.e. less than the required amount to settle the Transaction and to pay all the fees associated with the Transaction)." (<u>Id.</u> at 10.)

- "U.S. dollar deposits stored in your Account(s) are held in pooled custodial accounts at one or more U.S. banks. Our custodial accounts have been established with the intention that they be eligible for Federal Deposit Insurance Corporation ('FDIC') pass-through, up to the per-depositor coverage limit then in place (currently $250,000 per eligible individual). . . . It is our policy to comply with the regulations and other requirements of the FDIC for pass-through deposit insurance." (<u>Id.</u> at 5.)

BAM's Platform Trading Rules as last revised on Sept. 18, 2019 ("Trading Rules"),

which are part of BAM's TOU, continue:[6]

- "The BAM Platform settles the Fiat Currency payments in all Filled Orders on a periodic basis, by debiting and crediting the relevant Fiat Currency balances in the Linked Fiat Wallet(s)." (Ex. E. § 2.9.3.)

- "Subject to any Limits imposed by BAM and the terms set out in any Linked Wallet Addendums, a Trader may withdraw some or all of its Fiat Currency from the Linked Fiat Wallet(s)." (<u>Id.</u> § 3.3.2.)

Presumably to cure this fatal defect in his claims, Plaintiff alleges for the first time in the

FAC: "Cryptocurrency is not legal tender in the United States. It is not considered 'money' or a

'security.'" (FAC ¶ 2.) Plaintiff's naked legal conclusion misses the point. BAM's TOU,

---

[6] This Court may consider BAM's Trading Rules in deciding this motion to dismiss because they are part of BAM's TOU, which are incorporated by reference into the FAC. (Ex. D. at 1 ("[BAM's Trading Rules] are incorporated into these Terms."); <u>see</u> <u>supra</u> nn.3, 5.) This Court also may take judicial notice of BAM's Trading Rules, which are available on BAM's public website and the terms of which are undisputed. (<u>See</u> <u>supra</u> nn.3, 5.)

including its Trading Rules, demonstrate that BAM engages in "financial activities" that include exchanging, transferring, and safeguarding money –i.e., the United States dollar – and Plaintiff does not and cannot plead any facts to the contrary.

**Second**, BAM is engaged in "[an] activity that the [Federal Reserve Board] has determined, by order or regulation that is in effect on November 12, 1999, to be so closely related to banking or managing or controlling banks as to be a proper incident thereto." 12 U.S.C. § 1843(k)(4)(F). The Federal Reserve Board determined by orders in effect on November 12, 1999, that "domestic money transmission services are closely related to banking." Norwest Corp., 81 Fed. Res. Bull. 1130, 1131 (1995), reprinted at 1995 WL 736783, at *2; see also 12 C.F.R. § 225.86(a)(2)(v) ("money transmission" is an "[a]ctivit[y] determined to be closely related to banking" (citing Norwest)).

BAM provides domestic money transmission services. BAM is "a money services business registered with the U.S. Department of the Treasury's Financial Crimes Enforcement Network ['FinCEN']." (Ex. D. at 6; Ex. F.)[7] Specifically, BAM is registered with FinCEN (and holds similar registrations in 34 states – including Illinois (Ex. G)[8] – and the District of Columbia) as a "money transmitter," the designation for an entity that "provides money transmission services," which include "the acceptance of currency, funds, or other value that substitutes for currency from one person and the transmission of currency, funds, or other value

---

[7] This Court may take judicial notice of BAM's FinCEN registration via its MSB Registration Status Information dated January 31, 2022, which is a matter of public record and available on FinCEN's website, in deciding this motion to dismiss. (See supra n.3.) See also Laborers' Pension Fund v. Blackmore Sewer Constr., Inc., 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of bank ownership information on the FDIC website).

[8] This Court may take judicial notice of BAM's Illinois Transmitter of Money License, which is a matter of public record and available on the website for the Illinois Department of Financial and Professional Regulation, in deciding this motion to dismiss. (See supra nn.3, 7.)

that substitutes for currency to another location or person by any means." 31 C.F.R.

§ 1010.100(ff)(5).[9]

Again, presumably to cure this fatal defect in his claims, Plaintiff alleges for the first time

in the FAC: "[T]the [Federal Reserve Board] has not defined the purchase and sale of

cryptocurrency as being . . . a financial activity under the [GLBA]." (FAC ¶ 2.) Again,

Plaintiff's naked legal conclusion misses the point. BAM engages in an activity, domestic

money transmission services, that the Federal Reserve Board has determined to be "closely

related to banking" – and, again, the FAC does not and cannot plead any facts to the contrary.

It is precisely because BAM is a financial institution that BAM verifies users as part of

the account creation process. (See Ex. D. at 6; infra at 10.) "Financial institutions that fail to

implement effective anti-money laundering programs . . . can face severe civil, regulatory, and

criminal penalties." JM Adjustment Servs., LLC v. J.P. Morgan Chase Bank, N.A., No. 16-

10630, 2018 WL 1168940, at *5 (E.D. Mich. Mar. 6, 2018). Indeed, even Plaintiff admits that

"[t]he apparent purpose of [BAM's] identity verification process is to avoid fraudulent activity or

unauthorized users from accessing [BAM's] exchange." (FAC ¶ 10.)

For all of these reasons, this Court should dismiss Plaintiff's BIPA claim against BAM

because BIPA does not apply to financial institutions like BAM.

> **B.   This Court Should Dismiss Plaintiff's BIPA Claim Against BAM Because California Law, Not Illinois Law, Applies As To BAM.**

California law applies as to BAM. BAM's TOU provide: "These Terms shall be

construed in accordance with and governed for all purposes by the laws and public policy of the

State of California applicable to contracts executed and to be wholly performed within such

---

[9] As a registered money services business, BAM also is a "financial institution" pursuant to FinCEN's regulations promulgated under the Bank Secrecy Act. See 31 C.F.R. § 1010.100(t)(3) (defining a "financial institution" to include "[a] money services business").

state." (Ex. D. at 19.)  Since California law governs, this Court should dismiss Plaintiff's BIPA

claim against BAM, which is brought under Illinois law.

> 1.   **Plaintiff's BIPA Claim Is Subject To The Choice-Of-Law Provision In BAM's Terms Of Use.**

A federal court exercising diversity jurisdiction – including, as here, under the Class

Action Fairness Act – applies the choice-of-law rules of the state in which it sits.  See Klaxon

Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Cunningham Charter Corp. v. Learjet,

Inc., 592 F.3d 805, 806 (7th Cir. 2010) (the Class Action Fairness Act "creates federal diversity

jurisdiction").  Therefore, this Court should apply the choice-of-law rules of Illinois.

Under Illinois law, non-contract claims that are "dependent upon [a] contract are subject

to [the] contract's choice-of-law clause regardless of the breadth of the clause."  Medline Indus.

Inc. v. Maersk Med. Ltd., 230 F. Supp. 2d 857, 862 (N.D. Ill. 2002).  While "[t]he issue of

whether a claim is 'dependent' upon a contract most often arises in the context of tort claims,"

the "same analytical approach should apply to determine whether [a statutory claim] is

dependent upon a contract."  Johnson v. Diakon Logistics, No. 16-CV-06776, 2021 WL

4477893, at *6 (N.D. Ill. Sept. 30, 2021).  A non-contract claim is dependent upon a contract if

"(1) the claim alleges a wrong based on the construction and interpretation of the contract,

(2) the . . . claim is closely related to the parties' contractual relationship, or (3) the . . . claim

could not exist without the contract."  Amakua Dev. LLC v. Warner, 411 F. Supp. 2d 941, 955

(N.D. Ill. 2006); see also Miyano Mach. USA, Inc. v. Zonar, No. 92 C 2385, 1994 WL 233649,

at *2 (N.D. Ill. May 23, 1994).  Plaintiff's BIPA claim is dependent upon BAM's TOU for at

least two separate and independent reasons.

**First**, Plaintiff's BIPA claim is closely related to BAM's TOU.  Plaintiff alleges that

"[BAM] and Jumio obtained biometric identifiers and information from users of its exchange,

including facial geometry data, without first notifying them, without disclosing the length for collection, storage and use of this information and without obtaining proper written consent." (FAC ¶ 15.)  BAM's TOU govern the data received from a user to confirm his/her identity when creating an account, as well as the process by which those data are collected, recorded, and stored.  Under the heading "Account Creation," BAM's TOU provide for "Identity Verification":

> As a money services business registered with [FinCEN], BAM is required to, among other things, identify users on our Platform.  You agree to provide us with the information we request for the purposes of identity verification and the detection of money laundering, terrorist financing, fraud, or any other financial crime and permit us to keep a record of such information for at least six years . . . The information we request may include certain personal information . . . .

(Ex. D. at 6.)  Identity verification as part of account creation is at the heart of Plaintiff's BIPA claim and governed by BAM's TOU.  Indeed, Plaintiff himself concedes that his BIPA claim is related to BAM's TOU, referring to the TOU in the FAC.  (See FAC ¶ 40 ("This Terms of Use document makes no mention of the collection of biometric data by its application or website.").)

**Second**, Plaintiff's BIPA claim could not exist without BAM's TOU.  Plaintiff alleges that – "during the account creation process" – "[P]laintiff . . . and other Illinois users and account holders with [BAM] had their biometric data collected, recorded and stored to confirm their identities in order to trade on the cryptocurrency exchange."  (Id. ¶¶ 25, 28.)  BAM's TOU dictate the account creation process.  Under the heading "Account Creation," BAM's TOU provide for the "Setup" of accounts:  "Full use of our Services requires that you create an Account(s) by: (1) providing us with information such as your full name, email address . . . , and such other information as we may require; (2) selecting a strong password; and (3) accepting these Terms."  (Ex. D. at 5.)  BAM's TOU then provide for "Identity Verification" as described above, which requires users "to complete certain verification procedures before [they] are permitted to use the Services."  (Id. at 6.)  Since the account creation process is governed by

BAM's TOU and Plaintiff's BIPA claim turns on the account creation process, Plaintiff's BIPA claim could not exist without BAM's TOU.

Despite invoking BAM's TOU, Plaintiff alleges for the first time in the FAC that he was "not required to scroll through these Terms of Use during the account creation process and proper assent" – whatever that means – "was not otherwise obtained." (FAC ¶ 40.) Tellingly, Plaintiff does not and cannot allege that he did not accept BAM's TOU. That is not surprising. As BAM's TOU expressly state **on the very first page**:

> You agree that you have read, understand, and accept these Terms by signing up for an Account(s) (defined below) with BAM, accessing our Website, or BAM APIs (where available). If you do not agree with these Terms, do not access or use the Services, Sites, or any other aspect of our business.

(See Ex. D. at 1.) This Court should not credit Plaintiff's bald assertion that he did not give "proper assent" where it is contradicted by BAM's TOU.

Garcia v. Enter. Holdings, Inc., 78 F. Supp. 3d 1125 (N.D. Cal. 2015), is directly on point. There, the "[p]laintiff denie[d] having conferred his consent." Id. at 1136. "[T]he documents proffered by [d]efendants establish[ed] that in order to sign up for and use [the app], a user must agree to the TOS [i.e., Terms of Service] and Privacy Policy," which stated that, "[b]y using the site, you do hereby represent and warrant that you have read, understand and agree to all terms of this Privacy Policy and Terms of Service." Id. (internal quotation marks omitted). As a result, the court rejected the plaintiff's allegations that "he was unaware of and did not consent to" the Terms of Service and Privacy Policy. Id. This Court should do the same. Indeed, courts routinely hold that a consumer's acceptance of a company's online terms of use, regardless of whether the consumer actually reviewed the terms of use prior to indicating acceptance, constitutes valid assent as a matter of law. See, e.g., Fischer v. Instant Checkmate LLC, No. 19 C 4892, 2021 WL 3033586, at *6 (N.D. Ill. July 19, 2021); Miracle-Pond v.

Shutterfly, Inc., No. 19 CV 04722, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020).

For all of these reasons, Plaintiff's BIPA claim against BAM is subject to the choice-of-law provision in BAM's TOU.

### 2.    This Court Should Enforce the Choice-of-Law Provision in BAM's Terms of Use.

Under Illinois law, a choice-of-law provision is enforced "unless it would **both** violate fundamental Illinois public policy **and** Illinois has a materially greater interest in the litigation than the chosen State." Midway Home Entm't, Inc. v. Atwood Richards, Inc., No. 98 C 2128, 1998 WL 774123, at *2 (N.D. Ill. Oct. 29, 1998) (emphasis added; internal quotation marks omitted).  Neither is the case here.

**First**, the choice-of-law provision applying California law does not violate fundamental Illinois public policy.  Under Illinois law, a court "should not refuse to apply the law of a foreign State, however unlike its own, unless it is contrary to pure morals and abstract justice, or unless enforcement would be of evil example and harmful to its people." Potomac Leasing Co. v. Chuck's Pub, Inc., 156 Ill. App. 3d 755, 759 (2d Dist. 1987).  "The fact that a different state may provide certain statutory rights for a plaintiff which are not available under the chosen state's law does not invalidate a choice-of-law provision as contrary to public policy." WTM, Inc. v. Henneck, 125 F. Supp. 2d 864, 868 (N.D. Ill. 2000).  "Illinois courts . . . have enforced parties' choice-of-law provision even though a foreign state's [law] left the Illinois residents no recourse." Midway, 1998 WL 774123, at *3 ("[T]he choice-of-law provision requiring the application of New York law bars the Illinois Consumer Fraud Act claim.").

To state the obvious, the application of California law is not "contrary to pure morals and abstract justice" or "of evil example and harmful to [Illinois'] people." Id.  "[T]he public policy of [Illinois] must be sought in its constitution, legislative enactments and judicial decisions," and

"there is no Illinois legislative enactment, judicial decision, or constitutional provision which articulates a public policy against applying [California law]." Id. at *2, *3. Moreover, California law itself protects biometric information. The California Consumer Privacy Act of 2018 (the "CCPA") – like BIPA – regulates the collection, use, and disclosure of biometric information. Cal. Civ. Code § 1798.100 et seq. The CCPA enumerates "consumer rights to request information regarding personal information collected by businesses," id. § 1798.110(a), and requires businesses to "inform consumers as to the categories of personal information to be collected and the purposes for which the categories of personal information shall be used," id. § 1798.100(b). That "personal information" includes "[b]iometric information," id. § 1798.140(o), which is "an individual's physiological, biological, or behavioral characteristics," including but not limited to "imagery of the . . . face . . . from which an identifier template . . . can be extracted, " id. § 1798.140(b). The California Privacy Rights Act of 2020 (the "CPRA") expands and enhances the CCPA. See generally Cal. Civ. Code § 1798.100, et seq. (operative Jan. 1, 2023). The CPRA contains additional regulations concerning biometric information, including categorizing biometric information as "sensitive" information entitled to heightened protections. See generally id. Indeed, it is well-recognized that California is at the forefront of privacy regulation in the United States.[10]

**Second**, Illinois does not have a materially greater interest in this litigation than California. California has an interest in the application of California law to California businesses. "[C]ourts have noted the importance of enforcing choice of law provisions for businesses with nationwide consumers to limit the risk and expenses of litigation under different

---

[10] See, e.g., Thorin Klosowski, The State of Consumer Data Privacy Laws in the US (And Why It Matters), N.Y. TIMES: WIRECUTTER (Sept. 6, 2021) (California's data privacy laws are "the strongest in the US"), https://www.nytimes.com/wirecutter/blog/state-of-privacy-laws-in-us/.

laws in every state." <u>Abat v. Chase Bank USA, N.A.</u>, 738 F. Supp. 2d 1093, 1096 (C.D. Cal. 2010).  That is certainly true here.  BAM (as well as Jumio) maintains its principal place of business in California with users that cross state lines.  (<u>See</u> FAC ¶¶ 18-19.)  Illinois has an interest in protecting its citizens' rights under BIPA, but that is not a materially greater interest than California's interest.  Indeed, Illinois courts consistently enforce choice-of-law provisions even when it results in Illinois citizens losing their statutory rights.  (<u>See</u> <u>supra</u> at 12.)

Since the choice-of-law provision in BAM's TOU would not violate fundamental Illinois public policy and Illinois does not have a materially greater interest in this litigation than California, this Court should enforce the choice-of-law provision and apply California law to dismiss Plaintiff's BIPA claim – which is brought under Illinois, not California, law – against BAM.  <u>See, e.g.</u>, <u>M. Block & Sons, Inc. v. IBM Corp.</u>, No. 04 C 340, 2004 WL 1557631, at *7 (N.D. Ill. July 8, 2004) ("Because New York law controls . . . , Plaintiff cannot bring an Illinois statutory claim against Defendant.").[11]

### C.     This Court Should Dismiss Plaintiff's BIPA Claim Against BAM Because BIPA Does Not Apply Extraterritorially.

"[BIPA] is not authorized to have extraterritorial effect."  <u>Rivera v. Google Inc.</u>, 238 F.

---

[11] Although the court in <u>In re Facebook Biometric Information Privacy Litig.</u>, 185 F. Supp. 3d 1155 (N.D. Cal. 2016), held that a choice-of-law provision that would have applied California law to a BIPA claim was unenforceable under California's choice-of-law rules, that decision is not only non-binding (and, in BAM's view, wrongly decided) but also inapplicable.  **First**, the <u>Facebook</u> court concluded that application of California law would violate fundamental Illinois public policy because "California has no law or policy equivalent to BIPA" and, "[u]nlike Illinois, California has not legislatively recognized a right to privacy in personal biometric data." <u>Id.</u> at 1169-70.  That is no longer true.  In 2018 – two years after the <u>Facebook</u> decision – California **did** legislatively recognize a right to privacy in personal biometric data by passing the CCPA, which California voters expanded in 2020 by passing the CPRA.  (<u>See</u> <u>supra</u> at 13.) **Second**, the <u>Facebook</u> court applied California's choice-of-law rules, not Illinois'.  <u>Id.</u> at 1168. As the <u>Facebook</u> court recognized, that was "potentially significant" to its decision because "Illinois uses a 'pure morals and abstract justice' consideration" while California does not.  <u>Id.</u> at 1167 n.1 (quoting <u>Potomac Leasing</u>, 156 Ill. App. 3d at 759).

Supp. 3d 1088, 1100 (N.D. Ill. 2017).  "BIPA violations must occur in Illinois in order for

plaintiffs to obtain any relief."  McGoveran v. Amazon Web. Servs., Inc., C.A. No. 20-1399-

LOS, 2021 WL 4502089, at *3 (D. Del. Sept. 30, 2021).  A violation is deemed to occur in

Illinois when "the circumstances that relate to [it] occur primarily and substantially in Illinois."

Avery v. State Farm Mut. Auto. Ins. Co., 216 Ill. 2d 100, 187 (2005).

In an apparent response to Defendants' motions to dismiss, Plaintiff alleges for the first

time in the FAC that he created an account "while he was present in Cook County, Illinois."

(FAC ¶ 26.)  That allegation is not enough.  Plaintiff concedes that BAM (and each of the other

Defendants) is a non-resident and has a principal place of business outside of Illinois.  (Id. ¶¶ 17-

19, 22.)  As a result, Plaintiff does not establish that the alleged BIPA violation occurred

primarily and substantially in Illinois.[12]

McGoveran is directly on point.  There, Illinois residents alleged that non-residents

violated BIPA by extracting "their biometric identifiers and biometric information, including

their voiceprints," from "calls originating from Illinois, from Illinois citizens, and from . . .

Illinois phone numbers."  2021 WL 4502089, at *4 (internal quotation marks omitted).  The

court dismissed the BIPA claim because the "location of the caller does not . . . say anything

about the location where the rest of the conduct occurred."  Id.  Since the defendants were

"located wholly outside Illinois," the complaint provided "no indication . . . that [d]efendants did

anything in Illinois."  Id.  In an attempt to save their BIPA claim, the plaintiffs urged "the

adoption of a rule" holding that, "under BIPA, as long as the source of the biometric data is

---

[12] Plaintiff also makes the formulaic recitation that "Defendants' acts and omissions, at relevant
times, have occurred in the course of trade or commerce in the State of Illinois."  (FAC ¶ 57.)
That naked legal conclusion may not be considered on a motion to dismiss.  "While factual
allegations must be accepted as true, legal conclusions may not be considered."  See Agnew v.
Nat'l Collegiate Athletic Ass'n, 683 F.3d 328, 334 (7th Cir. 2012) (citing Iqbal).

Illinois, that's enough to establish liability." Id. at *6.  The court rejected that "overly broad and ultimately untenable" rule because it "flies in the face of Illinois cases holding that a plaintiff's residency is not enough to survive a motion to dismiss based on extraterritoriality."  Id.

This Court should reach the same result and dismiss Plaintiff's BIPA claim against BAM.

### D.     This Court Should Dismiss Plaintiff's BIPA Claim Against BAM Because Plaintiff Does Not Adequately Allege That BAM Violated BIPA.

Pursuant to Federal Rule of Civil Procedure 8, BAM – like any defendant – "is entitled to know what [it] did that is asserted to be wrongful." Bank of Am., N.A. v. Knight, 725 F.3d 815, 818 (7th Cir. 2013).  "Notice pleading and vague allegations of collective conduct don't go hand-in-hand; these types of lumped allegations are inadequate under [Rule 8]." Patel v. Fendler, No. 15-CV-0366-MJR-SCW, 2016 WL 336017, at *1 (S.D. Ill. Jan. 28, 2016).  Details about each defendant's conduct "are not merely nice-to-have features of an otherwise-valid complaint; to pass muster under [Rule 8], a claim to relief must include such particulars." Atkins v. Hasan, No. 15 CV 203, 2015 WL 3862724, at *2 (N.D. Ill. June 22, 2015).

Plaintiff largely fails to plead which Defendant did what, leaving BAM and this Court to speculate.  As discussed above, Plaintiff alleges that "Illinois users and account holders with [BAM] had their biometric data collected, recorded and stored to confirm their identities in order to trade on the cryptocurrency exchange."  (FAC ¶ 25.)  Plaintiff, however, lumps together Defendants.  For example:

- "Binance, [BAM] and Jumio obtained biometric identifiers and information from users of its exchange, including facial geometry data, without first notifying them, without disclosing the length for collection, storage and use of this information and without obtaining proper written consent." (Id. ¶ 15.)

- "Binance, with assistance and control from or as an alter ego of [BAM], collected [Plaintiff]'s and other Illinois [BAM] users' biometric information and identifiers or is otherwise responsible for the collection of this biometric data."  (Id. ¶ 44.)

- "Defendants recorded, collected, and stored [Plaintiff]'s and other Class members' 'biometric information', based on 'biometric identifiers' used to identify them, through the use of facial scanning and mapping and as defined by [BIPA]." (Id. ¶ 58.)

On their face, such allegations do not identify the conduct by BAM (as distinct from that by other Defendants) with respect to the alleged collection, recording, and storage of biometric data.

Presumably to address Defendants' motions to dismiss, Plaintiff sprinkles additional references to BAM, Binance, and Jumio throughout his FAC (see, e.g., id. ¶¶ 15, 33, 34, 39), but Plaintiff still has not adequately alleged what BAM did with respect to his biometric data. The FAC "without any details about who did what . . . is inadequate" and "does not propound a plausible contention that a particular person," much less BAM, "did anything wrong." Knight, 725 F.3d at 818.[13]

Therefore, this Court should dismiss Plaintiff's BIPA claim against BAM.

## II.   THIS COURT SHOULD DISMISS PLAINTIFF'S UNJUST ENRICHMENT CLAIM AGAINST BAM.

This Court should dismiss Plaintiff's unjust enrichment claim against BAM because (1) it is derivative of the BIPA claim and (2) Plaintiff does not adequately allege that BAM has been unjustly enriched.

**First**, Plaintiff's unjust enrichment claim is derivative of his BIPA claim. "Unjust enrichment is not a separate cause of action under Illinois law." Horist v. Sudler & Co., 941 F.3d 274, 281 (7th Cir. 2019). "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim . . . will stand or fall with the related claim." Cleary v. Philip Morris Inc., 656 F.3d 511, 517 (7th Cir. 2011). Plaintiff's unjust

---

[13] In an apparent effort to sidestep this fatal defect, Plaintiff also makes a series of naked legal conclusions that expressly lump together Defendants. (FAC ¶ 20.) Those conclusory allegations do not state a claim (see supra at 2-3, 16) and only highlight Plaintiff's failure to plead each Defendant's – and specifically BAM's – role with respect to the alleged collection, recording, and storage of his biometric data.

enrichment claim depends on the same conduct as his BIPA claim.  As a result, this Court should dismiss Plaintiff's unjust enrichment claim alongside the dismissal of his BIPA claim.

**Second**, Plaintiff does not adequately allege an unjust enrichment claim against BAM. To plead an unjust enrichment claim, "a plaintiff must allege that the defendant has [1] unjustly retained a benefit [2] to the plaintiff's detriment, and that [3] defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."  HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 131 Ill. 2d 145, 160 (1989).  Plaintiff fails to do so.

Plaintiff does not plead facts showing that BAM unjustly retained a benefit.  Plaintiff alleges that "Binance and [BAM] received monetary gain via payment of fees from its users and account holders for the purchase and transfer of digital assets and cryptocurrency."  (FAC ¶ 67.) Plaintiff does not, however, plead that BAM failed to provide the trading services for which it allegedly collected fees.  Consequently, Plaintiff cannot claim unjust enrichment.  See Cummings by Techmeier v. Briggs & Stratton Ret. Plan, 797 F.2d 383, 390 (7th Cir. 1986).

Moreover, Plaintiff does not plead facts showing a detriment.  Plaintiff alleges that "Plaintiffs and Class members, to their detriment, have conferred benefits on Defendants Binance and [BAM] by creating accounts and using their software and exchange platform for purchases relating to digital assets."  (FAC ¶ 68.)  Plaintiff does not identify the "benefits" conferred on BAM to his "detriment" but, whatever those "benefits" may be, they are not related to biometric information.  Indeed, Plaintiff himself admits that the "payment of fees from [BAM's] users and account holders" was "for the purchase and transfer of digital assets and cryptocurrency" – not for the biometric information of Plaintiff (or anyone else).  (Id. ¶ 67.)

Further, Plaintiff does not plead any facts at all to support his conclusory allegation that "Defendants' retention of fees from sales and transfers to and for Plaintiff and the Class violates

fundamental principles of justice, equity, and good conscience."  (Id. ¶ 69.)  Plaintiff's formulaic

recitation of this element is inadequate as a matter of law.  (See supra at 2-3.)

Accordingly, this Court should dismiss Plaintiff's unjust enrichment claim against BAM.

### III.  THIS COURT SHOULD DISMISS PLAINTIFF'S CLASS ACTION ALLEGATIONS AGAINST BAM BECAUSE PLAINTIFF HAS WAIVED ANY CLASS ACTION CLAIMS AGAINST BAM.

This Court should dismiss Plaintiff's class action allegations against BAM because, by

accepting BAM's TOU, Plaintiff has waived all rights to assert class action claims against BAM.

BAM's TOU, which expressly "govern [Plaintiff's] access and use of the Services provided by

BAM" (Ex. D. at 1), contain the following "Class Action Waiver":

> TO THE EXTENT PERMITTED BY LAW, ALL CLAIMS MUST BE
> BROUGHT IN A PARTY'S INDIVIDUAL CAPACITY, AND NOT AS A
> PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS,
> COLLECTIVE ACTION, OR REPRESENTATIVE PROCEEDING.  UNLESS
> BOTH YOU AND BAM AGREE, NO . . . JUDGE MAY CONSOLIDATE
> MORE THAN ONE PERSON'S CLAIMS . . . . BY AGREEING TO THESE
> TERMS, YOU ACKNOWLEDGE THAT YOU AND BAM EACH WAIVE
> THE RIGHT TO . . . PARTICIPATE IN A CLASS ACTION.

(Ex. D. at 20.)

The Supreme Court has repeatedly held that such class action waivers are enforceable.

See, e.g., Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1628 (2018); Am. Exp. Co. v. Italian Colors

Rest., 570 U.S. 228, 238 (2013); AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 352 (2011).

So have Illinois and California courts.  See, e.g., Kinkel v. Cingular Wireless LLC, 223 Ill. 2d 1,

41 (2006); Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 364 (2014).

This Court should do the same, especially on the facts here.  BAM's TOU (1) directed

users to read them "carefully" and explained that "[t]he Terms you see below are important"

because (among other things) "they . . . [c]ontain a class action waiver" (Ex. D. at 1);

(2) informed users that "[t]hese Terms . . . constitute valid and legally binding obligations,

enforceable against you in accordance with their respective terms" (id. at 12); and (3) confirmed with users that "[y]ou agree that you have read, understand, and accept these Terms by signing up for an Account(s) . . . with BAM" and that, "[i]f you do not agree with these Terms, do not access or use the Services, Sites, or any other aspect of our business" (id. at 1).  Although Plaintiff now seeks to escape this class action waiver by alleging that he was "not required to scroll through these Terms of Use during the account creation process and proper assent was not otherwise obtained" (FAC ¶ 40), Plaintiff validly assented to BAM's TOU – including the class action waiver – by creating an account with BAM (see supra at 11-12).

Therefore, this Court should dismiss Plaintiff's class action allegations against BAM because Plaintiff has waived any class action claims against BAM.  See, e.g., Niiranen v. Carrier One, Inc., No. 20-CV-06781, 2022 WL 103722, at *9 (N.D. Ill. Jan. 11, 2022) (dismissing class allegations based on a class action waiver).[14]  If Plaintiff's claims against BAM proceed at all, they can proceed only on an individual basis.

## CONCLUSION

For all of the foregoing reasons, this Court should dismiss the FAC against BAM with prejudice.  Dismissal with prejudice is appropriate where, as here, Plaintiff has "failed to remedy the deficiencies in [his] pleadings despite having been given multiple opportunities to do so." Lee v. Ne. Ill. Reg'l Commuter R.R. Corp., 912 F.3d 1049, 1053 (7th Cir. 2019); see also Suber v. City of Chicago, No. 10 C 2876, 2011 WL 1706156, at *5 (N.D. Ill. May 5, 2011) (dismissal with prejudice where "Plaintiff ha[d] already used his one-time right to amend as a matter of course . . . in response to the first motion to dismiss").

---

[14] Alternatively, this Court should strike Plaintiff's class action allegations against BAM pursuant to Federal Rule of Civil Procedure 12(f) for the same reasons.  See, e.g., Hill v. Wells Fargo Bank, N.A., 946 F. Supp. 2d 817, 832-33 (N.D. Ill. 2013) (striking class allegations where a class could not be maintained).

Dated:  March 15, 2022

Respectfully submitted

GOODWIN PROCTER LLP

/s/ Daniel Roeser
Daniel Roeser (admitted *pro hac vice*)
droeser@goodwinlaw.com
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.:  +1 212 813-8800
Fax:  +1 212 355-3333

Brendan R. Blake (admitted *pro hac vice*)
bblake@goodwinlaw.com
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.:  +1 617 570 1000
Fax:  +1 617 523 1231

Megan D. Bettles (admitted *pro hac vice*)
mbettles@goodwinlaw.com
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel.:  +1 415 733 6000
Fax:  +1 415 677 9041

*Attorneys for Defendant BAM Trading
Services Inc.*

## CERTIFICATE OF SERVICE

I, Daniel Roeser, an attorney, hereby certify that, on March 15, 2022, I caused the

foregoing to be electronically filed via the Court's CM/ECF system, which effected service on

all counsel of record.

*/s/ Daniel Roeser*

Daniel Roeser
