# EXHIBIT B

```
 1          IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT
                        DU PAGE COUNTY, ILLINOIS
 2
       JANE DOE, individually and on     )
 3     behalf of all others similarly    )
       situated,                         )
 4                                       )
                    Plaintiff,           )   20 L 1400
 5                                       )   (Motion)
            -vs-                         )
 6                                       )
       ELMHURST UNIVERSITY,              )
 7                                       )
                    Defendant.
 8

 9

10                   REPORT OF VIDEOCONFERENCE PROCEEDINGS

11     had at the HEARING of the above-entitled cause, before

12     the Honorable BRYAN S. CHAPMAN, JUDGE OF, DuPage

13     County, Illinois, recorded via Zoom and transcribed by

14     TRINA M. SPIZZIRRI, Certified Shorthand Official Court

15     Reporter, commencing on the 18th day of NOVEMBER, 2021.

16     PRESENT:

17
            BRIAN K. MURPHY,
18
                 appeared on behalf of the Plaintiff;
19

20          MR. CHRISTOPHER F. ALLEN,

21               appeared on behalf of the Defendant.

22

23

24
```

1       THE COURT:  All right.  Good morning, everyone.

2   This is courtroom 2010.  This is 20 L 1400, Doe versus

3   Elmhurst University.

4       Do the parties want to go ahead and identify

5   themselves for the record?

6       MR. MURPHY:  Good morning, your Honor.

7       Brian Murphy on behalf of the plaintiffs.  In

8   my office with me as well is Jonathan Misney (sic).

9       MR. ALLEN:  Good morning, your Honor.

02:38PM 10       Christopher Allen on behalf of Elmhurst

11   University.  My colleague, Christopher Dean, (sic) is

12   with me as well.

13       THE COURT:  Ms. Olivieri, are you here to observe

14   or are you part of the case in any way, shape, or form?

15       MS. OLIVIERI:  I'm just here to observe, judge.

16       THE COURT:  Okay.  Thanks very much.

17       Okay.  We are here on Elmhurst's motion to

18   dismiss.  Thank you for the courtesy copies.  I've had

19   a chance to review everything.  I've had a chance to

02:39PM 20   look at the New York State Bar case as well.

21       Mr. Allen, it's your motion.  I'll let you go

22   ahead and make your record as you like.  Mr. Murphy, I

23   may have some questions for the parties.  Let me just

24   say I think it's worth pointing out, and I think this

1    goes without saying on some level.  You know, the Court

2    is going to have to make a decision one way or another

3    on this.  And at some point, whichever way the Court

4    goes, another Court may disagree, and that's life.  So

5    the Court is going to do it's level best to get this

6    one right, and we'll see where we land.  But I am

7    interested in the parties' remarks today.  And I look

8    forward to an enlightening conversation here this

9    morning.

02:42PM  10           And, again, I may ask some questions, but I

11   certainly want to let you make your record.

12           Mr. Allen, you may proceed.

13       MR. ALLEN:  Thank you, your Honor.

14           I know, as you said, you read everything so I

15   just want to briefly highlight three main points.  The

16   first is the relevance standard which is whether

17   Elmhurst is significantly engaged in financial

18   activities.  And that standard comes directly from the

19   implementing regulations and specifically 16CFR313.3K1.

02:43PM  20   Plaintiff makes an argument in their brief that

21   Elmhurst business is education, not financial

22   activities.  But that isn't the relevant question under

23   the implementing regulations.  The relevant question is

24   simply whether Elmhurst significantly engages in

1    financial activities.

2           The second point I would like to make, your

3    Honor, is that it's not disputed that Elmhurst is

4    actually regulated by the GLBA.  We presented

5    undisputed evidence that the Department of Education

6    monitors Elmhurst for GLBA compliance, that Elmhurst is

7    audited for GLBA compliance, and that the Department of

8    Education has specifically corresponded with Elmhurst

9    about GLBA compliance issues and has reminded Elmhurst

02:46PM 10    that failure to comply with the GLBA could jeopardize

11    its ability to participate in student loan programs.

12    And that determination is also backed up by a variety

13    of other evidence including the Dear Colleague letters

14    that the Department of Education has issued to colleges

15    and universities reminded them that they need to comply

16    with the GLBA.  Obviously, the FTC's final rule itself

17    which specifically rejected our request for an

18    exemption for colleges and universities and then the

19    actual financial activities that Elmhurst engages in

02:49PM 20    which include, you know, being involved in every step

21    of the process by which students borrow 25 million

22    dollars a year in student loans and also personally

23    serving as the lender of millions of dollars of federal

24    Perkins loans over the years.  And Elmhurst had an

1  active Perkins loan portfolio of more than a million

2  dollars as recently in this year.

3        So we don't think there is any reasonable

4  dispute about whether Elmhurst is actually subject to

5  the GLBA, and we think it's the kind of easily-proved

6  issue that's appropriate for resolution on a 2-619

7  motion.

8        And the final point I would like to make,

9  your Honor, is just -- I won't (sic) exercise what it

02:52PM 10  is plaintiff is asking this Court to do. The FTC

11  promulgated its final rule two decades ago and since

12  that time an entire regulatory scheme has built up

13  around it.  As I mentioned, the Department of Education

14  has reminded colleges and universities that they need

15  to comply with this provision.  It monitors them for

16  compliance.  Colleges and universities have built up

17  compliance programs around it, and plaintiff is

18  essentially asking the Court to throw that entire

19  scheme out or at least to call it into serious doubt

02:54PM 20  and to leave a lot of confusion as to whether colleges

21  and universities still are or are not subject to the

22  GLBA.  And the only case plaintiff really cites in

23  support of that proposition is the New York State Bar

24  case which for the reasons we set forth in our brief we

1    believe supports us and not the plaintiff.

2           And with that, your Honor, I'm happy to

3    answer any questions the Court may have.  But we do

4    think that this is ready for resolution and should be

5    dismissed.

6        THE COURT:  Mr. Allen, do you believe the Court

7    should apply -- are you -- is Elmhurst asking the Court

8    to apply Chevron Deference to the FTC's ruling?

9        MR. ALLEN:  I certainly think that it is entitled

02:56PM 10    to Chevron Deference.  It was the product of formal

11    notice and comment rule making.  The FTC obviously did

12    receive specific comments on this question which it

13    considered and rejected and did provide an actual

14    reason for its determination which is that many, if

15    not, all colleges and universities are engaged in

16    significant student lending activities.  And so we do

17    think that that determination is entitled to Chevron

18    Deference unlike, for example, the opinion letter in

19    the New York State Bar case which was not the product

02:58PM 20    of formal notice and rule making thus was not entitled

21    to Chevron Deference.

22        THE COURT:  You know, my administrative law class

23    in law school focused more on nuclear power.  And so

24    it's not nuclear power, but I haven't had a chance to

1  engage in Chevron Deference sort of the red-headed
2  stepchild of setting confirmation hearings.  All sorts
3  of legal doctrines get slammed and Chevron Deference
4  sometimes gets referenced every so often if you are up
5  late enough and you watch C Span and committee
6  hearings.
7         Let me ask you about the final -- the nature
8  of the final rule here that came out, the May 2000
9  final rule.  We disagree -- the commission disagrees
03:01PM  10  that they are not financial institutions.  And as we
11  know, BIPA says, any financial institution that is
12  subject to GLBA is exempt under this statute in any
13  way, shape, or form.  Is it your position -- I guess it
14  kind of goes without saying, is it your position that
15  if the Court finds the FTC final rule persuasive that
16  ends the inquiry.
17     MR. ALLEN:  I believe that it certainly would be
18  sufficient, your Honor.  I don't think that the Court
19  needs to find that this is --
03:02PM  20     THE COURT:  Let me rephrase that.  That for
21  purposes of colleges and universities, it ends the
22  inquiry as to whether or not colleges and universities
23  are financial institutions for purposes of GLBA.
24     MR. ALLEN:  I believe that is sufficient, your

1   Honor --

2       THE COURT:  A separate question about is Elmhurst

3   factually in that world.  But do you agree that that

4   would end the inquiry?

5           And, Mr. Murphy, let me just ask you a

6   response there.  Would you agree that if the Court

7   found that a final rule persuasive as to the nature of

8   colleges' and universities' relationships, the GLBA.

9       MR. MURPHY:  No.  I would, your Honor, because,

03:04PM 10  again, if you look at what the FTC said they said many,

11  if not all, appear to be significantly engaged and then

12  that's why we're back into this quandary in terms of,

13  okay, what does it exactly mean to be significantly

14  engaged?

15          Again, and I'll let Mr. Allen finish with

16  that but in the answer to your question, that would be

17  our position.

18      THE COURT:  What's your response to that?  It's a

19  federal rule, but there is some space there.

03:05PM 20      MR. ALLEN:  Your Honor, what I would say there is,

21  you know, as the Court knows, there is a specific FERPA

22  exemption that is in there which would not be necessary

23  if, you know, there were significant doubt as to

24  whether colleges and universities, you know, were

1    otherwise subject to the GLBA.  You wouldn't need to

2    say that to the extent you are complying with FERPA,

3    you are also complying with the GLBA if there was a

4    significant open question as to whether the GLBA

5    applied to colleges and universities.  And so I think

6    that that does reflect a clear intent to subject

7    colleges and universities.

8         THE COURT:  You know, Mr. Murphy, one thing I

9    believe I inquired with you about or both parties

03:13PM  10    perhaps at one of our earlier hearings is whether or

11    not, you know, this literally may just be an issue

12    where the legislature has to fix this.  This may not be

13    what was intended, but there may just be an issue here.

14         MR. MURPHY:  Your Honor, if I might --

15         THE COURT:  I want to lead you to something else

16    here, but I want you to --

17         MR. MURPHY:  Well, I find it interesting that

18    we're talking about, we're talking about an exception

19    to BIPA to which colleges and universities are not

03:15PM  20    specifically mentioned which makes reference to a

21    federal statute which, again, they are not specifically

22    mentioned.  They are not specifically covered.  Your

23    Honor, I pointed out, you know, the original

24    Gramm-Leach-Bliley Act is 145 pages.  You know, and

1    it's got many, many provisions.  It goes on and on.

2    But it's interesting to note, your Honor, in those 145

3    pages, there is not a single mention of a college of a

4    university, of a school, of a student, or a FERPA.

5    It's very clear that those weren't things to be covered

6    by this statute.  And that's why -- again, we go back

7    to the plain language of the statute which is, you

8    know, the FTC can't make rules creating sort of new

9    avenues of the law.  They can engage in rule making,

03:17PM 10    but the law itself, as we point out, repeatedly says a

11    financial institution is someone who is in the business

12    of engaging in financial transactions.  That's

13    critical.

14        THE COURT:  Let me engage you on that because

15    there was a footnote, I believe, in defendant's reply

16    about whether or not, and I'm not suggesting that this

17    is dispositive in the Court's mind, but it strikes me

18    that there is at least an interesting question about

19    whether or not plaintiff in this case has the kind of,

03:18PM 20    you know, for lack of a better term, standing to

21    address whether or not the FTC overstepped their bounds

22    or simply went outside the authority promulgated to it

23    with respect to GLBA.  In other words, you might be

24    right, but that's a conversation for different day.

1    MR. MURPHY:  But, your Honor, what we're talking

2  about is what did the Illinois legislature mean when

3  they provided this exemption.  Who does this exemption

4  cover?  Right.  So at the end of the day, you know,

5  that's this Court's decision to make, and we have

6  standing to make that argument.  The idea that, you

7  know, were not -- again, if the Court rules here for us

8  all that happens is that BIPA applies to colleges.  It

9  doesn't have the affect.  Obviously, the Court doesn't

03:20PM 10  have the jurisdiction, right, to sort of set aside

11  whatever the FTC did.  But, certainly, the Court has

12  the authority to set in Illinois law what the exemption

13  for BIPA means.  And so that's how I would respond to

14  it.  I think that's a little bit of a red herring in

15  terms of, you know, procedurally, we're not seeking to

16  strike anything down.  We're saying if you just follow,

17  you know, the express language of BIPA through the GLBA

18  that the exemption doesn't apply to colleges and

19  universities.

03:23PM 20    THE COURT:  Let me direct you, Mr. Murphy, and I'm

21  happy to let you make your record as well.  But I'm

22  particularly curious if your open to answering a

23  question I have.  Defendant's reply at seven, and I'm

24  just going to read you the paragraph, and I'll invite

1    your response to this.  And there is pages seven and

2    eight of what I'd like your responses to, and we'll

3    start with page seven.  And this goes to the third

4    point raised by Mr. Allen.  The practical effect of

5    plaintiff's argument would be to create a situation in

6    which Elmhurst is actually subject to the GLBA and must

7    comply with its requirements or lose access to student

8    loan programs but is, nevertheless, not subject to GLBA

9    for purposes of 1425C of BIPA.  That would be an

03:26PM 10   untenable result and one that is not supported by the

11   text of either the GLBA or BIPA.  Alternatively,

12   plaintiff is asking this Court to throw out an entire

13   regulatory framework that has been in place for 20

14   years leaving colleges and universities unsure of

15   whether GLBA still applies to them and whether such a

16   decision has broader implications.  Well, I invite your

17   response to that.

18        MR. MURPHY:  I actually I sort of noted that

19   provision in their brief as well.  But I sort of found

03:28PM 20   it somewhat ironic what they're complaining about is

21   having to be over protective of students' privacy

22   information.  There is no inconsistency between the

23   frameworks of -- let's remember, they comply with GLBA

24   by complying with FERPA, right, so they have to protect

1    students' educational information.  That's something

2    they should be doing.  In BIPA, again, requires them to

3    maintain without the necessary policies and consent

4    student biometric information.  There is nothing sort

5    of challenging or inappropriate about that.  In fact,

6    you know, when you look at the GLBA, right, it

7    specifically says that nothing in there is supposed to

8    over take more restrictive state statutes.  So, for

9    instance, there could be state statutes that actually

03:30PM  10   apply to legitimate financial institutions that require

11   additional requirements beyond the GLBA, and the

12   statute sort of invites that and welcomes that.  So

13   forgive me if I'm not particularly sympathetic to the

14   idea that the result of them not being a financial

15   institution for purposes of the BIPA exemption means

16   they have to be more cautious about students' privacy

17   and protecting their information.  That's something

18   that I think both the Illinois legislature and Congress

19   actually wanted, and it's certainly something that I

03:32PM  20   think their students would want.

21        THE COURT:  Is it fair, Mr. Murphy, to think that

22   1425C could be read to intend to avoid a preemption

23   issue?

24        MR. MURPHY:  It's certainly I suppose -- yes.

1   That's certainly possible.  Obviously, as we know, I

2   think from our prior briefing, there is no preemption

3   issue here because, again, in the statute the GLBA it

4   specifically says it does nothing as it relates to

5   allowing for more restrictive state statutes.  And it

6   specifically says it's not intended to do that.  When,

7   again, we don't have preemption issues here because

8   when you get to the GLBA, you know, as we said, a

9   university or college is not subject to the Bank

03:34PM  10   Holding Act, right, they can't -- they're not -- they

11   don't fall under that.  In fact, as I think we pointed

12   out in our brief, you know, a bank could never own a

13   college or university.  It's not one of the things they

14   are allowed to own.  And I think that's also important

15   to remember, your Honor, why the GLBA exists, why it

16   came into existence in the first place was, you know,

17   as a result of the lowering of the barriers between

18   banks and non banking activities allowing them to get

19   into things like selling insurance, engaging in

03:36PM  20   securities trading, things of that nature.  That's what

21   brought around this statute to begin with at its core.

22   And so that's why, you know, I think a lot of the

23   issues they raise sort of are just not on point when it

24   comes to this particular circumstance.

1          THE COURT:  Mr. Allen -- I have one more question

2     for you, Mr. Murphy.  But I'm going to give Mr. Allen a

3     chance to respond to your remarks there.

4          MR. ALLEN:  Sure, your Honor.

5               With respect to the question about whether

6     Elmhurst is somehow complaining about having to comply

7     with two statutes, I would just like to focus the Court

8     back on the language of the BIPA exemption which says

9     that a financial institution or an affiliate of a

03:38PM 10    financial institution that is subject to the GLBA, that

11    BIPA does not apply in any manner to such an

12    institution.  And so the question is not competing

13    obligations or anything like that.  The question is

14    just under the statute is Elmhurst subject to the GLBA,

15    and that is determined by looking to the FTC

16    regulations, to look into the statute, to look into the

17    FTC regulations, to look into how regularly we should

18    actually approach this and, you know, by suggesting

19    that, you know, this Court can somehow determine that

03:40PM 20    the exemption does not apply but not undermine the

21    fundamental regulatory scheme, I don't see how that's

22    possible given that the exemption just asks are you

23    subject to the GLBA and that is determined by looking

24    at the regulatory scheme by looking at the regulations

1    that the FTC has promulgated.

2              Second, on the point as to why the GLBA

3    exists, the GLBA exists to ensure that institutions

4    that collect a lot of financial information about their

5    customers, banks, or others are properly protecting

6    that information that is certainly a concern that

7    applies to colleges and universities given that, you

8    know, as we pointed out, they are heavily involved in

9    every aspect of the student lending process and

03:41PM  10   collected a lot of information in connection with that.

11   And it was certainly reasonable of the FTC to say the

12   GLBA protection should extend that far given the types

13   of activities that colleges and universities are

14   engaged in and the types of information that they

15   acquire as part of that process.

16        MR. MURPHY:  Your Honor, if I could quickly rebut

17   that one point.

18        THE COURT:  One second.  I want to hear it.  There

19   is something I want to ask you about.

03:42PM  20             Go ahead.

21        MR. MURPHY:  I just want to point out, the FTC

22   didn't say they have to comply with the GLBA.  The FTC

23   said if you comply with your preexisting FERPA

24   obligations, we'll deem you to have sort of complied

with the GLBA.  And so that's again why we're sort of,
in essence, punting on the issue because they didn't
actually make them subject to the GLBA.  All they said
was, you know, meet your current obligations under this
large federal framework that Congress put in place for
colleges and universities.  And if you do that, we'll
consider that compliance with the GLBA.

        THE COURT:  So, Mr. Murphy, one potential
distinction in your argument I wanted to point out and
hear your response is, it strikes the Court that there
is perhaps a difference between what is permissible
under the GLBA, perhaps a more restrictive or
protective state statute versus what BIPA actually did
here.  In other words, you're correct under GLBA
doesn't preclude BIPA.  But is it possible that the
BIPA statute that the Court is actually interpreting
has somehow exempted financial institutions that are
required to comply with GLBA whether or not they
intended to include colleges and universities or not.
Well, what they intended, you know, may not matter if
the Court finds that the FTC rule is clear and Elmhurst
is, in fact, you know, significantly engaged in
financial business or whatever this test is here I'm
going to get to in a second.  I mean, the fact that

1    they didn't have to exempt colleges and universities

2    may be a different question as to what the actual

3    exemption in BIPA does in its current form.  Is that a

4    fair distinction?

5         MR. MURPHY:  I think so, your Honor.  And, again,

6    I think we always go back to sort of going back to our

7    original argument.  I don't mean to do that.  But at

8    the end of the day, we're supposed to be interpreting

9    what did the Illinois legislature mean when they

03:47PM  10   drafted that exemption.  You know, the point right is

11   to, you know, give affect to their intent in that

12   regard.  And, certainly, we understand they said

13   financial institutions subject to Title Five of the

14   GLBA, again, we believe when you look at that, the base

15   definition, let's just go to the definition of a

16   financial institution the GLBA.  You know, it says

17   institutions that the business of which is engaging in

18   financial transactions.  It's not do you significantly

19   engage in them, but you engage in some.  It's that's

03:49PM  20   your business.  Your business is engaging in financial

21   activities.  And that's why we think the only entities

22   at that exemption should apply to, and we just don't

23   think it applies to colleges and universities, you

24   know, regardless of what the FTC has said.

1    MR. ALLEN:  Your Honor, may I briefly respond to

2  that?

3    THE COURT:  Hold on.  Yeah.  Go ahead.  Sure.

4    MR. ALLEN:  So I don't know that, you know,

5  plaintiff's counsel is making an assumption about what

6  the legislature intended and perhaps what the

7  legislature did or did not know about the GLBA at the

8  time there was an acting BIPA.  And I don't think there

9  is anything in the record indicating that that

03:50PM 10  assumption is warranted.  Obviously, the GLBA existed

11  at this time.  The relevant regulations existed at this

12  time.  And I don't think there is any reason to assume

13  that the Illinois legislature did not know what it was

14  doing.  And as the Court pointed out previously,

15  Illinois does not exactly have divided government.  So

16  to the extent that the legislature believes that, you

17  know, the exemption speaks too broadly given how the

18  FTC has interpreted the GLBA, we do believe that is a

19  question for the legislature to address if it feels

03:52PM 20  that it needs to.  But the suggestion that the

21  legislature made a mistake in how they drafted this

22  provision and that they must not have realized how the

23  FTC has interpreted it, I don't think there is any

24  reason to assume that that assumption is warranted.

1      MR. MURPHY:  Your Honor, if I might just rebut

2   briefly because on the prior briefing, there was, in

3   fact, evidence we put in there.  If you recall, when

4   the statute, when BIPA was introduced, one of the

5   sponsors were introducing it made specific mention that

6   there was an exemption for banks.  And, again, when we

7   go to, you know, when we go to the GLBA, right, it's

8   about, you know, banks and bank holding companies.

9   That's where the definition comes from, the Bank

03:54PM  10   Holding Act.  And so I would take issue with that.

11      The only other thing, your Honor, quickly I

12   wanted to also that reminded me in responding to their

13   brief, you know, throughout their brief they make

14   mention of things, factual things, that are sort of

15   unrebutted and that we didn't contest.  And, obviously,

16   I know your Honor is aware of this, but obviously, it's

17   our position we didn't get a chance to factually

18   challenge a lot of those things because we run

19   successful in our sort of prior discovery fight.

03:55PM  20   Understand why the Court did that.  But I just wanted

21   to sort of make the record was clear to the extent

22   there were no factual challenges on the scope of

23   exactly what they do do in the financial sector.  It's

24   because of our inability to get discovery in that

1    regard.

2         MR. ALLEN:  Your Honor, if I may, we did not seek

3    or obtain a stay of discovery.  We certainly objected

4    to certain discovery requests because we believed that

5    they were irrelevant.  And the Court, you know,

6    obviously, heard the motion to compel on that.  But as

7    a general matter, plaintiffs did get discovery on this

8    motion.  They did serve requests for both documents and

9    interrogatories as to why Elmhurst believed there was a

03:56PM 10   financial institution and what Elmhurst financial

11   activities were.  They did obtain Elmhurst financials.

12   They did obtain interrogatory responses so the, you

13   know, to the extent that counsel is suggesting there

14   was no opportunity for discovery, that is simply not

15   true.

16        THE COURT:  Let me ask this question.  Let me

17   actually go back to -- let me ask this question.  On

18   the New York State Bar case, a couple things jumped out

19   to me.  One is the informal nature of the proceeding

03:58PM 20   there.  It's distinct from the final rule that was

21   issued in May of 2000.

22             Mr. Murphy, I'm also interested, one thing

23   that jumped out to me is that the question of whether

24   or not attorneys are institutions.  That was, you know,

in the Court's reading of it, once the District Court

for the District of Columbia kind of decided, well,

they are not institutions in the first place.  So that

the die was cast.  You would agree that colleges and

universities are institutions.

MR. MURPHY:  Your Honor, it's funny you bring that

up because ironically it depends on what definition you

use for institution.  As I was preparing for this

argument --

THE COURT:  Don't they use a general definition?

MR. MURPHY:  Actually, your Honor, in the GLBA in

the insurance section, there is actually a definition

they use in the insurance section that make reference

to corporations, partnerships, and things like that

that could actually muddy the waters sort of in that

regard.

THE COURT:  Let me ask you this, Mr. Murphy.  At

page eight of the defendant's reply brief reads as

follows: Last full paragraph, plaintiff also errors in

asserting Elmhurst has failed to demonstrate that it is

subject to the GLBA.  As an initial matter, plaintiff

tellingly ignores evidence provided showing that it is,

in fact, subject to the GLBA.  In particular, a client

(sic) does not respond to Elmhurst evidence that, one,

1    Elmhurst has put in place a compliance program to

2    ensure it is abiding by the GLBA.  That Elmhurst is

3    audited each year for GLBA compliance.  Three, the

4    Department of Education reviews those audits and

5    monitors whether Elmhurst is compliant with the GLBA.

6    And, four, the Department of Education has corresponded

7    with Elmhurst directly regarding Elmhurst GLBA

8    compliance efforts and informed Elmhurst that failure

9    to comply with GLBA would jeopardize its ability to

04:03PM 10    participate in federal student loan programs.  And,

11    five, the Department of Education has sent multiple

12    dear colleague letters to Elmhurst and other

13    universities reminding them that colleges and

14    universities are subject to GLBA under the FTC's May

15    24th, 2000, final order.

16         Defendant maintains that plaintiff has not

17    rebutted this factual evidence.  What's your response

18    to that?

19         MR. MURPHY:  Well, I think some of those issues

04:04PM 20    were addressed in our motion to compel.  That was

21    denied.  Some of them -- and, again, we get back to the

22    issue, I'm not clear, at some points they argue that

23    their actual compliance with the GLBA doesn't matter.

24    It's whether or not they are subject to it or not.  But

1    in this regard, it seems like they are opening the door

2    now to, okay, is it about whether or not they actually

3    do engage in compliance efforts or not?  But generally

4    speaking, I would say on all those things, your Honor,

5    it gets back to the Department of Education does not

6    determine whether or not someone is entitled to be

7    covered by the GLBA or is entitled to the exemption

8    under BIPA.  So I don't know that any of that stuff

9    really matters all that much.  Because, your Honor,

04:06PM 10   actually at the beginning of their brief, they throw in

11   somebody else in addition to the Department of

12   Education which is their outside auditor concluded they

13   were subject to the GLBA.  And I would say their

14   outside auditor has as much impact on that analysis as

15   I do, your Honor.  To me, it's sort of what does the

16   statute say.  The fact that the Department of

17   Education, you know, audits them for things like that,

18   I don't think is of any moment.

19        THE COURT:  Okay.  In the face of the following,

04:07PM 20   I've got section 1425C of BIPA provides nothing in this

21   Act shall be deemed to apply in any manner to a

22   financial institution or an affiliate of a financial

23   institution that is subject to Title Five of the

24   federal Gramm-Leach-Bliley Act, 1999, and rules

1    promulgated thereunder.

2              So the question becomes is Elmhurst

3    university a financial institution.  The FTC, which was

4    Congress promulgated will make an authority to the FTC

5    with respect to GLBA.  And on May 24th, 2000, the FTC

6    said in a final rule, the commission disagrees with

7    those commentators who suggest that colleges and

8    universities are not financial institutions.  Many, if

9    not all, such institutions appear to be significantly

04:09PM 10   engaged in lending funds to customers.

11             The question then becomes how persuasive is

12   the rule.  And if it is persuasive, is Elmhurst, in

13   fact, a financial institution itself.  The Court finds

14   the nature of the rule, the fact that it went through

15   formal notice and comment rule making, is persuasive.

16   The Court finds that the New York State Bar Association

17   case is distinguishable in that it was informal rule

18   making, moreover, the attorneys nature of it.  The

19   nature of the issue in front of the D.C. District Court

04:10PM 20   was distinct and not necessarily as analogous as one

21   would hope.  Moreover, the Court finds that the

22   evidence establishes free and clear of doubt, at least

23   in this Court's mind, that Elmhurst University itself

24   is a financial institution.  It's important to note

1    that plaintiff's counsel's observations about what the

2    inner workings, I'm sorry, the inner relatedness of

3    GLBA and BIPA may, in fact, be able to coexist.

4    Nevertheless, when the Court interprets 1425C of BIPA,

5    as the Court just recited, the Court finds that

6    Elmhurst University is, in fact, exempt, is a financial

7    institution.  And so the Court is going to go ahead and

8    grant the motion to dismiss because it is a financial

9    institution for the reasons I've indicated.

04:12PM 10            And, look, I understand that another Court

11    may disagree.  And we may just have to get clarity on

12    that.  But based on the record before it, based on the

13    plain language of the Statute, not going to the

14    legislative history, but just looking at the plain

15    language of 1425C, the Court finds that Elmhurst

16    University is a financial institution.  And as a

17    result, they are exempt in any manner from BIPA

18    compliance.

19            So for those reasons, I'm going to grant the

04:12PM 20    motion to dismiss.  I will obviously entertain a short

21    date if the parties would like it.  I will enter any

22    language that the parties would like in this order

23    today as well.  And as the Court said early on, this

24    one may, you know, other minds may disagree, and I

1    certainly appreciate that.  This was brought pursuant

2    to a 619.  A 619 admits the legal sufficiency of the

3    complaint and presumes a valid cause of action but

4    raises defects, defenses, or other affirmative matters.

5    And the Court finds that this is an affirmative matter.

6         The Court further finds that no meaningful

7    fact question exists on whether or not Elmhurst itself

8    is a financial institution given the record put before

9    the Court.  Again, it's conceivable another Court could

04:14PM 10   disagree.  But I think the plain language of the 1425C

11   makes clear that colleges and universities, whether the

12   legislature intended that or not in its current form,

13   1425C would apply to most colleges and universities.

14   And at the least, it would apply to Elmhurst in this

15   case.

16        So for those reasons, the motion is granted.

17   How would you parties like to proceed?

18        MR. ALLEN:  Your Honor, just a quick question of

19   clarification.  I presume given the nature of the

04:15PM 20   Court's ruling that the dismissal is with prejudice but

21   I just wanted to confirm that.

22        THE COURT:  With.  That in certain respects, you

23   know, or, I mean, that closes the case.  Obviously, if

24   the parties wish to bring some kind of motion to

1    reconsider, they can.  But this would be a final and

2    appealable order.

3          MR. MURPHY:  Your Honor, I promise not to file a

4    motion for reconsideration because I don't think I'll

5    be able to change your mind.

6          THE COURT:  I appreciate it.

7               Well, let me just say, I appreciate the

8    parties advocacy here.  The thorny (sic) issues I think

9    plaintiff raises some very interesting and challenging

04:16PM  10   questions.  Nevertheless, when I look at this, when the

11   Court looks at this, these are essentially questions of

12   law for a Court to decide and they have to be decided.

13   And, again, another Court may disagree, and I'll

14   certainly, you know, revisit these issues when and if

15   appropriate.  But the Court doing its level best finds,

16   for the reasons I've indicated, that Elmhurst's motion

17   is dismissed.  Motion is granted, and the dismissal

18   will be with prejudice.

19               Mr. Allen, will you go ahead and prepare the

04:18PM  20   order?

21          MR. ALLEN:  Yes, your Honor.

22          THE COURT:  Okay.  Thank you very much.

23          MR. ALLEN:  Thank you, your Honor.

24          MR. MURPHY:  Thank you, your Honor.

1        IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT

2                 DU PAGE COUNTY, ILLINOIS

3

4

5          I, TRINA M. SPIZZIRRI, hereby certify that I

6   am a Certified Shorthand Official Court Reporter

7   assigned to transcribe the Zoom videoconference

8   recording of proceedings had of the above-entitled

9   cause.

10        I further certify that the foregoing,

11  consisting of Pages 1 to 30, inclusive, is a true and

12  accurate transcript completed to the best of my

13  ability, based upon the quality of the audio recording.

14

15

16      _Trina Spizzirri_
           _____

17          Official Court Reporter
       Eighteenth Judicial Circuit of Illinois

18             DuPage County

19

20

21

22

23

24