# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KAMIL KUKLINSKI, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 3:21-cv-01425-SPM |
| BINANCE CAPITAL MANAGEMENT CO., LTD. d/b/a BINANCE, BAM TRADING SERVICES INC. d/b/a BINANCE.US and JUMIO CORPORATION, | ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT JUMIO CORPORATION'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

LEGAL STANDARD..................................................................................................................... 2

ARGUMENT................................................................................................................................... 2

    I.      BIPA Applies to BAM, and Thus to Jumio ............................................................ 2

    II.     The Relevant Conduct Occurred Primarily and Substantially in Illinois ............... 2

    III.    Jumio's compliance with BIPA section 14/15(a) is inadequate because their Privacy Policy is completely contingent on the actions of the Customer Data Controller (in this case BAM)................................................................................ 5

    IV.    Applying BIPA to Jumio's Collection of Plaintiff's and the Class's Biometrics Does Not Violate the First Amendment................................................................. 6

CONCLUSION................................................................................................................................ 9

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .............................................................. 2
*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .............................................................. 2
*Carlson v. CSX Transportation, Inc.*,
  758 F.3d 819 (7th Cir.2014) ........................................................................................................ 2
*Center for Individual Freedom v. Madigan*,
  697 F.3d 464 (7th Cir. 2012) ....................................................................................................... 8
*Dahlstrom v. Sun-Times Media, LLC*,
  777 F.3d 937 (7th Cir. 2015) ................................................................................................... 7, 8
*In re Clearview AI, Inc., Consumer Priv. Litig.*,
  2022 WL 444135 (N.D. Ill. Feb. 14, 2022) ................................................................................. 8
*McGoveran v. Amazon Web Servs., Inc.*,
  2021 WL 4502089 (D. Del. Sept. 30, 2021) ................................................................................ 4
*Monroy v. Shutterfly, Inc.*,
  2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) .............................................................................. 3
*People v. Austin*,
  155 N.E.3d 439, 440 Ill.Dec. 669, 2019 IL 123910 (Ill. 2019) ................................................... 8
*Reed v. Town of Gilbert, Ariz.*,
  576 U.S. 155, 135 S.Ct. 2218, 192 L.Ed.2d 236 (2015) .............................................................. 8
*Rivera v. Google Inc.*,
  238 F. Supp. 3d 1088 (N.D. Ill. 2017) ......................................................................................... 4
*Rosenbach v. Six Flags Entm't Corp.*,
  129 N.E.3d 1197 (Ill. 2019) ......................................................................................................... 8
*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*,
  786 F.3d 510 (7th Cir. 2015) ....................................................................................................... 2
*Sosa v. Onfido, Inc.*,
  2022 WL 1211506 (N.D. Ill. Apr. 25, 2022) ........................................................................... 7, 8
*Swanson v. Citibank, N.A.*,
  614 F.3d 400 (7th Cir. 2010) ....................................................................................................... 2
*United States v. O'Brien*,
  391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) .................................................................. 8
*United States v. Williams*,
  553 U.S. 285, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) ........................................................... 8, 9
*Vance v. Int'l Bus. Machines Corp.*,
  2020 WL 5530134 (N.D. Ill. Sept. 15, 2020) .............................................................................. 4

## Statutes

740 ILCS 14/5(c) ............................................................................................................................ 8

## Rules

Fed. R. Civ. P. 12 (West) .................................................................................................... 2
Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1, 2

Plaintiff Kamil Kuklinski, individually and on behalf of all others similarly situated, by and through his attorneys, respectfully submits this Memorandum in Opposition to Defendant Jumio Corporation's Motion to Dismiss Plaintiff's Amended Complaint and states as follows:

## PRELIMINARY STATEMENT

Defendant Jumio Corporation ("Jumio") has filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). The motion should be denied as Jumio has violated Illinois law under the Biometric Information Privacy Act (BIPA) and its arguments fail to satisfy the requirements of Rule 12(b)(6).

Jumio first attempts to evade Illinois law by arguing that co-defendant BAM Trading Services, Inc. ("BAM") meets the BIPA exception for "financial institutions." However, BAM is a cryptocurrency exchange and does not satisfy the definition of a "financial institution," as described in detail below. Because BIPA applies to BAM, it likewise applies to Jumio. Even if BIPA didn't apply to BAM (it does) it would still apply to Jumio because Jumio is neither a "financial institution" nor an "affiliate of a financial institution."

The well-pled factual allegations demonstrate that Jumio has violated BIPA (including Sections 14/15(a) because Jumio's privacy policy does not comply with those sections). This conduct occurred primarily and substantially in Illinois, as BAM's app, which integrated Jumio's software and used it to capture and collect Plaintiff's biometric identifiers, was installed on Plaintiff's iPhone and captured and processed his biometric data while Plaintiff was present and located at home in Illinois.

Finally, applying BIPA under the circumstances of this case would not violate the First Amendment, as BIPA does not regulate speech and, even if it did, it survives the intermediate level of scrutiny Illinois courts have applied in evaluating the statute.[1]

## LEGAL STANDARD

The Defendant has filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). A 12(b)(6) motion alleges that, with regard to Plaintiff's complaint, that there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (West). In order to survive a 12(b)(6) motion the plaintiff's complaint must show facts that are "plausible rather than merely conceivable or speculative." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 526 (7th Cir. 2015). *See also Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court "must accept as true all factual allegations in the complaint." *Runnion* at 526 *citing Carlson v. CSX Transportation, Inc.*, 758 F.3d 819, 826 (7th Cir.2014). "[T]he court will ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## ARGUMENT

**I.     BIPA Applies to Defendant BAM, and Thus it Applies to Jumio.**

In his opposition to BAM's motion to dismiss filed contemporaneously with this opposition, Plaintiff argues at length that BAM is not a financial institution and is, therefore, subject to BIPA. Rather than repeating that argument verbatim here, Plaintiff incorporates it by reference as if fully set forth herein. Because BAM is not a financial institution for the reasons

---

[1] Plaintiff does not dispute Jumio's arguments regarding the impact of the class action settlement in *Prelipceanu v. Jumio*. Jumio MTD at 13-14.

elucidated in that document, Jumio cannot rely on that status by proxy, and its motion should be denied on this point for the same reasons as BAM's.

The relevant BIPA exception cited by Jumio in 740 ILCS 14/25(c) states that BIPA does not apply to "financial institutions" or an "affiliate of a financial institution" which is subject to the GLBA. Jumio is neither a "financial institution" nor an "affiliate of a financial institution" and they cannot plead otherwise. As pled within Plaintiff's FAC, Jumio is a company which specializes in the collection of biometric data (FAC ¶ 38-39). Jumio also tries to highlight section 25(c) of BIPA claiming that, because BAM is a "financial institution" that BIPA should not apply "in any manner," including to Jumio. This argument is also baseless. Section of 25(c) of BIPA states it does not apply "in any manner to a financial institution or an affiliate of a financial institution." Jumio's attempt to isolate a small portion of the sentence within the statute while disregarding the rest is not persuasive and their motion should be denied.

**II.    The Relevant Conduct Occurred Primarily and Substantially in Illinois.**

Jumio argues that Plaintiff has not made sufficient allegations within his complaint to establish that the BIPA violation occurred primarily and substantially in Illinois. But Plaintiff has alleged within his complaint that 1) to create an account mobile users were required to download BAM's application (FAC ¶ 7), 2) that Defendant Jumio integrated its software within BAM's application (FAC ¶ 24), 3) users were prompted to take a unique type of selfie with their mobile, cellular or desktop device (FAC ¶ 24), 4) that the user's own camera was activated (FAC ¶ 29), 5) that Plaintiff was required to submit a photograph of his face (FAC ¶ 30), 6) that the images were used to collect biometric identifiers and geometry of a user's facial features (FAC ¶ 24), 7) that Jumio assisted in the capture and collection of the biometric data (FAC ¶ 47), 8) that Jumio did not inform the Plaintiff that his biometric data would be collected or the specific

purpose and length of time it was being collected and stored (FAC ¶ 33) and 9) that Plaintiff downloaded BAM's application containing Jumio's software, created his account and took and uploaded his photo all while he was present in Cook County, Illinois (FAC ¶ 26).

These facts are sufficient to state a claim for relief under BIPA. As the Court explained in *Monroy v. Shutterfly, Inc.,* No. 16 C 10984, 2017 WL 4099846, at \*6 (N.D. Ill. Sept. 15, 2017):

> Here, some of the circumstances relating to Monroy's suit are alleged to have occurred in Illinois: the complaint alleges that the photo of Monroy was uploaded to Shutterfly's website from a device that was physically located in Illinois and had been assigned an Illinois-based IP address. Monroy also alleges that the photo was uploaded by a citizen of Illinois. In addition, he maintains that the actual violation of the statute took place in Illinois because that is where Shutterfly failed to obtain the requisite release prior to allegedly collecting his biometric data. At the same time, other relevant circumstances point to locations outside of Illinois: Monroy himself is a citizen and resident of Florida, and Shutterfly is a Delaware corporation headquartered in California. Moreover, Shutterfly argues while Monroy claims that the alleged violation took place in Illinois, he does not claim to have suffered any injury in Illinois.
>
> However, the location of other important circumstances is as yet undetermined. For example, it is unclear where the actual scan of Monroy's face geometry took place, and where the scan was stored once it was obtained. Answers to these questions require a fuller understanding of how Shutterfly's facial recognition technology operates. In addition, these factual questions potentially raise legal questions that the parties have not addressed. (For example, given that Monroy's biometric data was extracted and stored in cyberspace, how is their physical location to be determined?).
>
> In short, the court is unable at this time to determine whether the circumstances of Monroy's claim can be said to have occurred primarily and substantially in Illinois, and thus whether Monroy's suit would require extraterritorial application of BIPA. At this stage, therefore, the court is not persuaded by Shutterfly's extraterritoriality argument.

*Id.* at 6 (internal citations omitted); *see also Rivera v. Google Inc.,* 238 F. Supp. 3d 1088, 1101–02 (N.D. Ill. 2017) ("According to Rivera and Weiss, all of the following are Illinois connections: Rivera and Weiss are Illinois residents; Rivera's and Weiss's photographs were

4

taken in Illinois; and Rivera's and Weiss's photographs were allegedly "automatically uploaded in Illinois to the cloud-based Google Photos service ... from an Illinois-based Internet Protocol ('IP') address," Rivera and Weiss also allege that it was in Illinois where Google failed to provide Rivera and Weiss with required disclosures and failed to get Rivera's and Weiss's consent. At this stage of the proceedings we take the Plaintiffs' allegations as true, and these alleged facts tip toward a holding that the alleged violations primarily happened in Illinois").

Even if additional facts would be necessary, federal courts have ruled on multiple occasions that, when analyzing the supposed extraterritoriality of a BIPA claim that "this is a highly fact-based analysis that is generally inappropriate for the motion to dismiss stage." *Vance v. Int'l Bus. Machines Corp.*, No. 20 C 577, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020); *see also Rivera*, 238 F. Supp. 3d at 1102 ("the Court concludes that the Plaintiffs sufficiently allege facts that would deem the asserted violations as having happened in Illinois. But there is no bright-line rule for determining this, so the parties will have the chance to develop more facts during discovery").

Jumio cites *McGoveran v. Amazon Web Servs., Inc*., No. CV 20-1399-LPS, 2021 WL 4502089 (D. Del. Sept. 30, 2021). However, *McGoveran* is highly distinguishable. In *McGoveran*, the plaintiffs brought an action against Amazon under BIPA claiming that the customer service telephone calls made from Illinois resulted in a "voiceprint" that captured biometric data. *Id*. at 4. But the Court reasoned that there was "nothing to suggest their 'voiceprints' were created, possessed, or stored ... in Illinois" and "[n]othing about this process occurred in Illinois except for the initial dialing of the phone by Plaintiffs." *Id*. at 4-5. In the present case, the Plaintiff has pled that BAM's app was installed on his iPhone, which contained Jumio's integrated software. (FAC ¶ 24). Using this software, Plaintiff "created an account while

5

he was present in Cook County, Illinois." (FAC ¶ 26). While creating an account, the software enabled Plaintiff's iPhone camera so that he could take a "unique type of 'selfie'" which was then "used to collect certain biometric identifiers and geometry of the user's facial features." *Id.* Additionally, Plaintiff has also alleged that that the software stated "[s]canning completed" after taking the selfie. (FAC ¶ 30). In short, this was not a normal photograph taken and processed with the Plaintiff's iPhone, nor was it a call placed to a number outside Illinois.

### III. Jumio's compliance with BIPA section 14/15(a) is inadequate because their Privacy Policy is completely contingent on the actions of the Customer Data Controller (in this case BAM).

Jumio argues that Plaintiff's BIPA section 14/15(a) claim should be dismissed because his complaint shows that Jumio has complied with that section. This is not correct.. Section 14/15(a) of BIPA requires private entities in possession of biometric data to make a public privacy policy available with retention and destruction guidelines for the data. Specifically, 14/15(a) requires that the policy disclose that the data will be destroyed after the initial purpose of the data has been satisfied or "within 3 years of the individual's last interaction with the private entity, whichever occurs first." To support their argument, Jumio cites portions of their own Privacy Policy including:

> Jumio will store your biometric data for as long as the Customer Data Controller requests (e.g., the duration of your use of its services), which shall be no longer than the earlier of the date when (i) the Customer Data Controller ceases to have a relationship with Jumio or (ii) within three (3) years after the Customer Data Controller informs Jumio that its last interaction with you has occurred.

(*See* Defendant Jumio's Ex. F). This policy does not satisfy BIPA because the policy is open-ended and is entirely contingent on the actions of a third party (in this case the "Customer Data Controller"). It is not disputed that Defendant Jumio is a separate corporate entity distinct from Defendant BAM. Assuming that BAM is the "Customer Data Controller" under Jumio's Privacy

6

Policy, the policy fails because: 1) BAM could never cease to have a relationship with Jumio, 2) even if the relationship between BAM and Jumio did cease, BAM may never inform Jumio when the last interaction between BAM and the customer occurred, or 3) BAM could inform Jumio when the last interaction between BAM and the customer occurred, but this information could very well result in destruction of the data beyond the maximum three (3) year period mandated by BIPA.

IV. **Applying BIPA to Jumio's Collection of Plaintiff's and the Class's Biometrics Does Not Violate the First Amendment.**

Jumio suggests that its capture, collection and storage of Plaintiff's biometric identifiers is protected First Amendment speech because the collection of biometrics is akin to "recording" a person's voice. Br. at 14-18. The term "record" or "recording" does not appear anywhere in BIPA; instead, the statute states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" unless it first obtains the appropriate written consent, which Jumio did not do here. FAC ¶¶ 15, 33-34. Despite seizing on Plaintiff's use of the word "recording" in his Complaint, Jumio's analogy to the well-established legal precedent surrounding audio recordings is flawed: while audio recordings of speech *clearly* implicate the First Amendment, collecting scans of facial geometry without statutory consent do not.

Indeed, no Court has ever found the statute to violate the First Amendment, and the two courts that have considered the issue have reached the opposite conclusion. For example, earlier this week in *Sosa v. Onfido, Inc.*, No. 20-CV-4247, 2022 WL 1211506 (N.D. Ill. Apr. 25, 2022), Judge Aspen, after a rigorous analysis of the First Amendment question, concluded that "section 15(b) does not restrict Onfido's speech and is not subject to the First Amendment" at all. *Id.* at *14. As the *Sosa* court explained:

> The Seventh Circuit's decision in *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937 (7th Cir. 2015), cited by Sosa, leads us to conclude that section 15(b) does not restrict Onfido's speech. In *Dahlstrom*, the Seventh Circuit addressed the Driver's Privacy Protection Act ("DPPA"), which "prohibits individuals from knowingly obtaining or disclosing 'personal information' from a motor vehicle record." 777 F.3d at 939. Five Chicago police officers sued Sun-Times Media, LLC, arguing that it "violated the DPPA by obtaining each officer's birth date, height, weight, hair color, and eye color from the Illinois Secretary of State's motor vehicle records" and then publishing that information in a newspaper article. *Id.* Sun-Times moved to dismiss the officers' complaint, arguing, among other things, that the DPPA's "prohibition on acquiring and disclosing personal information from driving records violates the First Amendment's guarantees of free speech and freedom of the press." *Id.*
>
> Evaluating Sun-Times's First Amendment challenge "as applied to the facts of [the] case," the Seventh Circuit addressed the DPPA's prohibition on "obtaining personal information from driving records," and then addressed the DPPA's prohibition on "disclosing that information." *Id.* at 946. The *Dahlstrom* court concluded that the "prohibition on obtaining information from driving records" did not restrict speech because it limited only "*access* to information." *Id.* at 947–49 (emphasis in original).

*Id.* at *12-13. Therefore, "[l]ike the first DPPA provision at issue in *Dahlstrom*, section 15(b) burdens a party's ability to access certain information" and "[i]f the DPPA's prohibition on obtaining personal information is not a restriction on speech (as the Seventh Circuit has held), neither is section 15(b)'s regulation on obtaining biometric data"). *Id.* at *13. The *Sosa* court went on to conclude that, even if section 15(b) *did* restrict speech, it does so in a content-neutral manner subject to intermediate scrutiny and, under that standard, the statute survives because the government has a substantial interest in regulating the dissemination of unique biometric identifiers, section 15(b) directly advances that government interest, and it does so in a manner that is not more extensive than necessary. *Id.* at *14-18.

This conclusion comports with the only other ruling addressing BIPA's potential interplay with the First Amendment Plaintiff's counsel's research has revealed. *See In re Clearview AI, Inc., Consumer Priv. Litig.*, No. 21-CV-0135, 2022 WL 444135, at *3 (N.D.

8

Ill. Feb. 14, 2022) (applying intermediate scrutiny to find BIPA constitutional).  After finding that "Clearview's process in creating its database [of photographs from which it scanned facial geometry] involves both speech and nonspeech elements," Judge Coleman applied the intermediate scrutiny standard elucidated in *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), namely that "a regulation does not violate the First Amendment if (1) it is within the power of the government to enact, (2) furthers an important government interest, (3) the governmental interest is unrelated to the suppression of free expression, and (4) any incidental restriction on speech is no greater than is necessary to further the government interest."  2022 WL 444135, at *3.  The court concluded that:

> The General Assembly enacted BIPA to protect Illinois residents' highly sensitive biometric information from unauthorized collection and disclosure. *See* 740 ILCS 14/5(c); *Rosenbach* [*v. Six Flags Entm't Corp.,* 129 N.E.3d 1197, 1206 (Ill. 2019)]. Next, BIPA, including its exceptions, does not restrict a particular viewpoint nor target public discussion of an entire topic under the third *O'Brien* requirement. *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 169, 135 S.Ct. 2218, 192 L.Ed.2d 236 (2015); *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 944 n.5 (7th Cir. 2015). Under *O'Brien's* fourth factor, BIPA is narrowly tailored by legitimately protecting Illinois residents' highly sensitive biometric information and data, yet allowing residents to share their biometric information through its consent provision. *See, e.g., People v. Austin*, 155 N.E.3d 439, 468, 440 Ill.Dec. 669, 698, 2019 IL 123910, ¶ 93 (Ill. 2019) (discussing Illinois' revenge porn statute). Last, BIPA is not overly-broad. *See Center for Individual Freedom v. Madigan*, 697 F.3d 464, 471 (7th Cir. 2012) ("A statute is facially overbroad only when 'it prohibits a substantial amount of protected speech.' ") (quoting *United States v. Williams,* 553 U.S. 285, 292, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008)). The Court denies defendants' motion to dismiss in this respect.

*Id.*

This Court should follow the reasoning and conclusions in *Sosa* and *In re Clearview* and reject Jumio's argument that BIPA, as applied to the facts of this case, violates the First Amendment.

## CONCLUSION

Based on the foregoing, Jumio's motion to dismiss should be denied in its entirety.

Dated: April 29, 2022

**FREEARK, DENNIS, MURPHY & MOSKOP, P.C.**

BY: */s/ Joel D. Beckwith*
JOEL D. BECKWITH
SHANE M. MOSKOP
115 W. Washington Street, P.O. Box 546
Belleville, IL 62222-0546
jbeckwith@freeark.com
smoskop@freeark.com
618-233-2686 - 618-233-5677(fax)

**LYNCH CARPENTER, LLP**
KATRINA CARROLL
KYLE SHAMBERG (application for admission pending)
111 W. Washington Street
Suite 1240
Chicago, IL 60602
katrina@lcllp.com
kyle@lcllp.com
312-750-1265 - 773-598-5609 (fax)

*Attorneys for Plaintiff and the Putative Class*