# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KAMIL KUKLINSKI, individually and on behalf of all others similarly situated,  )<br>)<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>BINANCE CAPITAL MANAGEMENT  )<br>CO., LTD. d/b/a BINANCE, BAM  )<br>TRADING SERVICES, INC. d/b/a  )<br>BINANCE.US and JUMIO  )<br>CORPORATION,  )<br>)<br>Defendants.  ) | Case No.: 3:21-cv-01425-SPM<br><br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BINANCE CAPITAL MANAGEMENT CO., LTD.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT FACTS .................................................................................................................. 1

    I.    Binance Has Specifically Manipulated Its Corporate Structure to Avoid U.S. Law .................................................................................................................. 1

ARGUMENT ............................................................................................................................... 4

    I.    Binance.US is the "Alter Ego" of Binance, and the Court May Therefore Exercise Personal Jurisdiction Over It ....................................................................... 4

    II.    Should the Court Find Plaintiff's Allegations Inadequate to Establish That Binance.US is the Alter Ego of Binance, Plaintiff Should be Permitted to Amend His Complaint and Conduct Discovery into the Alter Ego Theory ........................ 6

    III.    Plaintiff Has Stated a Claim for Violation of BIPA Against Binance .................... 7

        A.    Because Binance.US is Binance's alter ego, its actions may be imputed to Binance ......................................................................................................... 7

        B.    The Conduct Alleged Occurred Primarily and Substantially in Illinois ..... 7

        C.    Plaintiff Has Stated a Claim for Unjust Enrichment ................................. 10

CONCLUSION .......................................................................................................................... 10

# **TABLE OF AUTHORITIES**

## **Cases**

*Chicago Reg'l Council of Carpenters v. Joseph J. Sciamanna, Inc.*,
   2009 WL 1543892 (N.D. Ill. June 3, 2009)...................................................................... 6
*City of Greenville, Ill. v. Syngenta Crop Prot., Inc.*,
   830 F. Supp. 2d 550 (S.D. Ill. 2011) ............................................................................... 5
*Deere & Co. v. XAPT Corp.*,
   2020 WL 2199607 (C.D. Ill. May 6, 2020)..................................................................... 6
*Greenhouse v. MCG Capital Corp.*,
   392 F.3d 650 (4th Cir. 2004) .......................................................................................... 2
*In re Commodity Exch., Inc.*,
   213 F. Supp. 3d 631 (S.D.N.Y. 2016) ............................................................................ 5
*In re Delta Phones, Inc.*,
   2005 WL 3542667 (Bankr. N.D. Ill. Dec. 23, 2005)....................................................... 6
*In re Guidant Corp. Sec. Litig.*,
   536 F. Supp. 2d 913 (S.D. Ind. 2008)............................................................................. 2
*Indiana Carpenters Pension Fund v. Hammond*,
   2019 WL 9093756 (S.D. Ind. Apr. 23, 2019)................................................................. 7
*Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*,
   356 F.3d 731 (7th Cir. 2004) .......................................................................................... 5
*Main Bank of Chicago v. Baker*,
   86 Ill. 2d 188, 427 N.E.2d 94 (1981).............................................................................. 4
*McGoveran v. Amazon Web Servs., Inc.*,
   2021 WL 4502089 (D. Del. Sept. 30, 2021)................................................................... 9
*Monroy v. Shutterfly, Inc.*,
   2017 WL 4099846 (N.D. Ill. Sept. 15, 2017).................................................................. 8
*Northbound Grp., Inc. v. Norvax, Inc.*,
   795 F.3d 647 (7th Cir. 2015) .......................................................................................... 4
*Rivera v. Google Inc.*,
   238 F. Supp. 3d 1088 (N.D. Ill. 2017)......................................................................... 8, 9
*Rual Trade Ltd. v. Viva Trade LLC*,
   549 F. Supp. 2d 1067 (E.D. Wis. 2008) ......................................................................... 6
*Taube v. Hartford Fin. Servs. Grp. Inc.*,
   2021 WL 633010 (S.D. Ill. Feb. 18, 2021).................................................................. 6, 7
*United States Sec. & Exch. Comm'n v. Bluepoint Inv. Couns., LLC*,
   2021 WL 719647 (W.D. Wis. Feb. 24, 2021) ................................................................ 2
*Vance v. Int'l Bus. Machines Corp.*,
   2020 WL 5530134 (N.D. Ill. Sept. 15, 2020) ................................................................. 9
*Williamson v. Curran*,
   714 F.3d 432 (7th Cir. 2013) .......................................................................................... 1
*Womack v. Brady Mccasland, Inc.*,
   2016 WL 1117086 (S.D. Ill. Mar. 22, 2016)................................................................. 10
*Woodlock v. Hull*,
   1997 WL 269629 (N.D. Ill. May 14, 1997).................................................................... 1

**PRELIMINARY STATEMENT**

In his First Amended Class Action Complaint ("FAC"), Plaintiff Kamil Kuklinski alleges that Defendant Binance Capital Management Co. Ltd. ("Binance") created co-defendant BAM Trading Services, d/b/a Binance.US ("Binance.US") for the express purpose of evading the United States regulatory regime, and that the founder of Binance exercises almost total control over Binance.US. These allegations draw support from news articles reporting on leaked documents detailing the scheme, which was at all times intended to insulate Binance from legal liability in the United States, and necessarily in Illinois. These allegations, at the pleadings stage, are more than sufficient for Plaintiff to proceed against Binance on his alter ego theory and, accordingly, for the Court to find that it has personal jurisdiction over Binance as a result of the actions of Binance.US in Illinois. In the alternative, Plaintiff should be permitted to conduct limited discovery regarding the alter ego issue.

**RELEVANT FACTS**

**I.      Binance Has Specifically Manipulated Its Corporate Structure to Avoid U.S. Law.**

As Plaintiff alleges in the FAC, leaked documents suggest that "the formulation of Binance.US was an attempt by [Binance founder] Changpeng Zhao and Binance to avoid U.S. regulations." ¶ 4.[1] The details of this scheme, as set forth in the October 29, 2020 *Forbes* article "Leaked 'Tai Chi' Document Reveals Binance's Elaborate Scheme to Evade Bitcoin Regulators," reveal strong factual support for Plaintiff's allegation that Binance has at all times acted as the "alter ego" and "coconspirator" of Binance.US[2]. ¶¶ 20, 44.

---

[1] All references to "¶ X" refer to Plaintiff's First Amended Complaint.
[2] Because Plaintiff specifically references this reporting in the FAC the Court may consider the statements contained therein when evaluating Binance's motion to dismiss. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly

1

Specifically, after Binance ended its U.S. trading in June 2019 due to increased regulatory requirements, it launched Binance.US in September 2019. ¶¶ 3-4. "While Binance appear[ed] to have gone out of its way to submit to U.S. regulations by establishing a compliant subsidiary," Binance.US, an "ulterior motive" soon became apparent: "[w]hile the then-unnamed entity set up operations in the United States to distract regulators with feigned interest in compliance, measures would be put in place to move revenue in the form of licensing fees and more to the parent company, Binance." Ex. A. Such a step was necessary given that Binance was being investigated for money laundering and tax fraud. *Id.* According to the leaked documents, alleged to have been created by Harry Zhou, a former Binance employee, and presented to Changpeng Zhao, or "CZ," by Binance mergers and acquisitions manager Jared Gross in late 2018, Binance enacted a four-pronged strategy consisting of *Goals, Proposed Corporate Structure, Regulator Engagement Plans and Long Term License Plans*. *Id.* "The first goal, enforcement mitigation, is designed to minimize the impact of U.S. regulation. It explicitly mentions the need to undermine the ability of 'anti-money laundering and U.S. sanctions enforcement' to detect illicit activity. More specifically, it describes a detailed strategy for

---

subject to judicial notice"); *Woodlock v. Hull*, No. 96 C 6297, 1997 WL 269629, at *3 (N.D. Ill. May 14, 1997) ("Documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes"); *United States Sec. & Exch. Comm'n v. Bluepoint Inv. Couns., LLC*, No. 19-CV-809-WMC, 2021 WL 719647, at *13 (W.D. Wis. Feb. 24, 2021) ("[A] court ruling on a 12(b)(6) motion may look to 'documents or articles cited in the complaint, SEC filings, press releases, stock price tables, and other material on which the plaintiff's allegations necessarily rely'") (quoting *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 656-57 (4th Cir. 2004)); *In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913, 923 (S.D. Ind. 2008), *aff'd sub nom. Fannon v. Guidant Corp.*, 583 F.3d 995 (7th Cir. 2009), and *aff'd sub nom. Fannon v. Guidant Corp.*, 583 F.3d 995 (7th Cir. 2009), and *aff'd sub nom. Fannon v. Guidant Corp.*, 583 F.3d 995 (7th Cir. 2009) ("This article is referenced (and largely quoted) in the Complaint, and therefore we may consider it in ruling on Defendants' motion to dismiss"). Plaintiff has attached a copy of the *Forbes* article as **Exhibit A**.

distracting the U.S. Treasury Department's Financial Crimes Enforcement Network (FinCEN) and Office of Foreign Assets Control (OFAC), the Securities and Exchange Commission (SEC), the Commodity Futures Trading Commission (CFTC), and the New York Department of Financial Services (NYDFS)." *Id.*

The documents include a PowerPoint presentation containing a proposed corporate structure regarding the new entity:



*Id.* According to this structure, the so-called "Operating Company" or "Tai-Chi Entity,"[3] would funnel service fees through a "Service Company" back to Binance. *Id.* ("License and service fees paid by the US Service company to Binance are functionally US-sourced trading fees"). "But unlike an actual subsidiary whose parent company could be held accountable for regulatory violations, the Tai Chi entity [*i.e.,* Binance.US] would have little more than a contractual relationship, further 'insulat[ing] Binance from U.S. enforcement,' according to the document.

---

[3] Binance.US is a Delaware corporation.  ¶ 18.

Essentially, it would be a decoy." *Id.* The document details how Binance.US would act as a magnet for regulatory inquiries and should be willing "to accept nominal fines in exchange for enforcement forbearance." *Id.*

Once the U.S. entity served its purposes in sidestepping U.S. regulators, it would be reabsorbed into Binance itself. *Id.* ("Binance to acquire the US operation at a nominal price and rearrange its leadership when it has served its purposes.").

While using Binance.US to avoid the law, Binance has taken pains to make itself an amorphous entity not accountable to *any* jurisdiction's laws. It was initially founded in China in 2017, but later the company headquarters were moved to Japan. ¶ 17. Due to the increasing regulations in Japan, Binance again relocated the company to Malta. *Id.* However, Binance CEO Changpeng Zhao has publicly denied that Binance has a headquarters in Malta or the Cayman Islands and that the Binance company operates in a "decentralized manner." *Id.* CZ owns roughly 90% of Binance.US. ¶ 4 and n.2. *See also* **Exhibit B** (NYT article referenced in n.2 to FAC).

## ARGUMENT

**I.     Binance.US is the "Alter Ego" of Binance, and the Court May Therefore Exercise Personal Jurisdiction Over It.**

Under Illinois law, "[g]enerally, before the separate corporate identity of one corporation will be disregarded and treated as the alter ego of another, it must be shown that it is so controlled and its affairs so conducted that it is a mere instrumentality of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice." *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 652 (7th Cir. 2015) (quoting *Main Bank of Chicago v. Baker*, 86 Ill. 2d 188, 205, 427 N.E.2d 94, 101 (1981)). Piercing the corporate veil is ultimately an equitable consideration

4

left to the discretion of the trial court.  *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 737 (7th Cir. 2004).

  Here, Plaintiff has alleged that Binance.US was created *solely* to conduct business in the United States on behalf of Binance while allowing Binance itself to avoid any regulation under U.S. law and stop operating in the U.S. in the midst of money laundering and tax investigations.  Ex. A.  The fees Binance.US earned in the U.S. would go directly back to Binance and CZ, the Binance founder who owns 90% of Binance.US.  ¶¶ 1-4, Exs. A-B.  The entire ethos and *raison d'etre* of Binance.US, therefore, is to "sanction a fraud [and] promote injustice."

  Accordingly, because Binance.US was at all times intended to, has operated, and does operate as Binance's alter ego, the Court may properly exercise personal jurisdiction over Binance to the same extent as Binance.US.  *See, e.g.*, *City of Greenville, Ill. v. Syngenta Crop Prot., Inc.*, 830 F. Supp. 2d 550, 562–63 (S.D. Ill. 2011) ("The plaintiffs have made a *prima facie* showing that the Court has personal jurisdiction over SAG. While SCPI's jurisdictional contacts are not attributable to SAG simply because of their corporate affiliation, the evidence shows SAG exercises an "unusually high degree of control over" and, in fact, dominates SCPI despite the multiple layers of corporate ownership between them.  SAG's control of SCPI exceeds that which is consistent with investor status, and SAG is therefore subject to the personal jurisdiction of this Court") (internal citation omitted); *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 680 (S.D.N.Y. 2016) ("Because LGMF concedes that personal jurisdiction over the Fixing Banks is proper, personal jurisdiction over LGMF comports with due process so long as the alter ego theory of jurisdiction is viable and Plaintiffs have adequately pled that LGMF is an alter ago of the Fixing Banks").

II.     **Should the Court Find Plaintiff's Allegations Inadequate to Establish That Binance.US is the Alter Ego of Binance, Plaintiff Should be Permitted to Amend His Complaint and Conduct Discovery into the Alter Ego Theory.**

Plaintiff contends that the alleged facts surrounding Binance.US's creation and operations sufficiently demonstrate, at the pleadings stage, that he can proceed on an alter ego theory against Binance. *Chicago Reg'l Council of Carpenters v. Joseph J. Sciamanna, Inc.*, No. 08 C 4636, 2009 WL 1543892, at *4 (N.D. Ill. June 3, 2009) ("At this stage, based on the liberal pleading standard, the Court finds that Plaintiffs have stated a plausible claim for relief against Sciamanna Inc. based on an alter ego theory) (internal citation omitted); *Deere & Co. v. XAPT Corp.*, No. 419CV04210SLDJEH, 2020 WL 2199607, at *4 (C.D. Ill. May 6, 2020) ("Certainly, the ultimate success or failure of an alter ego claim is better suited for a time later than the amendment of pleadings stage"). However, should the Court disagree, Plaintiff requests that he be given leave to take limited discovery on the alter ego issue and amend his complaint accordingly. *See Taube v. Hartford Fin. Servs. Grp. Inc.,* No. 20-CV-00565-NJR, 2021 WL 633010, at *6 (S.D. Ill. Feb. 18, 2021) (Rosenstengel, C.J.) ("But simply because it may be difficult for Taube to pierce the corporate veil—does not prohibit Taube from amending his complaint, and conducting discovery into this alter ego theory. Accordingly, the Court grants Taube leave to amend his complaint. The Court will by separate order set this matter for a telephonic status conference for the purpose of entering a scheduling order on alter ego discovery"); *Rual Trade Ltd. v. Viva Trade LLC*, 549 F. Supp. 2d 1067, 1076 (E.D. Wis. 2008) (permitting plaintiffs to engage in jurisdictional discovery based on alter ego claim); *In re Delta Phones, Inc.*, No. 04 B 823, 2005 WL 3542667, at *9 (Bankr. N.D. Ill. Dec. 23, 2005) (permitting plaintiff to take discovery on alter ego claim and amend complaint after raising the

6

theory for the first time at summary judgment, despite acknowledging that "nothing in the complaint here even hints, let alone gives notice, that Peterson is pursuing an alter ego claim").

### III. Plaintiff Has Stated a Claim for Violation of BIPA Against Binance.

#### A. Because Binance.US is Binance's alter ego, its actions may be imputed to Binance.

Because, as discussed above, Binance.US has at all times acted as the alter ego of Binance, Binance can and should be held liable for the same reasons and to the same extent as Binance.US. *Taube*, 2021 WL 633010, at *5; *Indiana Carpenters Pension Fund v. Hammond*, No. 118CV03176MPBRLY, 2019 WL 9093756, at *8 (S.D. Ind. Apr. 23, 2019). As set forth in detail in Plaintiff's opposition to Binance.US's concurrent motion to dismiss, Plaintiff has stated claims against Binance.US and therefore has likewise stated claims against Binance on the same bases.

#### B. The Conduct Alleged Occurred Primarily and Substantially in Illinois.

Binance argues Plaintiff has not made sufficient allegations within his complaint to establish that the BIPA violation occurred primarily and substantially in Illinois. But Plaintiff has alleged within his complaint that 1) to create an account mobile users were required to download BAM's application (FAC ¶ 7), 2) that Defendant Jumio integrated their software within BAM's application (FAC ¶ 24), 3) users were prompted to take a unique type of selfie with their mobile, cellular or desktop device (FAC ¶ 24), 4) that the user's own camera was activated (FAC ¶ 29), that Plaintiff was required to submit a photograph of his face (FAC ¶ 30), 5) that the images were used to collect biometric identifiers and geometry of a user's facial features (FAC ¶ 24), and 6) that Plaintiff downloaded BAM's application, created his account and took and uploaded his photo all while he was present in Cook County, Illinois (FAC ¶ 26).

These facts are sufficient to state a claim for relief under BIPA. As the Court explained in *Monroy v. Shutterfly, Inc.,* No. 16 C 10984, 2017 WL 4099846, at *6 (N.D. Ill. Sept. 15, 2017):

> Here, some of the circumstances relating to Monroy's suit are alleged to have occurred in Illinois: the complaint alleges that the photo of Monroy was uploaded to Shutterfly's website from a device that was physically located in Illinois and had been assigned an Illinois-based IP address. Monroy also alleges that the photo was uploaded by a citizen of Illinois. In addition, he maintains that the actual violation of the statute took place in Illinois because that is where Shutterfly failed to obtain the requisite release prior to allegedly collecting his biometric data. At the same time, other relevant circumstances point to locations outside of Illinois: Monroy himself is a citizen and resident of Florida, and Shutterfly is a Delaware corporation headquartered in California. Moreover, Shutterfly argues while Monroy claims that the alleged violation took place in Illinois, he does not claim to have suffered any injury in Illinois.
>
> However, the location of other important circumstances is as yet undetermined. For example, it is unclear where the actual scan of Monroy's face geometry took place, and where the scan was stored once it was obtained. Answers to these questions require a fuller understanding of how Shutterfly's facial recognition technology operates. In addition, these factual questions potentially raise legal questions that the parties have not addressed. (For example, given that Monroy's biometric data was extracted and stored in cyberspace, how is their physical location to be determined?).
>
> In short, the court is unable at this time to determine whether the circumstances of Monroy's claim can be said to have occurred primarily and substantially in Illinois, and thus whether Monroy's suit would require extraterritorial application of BIPA. At this stage, therefore, the court is not persuaded by Shutterfly's extraterritoriality argument.

*Id.* at 6 (internal citations omitted); *see also Rivera v. Google Inc.,* 238 F. Supp. 3d 1088, 1101–02 (N.D. Ill. 2017) ("According to Rivera and Weiss, all of the following are Illinois connections: Rivera and Weiss are Illinois residents; Rivera's and Weiss's photographs were taken in Illinois; and Rivera's and Weiss's photographs were allegedly "automatically uploaded in Illinois to the cloud-based Google Photos service ... from an Illinois-based Internet Protocol ('IP') address," Rivera and Weiss also allege that it was in Illinois where Google failed to

provide Rivera and Weiss with required disclosures and failed to get Rivera's and Weiss's consent. At this stage of the proceedings we take the Plaintiffs' allegations as true, and these alleged facts tip toward a holding that the alleged violations primarily happened in Illinois").

Even if additional facts would be necessary, federal courts have ruled on multiple occasions that, when analyzing the supposed extraterritoriality of a BIPA claim that "this is a highly fact-based analysis that is generally inappropriate for the motion to dismiss stage." *Vance v. Int'l Bus. Machines Corp.*, No. 20 C 577, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020); *see also Rivera*, 238 F. Supp. 3d at 1102 ("the Court concludes that the Plaintiffs sufficiently allege facts that would deem the asserted violations as having happened in Illinois. But there is no bright-line rule for determining this, so the parties will have the chance to develop more facts during discovery").

Binance cites *McGoveran v. Amazon Web Servs., Inc.*, No. CV 20-1399-LPS, 2021 WL 4502089 (D. Del. Sept. 30, 2021) claiming it is directly on point. However, *McGoveran* is highly distinguishable. In *McGoveran*, the plaintiffs brought an action against Amazon under BIPA claiming that the customer service telephone calls made from Illinois resulted in a "voiceprint" that captured biometric data. *Id*. at 4. But the Court reasoned that there was "nothing to suggest their 'voiceprints' were created, possessed, or stored ... in Illinois" and "[n]othing about this process occurred in Illinois except for the initial dialing of the phone by Plaintiffs." *Id*. at 4-5. In the present case, the Plaintiff has pled that BAM's app was installed on his iPhone, which contained Jumio's integrated software. (FAC ¶ 24). Using this software, Plaintiff "created an account while he was present in Cook County, Illinois." (FAC ¶ 26). While creating an account, the software enabled Plaintiff's iPhone camera so that he could take a "unique type of 'selfie'" which was then "used to collect certain biometric identifiers and geometry of the user's facial

features." *Id.* Additionally, Plaintiff has also alleged that that the software stated "[s]canning completed" after taking the selfie. (FAC ¶ 30). In short, this was not a normal photograph taken and processed with the Plaintiff's iPhone, nor was it a call placed to a number outside Illinois.

### C. Plaintiff Has Stated a Claim for Unjust Enrichment.

To state a claim for unjust enrichment under Illinois law, a plaintiff must establish: "that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Womack v. Brady Mccasland, Inc.*, No. 15-CV-638-DRH-PMF, 2016 WL 1117086, at *2 (S.D. Ill. Mar. 22, 2016). In this case, Plaintiff has alleged that users were required to submit their biometric data in order to create and verify an account on Binance.US. (FAC ¶ 8). As alleged in the FAC, the process for the submission of this biometric data was improper under BIPA to the detriment of Plaintiff and its users. This detriment resulted in the creation of a Binance.US account (FAC ¶ 68) for which BAM was able to collect and retain fees from "sales and transfers" of digital assets (FAC ¶ 69). Without this detriment – the improper and illegal collection and storage of Plaintiff's unique biometric identifiers[4] – no account would have been created and no fees would have been received by BAM. As outlined within Womack, this "violates the fundamental principles of justice, equity, and good conscience."

### CONCLUSION

Based on the foregoing, Binance's motion to dismiss should be denied in its entirety. Absent denial, Plaintiff should be afforded the opportunity to conduct appropriate jurisdictional discovery into his alter ego theory.

---

[4] "Except for surgery, there is no way to reassign someone's personal biometric data. A person can obtain a new social security number, but not new facial features for example, which makes the protection of, and control over, biometric data particularly important." FAC ¶ 12. Having one's biometrics improperly collected and stored is self-evidently a "detriment": it is the entire reason the Illinois legislature enacted BIPA.

Dated: April 29, 2022

**FREEARK, DENNIS, MURPHY & MOSKOP, P.C.**

BY: */s/ Joel D. Beckwith*
JOEL D. BECKWITH
SHANE M. MOSKOP
115 W. Washington Street, P.O. Box 546
Belleville, IL 62222-0546
jbeckwith@freeark.com
smoskop@freeark.com
618-233-2686 - 618-233-5677(fax)


**LYNCH CARPENTER, LLP**
KATRINA CARROLL
KYLE SHAMBERG (application for admission pending)
111 W. Washington Street
Suite 1240
Chicago, IL 60602
katrina@lcllp.com
kyle@lcllp.com
312-750-1265 - 773-598-5609 (fax)

*Attorneys for Plaintiff and the Putative Class*

11