THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| KAMIL KUKLINSKI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BINANCE CAPITAL MANAGEMENT CO., LTD. d/b/a BINANCE, BAM TRADING SERVICES INC. d/b/a BINANCE.US and JUMIO CORPORATION,<br><br>Defendants. | Civil Action No. 3:21-cv-01425-SPM<br><br>Judge:   Hon. Stephen P. McGlynn |

**DEFENDANT BAM TRADING SERVICES INC.'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

BAM respectfully submits this reply brief in further support of its Motion to Dismiss the Amended Complaint.[1]  Pursuant to Local Rule 7.1(c), exceptional circumstances warrant BAM's reply brief because Plaintiff's opposition mischaracterizes BAM's bases for seeking dismissal of the FAC and asserts new factual allegations that are inconsistent with the FAC's allegations.

## ARGUMENT

### I.  BAM IS A "FINANCIAL INSTITUTION" EXEMPT FROM BIPA.

Plaintiff does not dispute that "financial institutions" are exempt from BIPA.  Instead, Plaintiff argues that BAM is not a "financial institution" under 12 U.S.C. § 1843(k)(4)(A) because cryptocurrency is neither money nor a security.  (Opp. at 4-5.)  That is a red herring.  BAM does not contend that cryptocurrency constitutes either money or a security (see MTD at 6-7), and this Court does not need to decide that question to resolve BAM's MTD.  BAM qualifies as a "financial institution" under 12 U.S.C. § 1843(k)(4)(A) because it is engaged in exchanging, transferring, and safeguarding money as part of transactions in cryptocurrency.  (Id. at 5.)

Plaintiff also does not dispute that the FAC incorporates by reference BAM's TOU and Trading Rules, which describe in detail how BAM is engaged in exchanging, transferring, and safeguarding **fiat currency** (i.e., money).  (See id. at 5-6 & nn.5-6.)  For example:

- **Exchanging:**  BAM's platform enables users to purchase and/or sell cryptocurrency using **fiat currency** held directly in the users' BAM accounts, held in their linked bank accounts, or provided using their credit or debit cards.  (Ex. D. at 8-9.)

- **Transferring:**  Upon request, BAM will transfer **fiat currency** held in users' BAM accounts to their bank accounts or other linked **fiat accounts**.  (Ex. E. § 3.3.2.)

- **Safeguarding:**  BAM maintains pooled custodial accounts with U.S. banks to hold and safeguard users' **U.S. dollar deposits** held in their BAM accounts.  (Ex. D. at 5.)

---

[1] BAM uses the same abbreviations and defined terms in this reply brief as in its Motion to Dismiss the Amended Complaint ("MTD").  BAM also incorporates in this reply brief the arguments from its MTD, as well as the arguments from the other defendants' respective motions to dismiss and reply briefs in support thereof to the extent applicable.

1

Nor does Plaintiff dispute that those activities are "financial in nature" under § 1843(k). (See MTD at 5.) BAM is a "financial institution" exempt from BIPA. This Court need go no further.

But there is more. Plaintiff next argues that BAM is not a "financial institution" under 12 U.S.C. § 1843(k)(4)(F) because the Federal Reserve Board has not determined that "cryptocurrency activity" is closely related to banking. (Opp. at 7-8.) That, too, is a red herring. Contrary to Plaintiff's claims, BAM does not assume that the Federal Reserve Board "would have contemplated cryptocurrency activity as being 'money transmission services' that were 'closely related to banking.'" (Id. at 8.) Rather, BAM qualifies as a "financial institution" under 12 U.S.C. § 1843(k)(4)(F) because, as part of its business, it provides users with "domestic money transmission services" involving fiat currency – which is an activity that the Federal Reserve Board has determined is closely related to banking. (MTD at 7-8.) Plaintiff does not dispute either that BAM provides users with "domestic money transmission services" involving fiat currency (and is registered with FinCEN and 34 state regulators as a money transmitter providing such services)[2] or that the Federal Reserve Board has decided that such services are closely related to banking. (See id.) Indeed, the Federal Reserve Board has confirmed the general applicability of its decision by codifying the decision as an agency rule. See 12 C.F.R. § 225.86(a)(2)(v). For this reason as well, BAM is a "financial institution" exempt from BIPA. That, too, should be the end of the matter.

Plaintiff is left with a grab bag of remaining arguments that are even more irrelevant:

- **First**, Plaintiff argues that BAM has not provided evidence of its compliance with

---

[2] Plaintiff argues that BAM's FinCEN registration is irrelevant because FinCEN updated its definition of "money transmitter" to include the precise term "money transmission services" only after November 12, 1999. (Opp. at 8.) It is Plaintiff's argument that is irrelevant. Whether and when FinCEN updated its definition has no impact on any analysis under 12 U.S.C. § 1843(k).

the GLBA. (Opp. at 3-4.) Such information has no bearing on BAM's MTD. BAM is subject to the GLBA because its activities are "financial in nature," which Plaintiff does not dispute. (See MTD at 3-4.) Whether BAM has complied with the GLBA is irrelevant to whether BAM is subject to the GLBA and, consequently, a "financial institution" exempt from BIPA.[3]

- **Second**, Plaintiff argues that BAM does not qualify as a "financial institution" under 12 U.S.C. § 1843(k)(5). (Opp. at 6-7.) Plaintiff misunderstands the statutory framework. Section 1843(k)(5) is not an "express limitation[]" on the scope of the GLBA or what constitutes a "financial institution" under the statute (Opp. at 6) but rather gives the Federal Reserve Board the authority to deem activities not covered by § 1843(k)(4) to be "financial in nature," 12 U.S.C. § 1843(k)(5). BAM's activities are covered by § 1843(k)(4) – not § 1843(k)(5). (MTD at 5-8.)

- **Third**, Plaintiff argues that BAM does not fall within BIPA's "financial institution" exemption because there is no federal agency with general rulemaking authority over cryptocurrency markets. (Opp. at 9-11.) Nowhere does BIPA state that a financial institution must be subject to the jurisdiction of a federal agency with rulemaking authority in order to be exempt from BIPA. See 740 ILCS 14/25(c). Even if BIPA had such a requirement (and it does not), the relevant question would be whether there exists an agency with authority to promulgate privacy rules applicable to financial institutions under the GLBA. There are multiple such agencies, including the CFPB, FTC, and SEC. See 12 U.S.C. § 6804.[4]

---

[3] Plaintiff argues that "BAM did not self-proclaim that it was subject to the GLBA . . . until July 7, 2021." (Opp. at 3.) That misses the point. When BAM first announced that it was subject to the GLBA does not determine when BAM became subject to the GLBA.

[4] Plaintiff apparently bases this argument on Patterson v. Respondus, Inc., No. 20 C 7692, 2022 WL 860946 (N.D. Ill. Mar. 23, 2022). In Patterson, Lewis University argued that it was subject to BIPA's "financial institution" exemption based solely on an FTC rule stating that universities qualified as "financial institutions" under the GLBA. Id. at *21. The court determined that it was not bound by the FTC rule, however, because the FTC's GLBA rulemaking authority over universities was uncertain following the Dodd-Frank Act of 2010 (which transferred certain

3

## II. BAM'S TOU ARE ENFORCEABLE, AND PLAINTIFF IS BOUND BY THE CLASS ACTION WAIVER AND CHOICE-OF-LAW PROVISIONS.

Plaintiff argues that "BAM concedes" that its TOU are unenforceable "browsewrap." (Opp. at 16.) Plaintiff has it exactly wrong. The FAC and its incorporated documents establish that Plaintiff validly assented to BAM's TOU. Specifically, the FAC alleges that Plaintiff created an account with BAM. (FAC ¶ 26.) BAM's TOU describe the three steps involved in creating an account. (Ex. D. at 5.) The third and final step is that a user, like Plaintiff, must accept the TOU. (Id.) The FAC does not allege anything to the contrary. Rather, the FAC alleges only that Plaintiff was "not required to scroll through these Terms of Use during the account creation process and proper assent was not otherwise obtained." (FAC ¶ 40.) By accepting BAM's TOU as part of the account creation process – even if not required to scroll through the TOU before clicking "Accept" – Plaintiff validly assented to the TOU. (MTD at 11-12.) In other words, BAM's TOU are "clickwrap"; and it is Plaintiff who concedes that "clickwrap" agreements are enforceable. (Opp. at 17-18 (collecting cases).)

In a last-ditch attempt to defeat the enforceability of BAM's TOU, Plaintiff pleads a series of new allegations in his opposition that are nowhere alleged in the FAC: (1)"Plaintiff was never, at any time, asked or required to click any button or make any other affirmative manifestation of consent to the TOU" (Opp. at 15); (2) "[BAM] never even alerted Plaintiff to the very existence of the TOU" (id. at 17 (emphasis omitted)); and (3) "the only indication that the TOU would govern the transaction at all is in the TOU itself, which was never presented to

---

rulemaking authority to the CFPB). Id. at *21-22. In this case, however, BAM is not relying on any agency determination that it qualifies as a "financial institution" so the reasoning of Patterson does not apply. Moreover, contrary to what Plaintiff suggests, Patterson does not stand for the general proposition that financial institutions must be subject to the rulemaking authority of a federal agency to fall within BIPA's "financial institution" exemption. Nor could it, given the plain text of BIPA. (See supra at 3.)

4

Plaintiff" (id.). Those allegations, however, directly contradict the TOU incorporated by reference into the FAC. (FAC ¶ 40.) Since Plaintiff makes his new allegations for the first time in his opposition and they are inconsistent with the FAC, this Court need not consider them. See Nelson v. Sotheby's Inc., 115 F. Supp. 2d 925, 929 (N.D. Ill. 2000). Even if this Court were to consider Plaintiff's new allegations, however, BAM's TOU trump them. See Bogie v. Rosenberg, 705 F.3d 603, 609 (7th Cir. 2013); see also Bytska v. Swiss Int'l Air Lines, Ltd., No. 15-CV-483, 2016 WL 792314, at *3 (N.D. Ill. Mar. 1, 2016).

In short, Plaintiff validly assented to BAM's TOU. As a result, this Court should enforce the TOU's class action waiver and choice-of-law provisions. **First**, Plaintiff makes no other argument at all to challenge the enforceability of the class action waiver provision (Opp. at 19) and, therefore, concedes that the provision applies. **Second**, Plaintiff argues that the California choice-of-law provision in BAM's TOU should not be enforced because it would violate Illinois' fundamental policy and because Illinois has a materially greater interest in the litigation than California. (Id. at 18-19.) Yet two of the three cases cited by Plaintiff in support of his argument – Hogan v. Amazon.com, Inc., No. 21 C 3169, 2022 WL 952763, at *3 (N.D. Ill. Mar. 30, 2022), and Patterson, 2022 WL 860946, at *11 – are clearly inapposite because they concerned Washington, not California, choice-of-law provisions. The third, In re Facebook Biometric Information Privacy Litigation, 185 F. Supp. 3d 1155, 1169 (N.D. Cal. 2016), is neither applicable nor persuasive for the reasons described in the MTD. (See MTD at 14 n.11.)

## CONCLUSION

For the foregoing reasons and those in BAM's opening brief, this Court should dismiss Plaintiff's claims as to BAM with prejudice. Plaintiff already has amended his complaint once in response to BAM's initial motion to dismiss. Further amendment would be futile, and this Court should not permit Plaintiff to amend his complaint again.

5

Dated:  May 13, 2022                                         Respectfully submitted,


                                                                              */s/ Daniel Roeser*
Daniel Roeser (admitted *pro hac vice*)
droeser@goodwinlaw.com
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.:  +1 212 813-8800
Fax:  +1 212 355-3333

Brendan R. Blake (admitted *pro hac vice*)
bblake@goodwinlaw.com
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.:  +1 617 570 1000
Fax:  +1 617 523 1231

Megan D. Bettles (admitted *pro hac vice*)
mbettles@goodwinlaw.com
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
Tel.:  +1 415 733 6000
Fax:  +1 415 677 9041


*Attorneys for Defendant BAM Trading Services Inc.*

**CERTIFICATE OF SERVICE**

    I, Daniel Roeser, an attorney, hereby certify that, on May 13, 2022, I caused the foregoing to be electronically filed via the Court's CM/ECF system, which effected service on all counsel of record.

                                                  */s/ Daniel Roeser*
                                                  Daniel Roeser