## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

| | |
|---|---|
| KAMIL KUKLINSKI, individually, and on behalf of similarly situated individuals, | Case No. 3:21-cv-01425-SPM |
| Plaintiff, | Hon. Stephan P. McGlynn |
| v. | |
| BINANCE CAPITAL MANAGEMENT CO., LTD. d/b/a BINANCE, BAM TRADING SERVICES INC. d/b/a BINANCE.US, and JUMIO CORPORATION, | |
| Defendants. | |

**REPLY IN SUPPORT OF JUMIO CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## INTRODUCTION

Jumio respectfully asks the Court to dismiss the claims against it with prejudice for the reasons explained in its motion and below. Pursuant to Local Rule 7.1(c), Jumio states that exceptional circumstances necessitate this reply brief because Kuklinski mischaracterizes the law and Jumio's arguments and relies on a decision that was issued after Jumio filed its motion.[1]

## ARGUMENT

**A.     The GLBA exception bars Kuklinski's claims against Jumio.**

"Nothing" in the Illinois Biometric Privacy Act ("BIPA") can "apply in any manner" to a financial institution that is subject to the Gramm-Leach-Bliley Act of 1999 (the "GLBA"). 740 ILCS 14/25(c). Kuklinski's claims against Jumio would require the Court to apply BIPA to BAM, which is unlawful because BAM is a financial institution subject to the GLBA. This fatal defect cannot be cured by amendment, so the dismissal should be with prejudice because "it is clear that amendment would be futile." *Doermer v. Callen*, 847 F.3d 522, 528 (7th Cir. 2017).

**1.     BAM is a financial institution and thus is subject to BIPA's GLBA exception.**

The GLBA defines "financial institution" to include entities whose business is either (1) "exchanging, transferring, investing for others, or safeguarding money," or (2) "money transmission" services. 15 U.S.C. § 6809(3)(A); 12 U.S.C. § 1843(k)(4)(A). BAM qualifies because it exchanges, transfers, and safeguards fiat currency and provides domestic money transmission services as to fiat currency. *See* ECF No. 55 at 5–7; ECF No. 65 at 1–2. Separately, BAM also qualifies under the first definition because, by operating a "cryptocurrency exchange," Am. Compl. ¶¶ 1, 5, 18, 25, BAM is "exchanging" and "transferring" money. Cryptocurrency is "[a] digital or virtual currency that is . . . designed to function as a medium of exchange." *Cryptocurrency*, BLACK'S LAW DICTIONARY (11th ed. 2019). It is therefore "money," which is "something generally accepted as a medium of exchange, a measure of value, or a means of payment." MERRIAM-WEBSTER DICTIONARY, https://www.merriam-

---

[1] *See Sosa v. Onfido, Inc.*, No. 20-CV-4247, 2022 WL 1211506, at *2 (N.D. Ill. Apr. 25, 2022).

webster.com/dictionary/money. BAM further qualifies under the second definition, because it is engaged in "money transmission" services both by transmitting money in the form of cryptocurrency, and by accepting and transmitting "currency . . . or other value that substitutes for currency." 31 C.F.R. § 1010.100(ff)(5) (defining "money transmission services"). Judicially noticeable facts support the conclusion that BAM is a financial institution. *See* ECF No. 53-5 (BAM registration).

Kuklinski's arguments that BAM is *not* a financial institution are strawmen, wrong on the facts, or wrong on the law. He first argues that cryptocurrency is not "money" because it is not "legal tender." *See* ECF No. 61 at 4–8. But the GLBA does not use the phrase "legal tender," it uses the word "money," and "[t]he cardinal rule is that words used in statutes must be given their ordinary and plain meaning." *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000). Money is defined and understood to mean something that is generally accepted as a medium of exchange. Crypto*currency* is a virtual currency designed to function as a medium of exchange. The clear overlap between these terms has led at least one court to find that "Bitcoin clearly qualifies as 'money' . . . [because] Bitcoin can be easily purchased in exchange for ordinary currency, acts as a denominator of value, and is used to conduct financial transactions." *United States v. Faiella*, 39 F. Supp. 3d 544, 545 (S.D.N.Y. 2014). Cryptocurrency is money, so BAM is a financial institution because it exchanges money and engages in money transmission services.

Kuklinski next asserts, incorrectly, that the Board of Governors of the Federal Reserve System did not issue an order by 1999 establishing that BAM's cryptocurrency exchange activity is closely related to banking. *See* ECF No. 61 at 7–8. But Section 225.86(a)(2)(v) of the Code of Federal Regulations expressly states that activities that the Board has "determined by regulation in effect on November 12, 1999" *include* "money transmission." 12 C.F.R. § 225.86(a)(2)(v). And while cryptocurrency exchanges may not have existed in 1999, they fall comfortably within the broader "money transmission" category identified in 1999. There is no statutory basis to construe "money transmission" to be limited to only include activities that existed in 1999.

Finally, Kuklinski appears to argue that BIPA's GLBA exception applies only to those

financial institutions that are *also* the subject of express rules promulgated under the GLBA. *See* ECF No. 61 at 9. But BAM *is* subject to rules promulgated under the GLBA because it is a "financial institution." For example, like all other financial institutions, BAM is subject to the GLBA's privacy rule. *See* 16 C.F.R. § 313.1(a) (stating purpose of rule as governing the treatment of nonpublic personal information about consumers by "financial institutions" as defined in 12 U.S.C. § 1843(k)). Kuklinski's position that more is required—i.e., that BAM must be subject to rules that apply specifically and exclusively to cryptocurrency exchanges—adds conditions that appear nowhere in BIPA's text and is contradicted by numerous decisions describing BIPA's GLBA exception. *See, e.g.*, Order at 2, *Jane Doe v. Nw. Univ.*, No. 21 C 1579 (N.D. Ill. Feb. 22, 2022), ECF No. 31 (dismissing claims against university "because it is a financial institution") (attached to Jumio's motion to dismiss at ECF No. 53-4); *Mosby v. Ingalls Mem'l Hosp.*, 2022 IL App (1st) 200822, ¶ 44 (BIPA does not "apply to financial institutions").[2]

### 2. Applying BIPA to Jumio would apply it to BAM, which the statute prohibits.

Kuklinski's claims against Jumio are based solely on his allegations that BAM incorporated Jumio's technology into its mobile application and website to verify his identity. Am. Compl. ¶ 9. But BAM is a financial institution subject to the GLBA, and to apply BIPA to Jumio under these facts would be to apply BIPA to BAM "in any manner." 740 ILCS 14/25(c). For example, in order to find that Jumio violated BIPA, this Court would need to hold that BIPA requires Jumio to give notice and obtain consent *through the BAM application or website*. That would plainly apply BIPA in some manner to BAM, either by mandating changes to BAM's application or website or by enjoining its integration of Jumio's software, which Kuklinski himself alleges is "integrated" in the BAM application. Am. Compl. ¶¶ 19, 24. BIPA's GLBA

---

[2] Kuklinski's reliance on *Patterson v. Respondus, Inc.*, No. 20 C 7692, 2022 WL 860946 (N.D. Ill. Mar. 23, 2022) is misplaced. There, the court declined to dismiss BIPA claims against a university that argued it was a "financial institution" by virtue of pronouncements by the Federal Trade Commission ("FTC") because the court was unconvinced that the FTC had rulemaking authority. But here, there is no need to look to the opinion of an agency because the plain text of the GLBA makes clear that BAM is a financial institution.

exception precludes any application of BIPA—either directly or indirectly—to a financial institution subject to the GLBA. To apply BIPA to Jumio under these facts would effectively apply it to BAM, as is expressly forbidden by the statute.

**B.     Kuklinski's claims fail because BIPA does not apply extraterritorially.**

Kuklinski does not (and cannot credibly) dispute that BIPA does not apply extraterritoriality. Neither the Amended Complaint nor Kuklinski's opposition identifies *any* conduct by Jumio in Illinois that could give rise to a claim under BIPA. The fact that *Kuklinski* downloaded the BAM application and signed up to become a BAM user after verifying his identity through the BAM application does nothing to show conduct by Jumio in Illinois. And the fact that Jumio is a service provider that allegedly "collected biometric data on behalf of [BAM]," Am. Compl. ¶ 39, distinguishes both cases on which Kuklinski relies in his opposition. *See Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1101–02 (N.D. Ill. 2017) (alleging users uploaded photos directly to defendant's website / application); *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *6 (N.D. Ill. Sept. 15, 2017) (same). By contrast, courts considering cases that *are* similar to this one have dismissed claims against business-to-business service providers. *See, e.g.*, *McGoveran v. Amazon Web Servs., Inc.*, C.A. No. 20-1399, 2021 WL 4502089, at *4 (D. Del. Sept. 30, 2021) (dismissing claims based on voiceprint services provided to non-parties); *Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1091 (N.D. Ill. 2019) (same as to timekeeping software provided to non-parties). This Court should do the same.

**C.     Jumio has complied with BIPA section 14/15(a).**

Jumio's Privacy Policy satisfies BIPA section 14/15(a) because it is publicly available and specifies that Jumio will retain biometric data "for the amount of time requested by the Jumio customer through which you used Jumio's identity verification service" but not (i) after its relationship with that customer terminates or (ii) more than "three (3) years after the [customer] informs Jumio that its last interaction with you has occurred." *See* ECF No. 53 at 11. Kuklinski asserts this is not enough, because the policy is "open-ended and is entirely contingent on the actions of a third party." ECF No. 62 at 6. But Jumio is a service provider, which means that it

acts at the direction of its customers (like BAM) and does not itself have an ongoing relationship with users like Kuklinski. And in this situation, the *best* way for Jumio to comply with BIPA is by accounting for its service-provider role. Indeed, courts have recognized as much in other contexts. *See, e.g.*, *Ronquillo v. Doctor's Assocs., LLC*, No. 21 C 4903, 2022 WL 1016600, at *3 (N.D. Ill. Apr. 4, 2022) (observing that service providers could comply with BIPA by "requiring Ronquillo's employer, as a contractual precondition . . . to obtain its employees' written consent to" collection by service providers) (citation omitted). So too here: Jumio complies with BIPA by implementing a retention policy that accounts for its role as a service provider.

**D.  Applying section 14/15(b) to Jumio in this case would violate the First Amendment.**

The allegations here show that Kuklinski knew his biometrics were being "recorded" for purposes of identification. *See* Am. Compl. ¶¶ 25, 28, 29, 30, 31, 58. And Kuklinski's opposition does not dispute his awareness. Accordingly, the First Amendment bars his claims because the government does not have a sufficient interest (under either strict or intermediate scrutiny) to require Jumio to do more in the face of actual knowledge and acquiescence. This distinguishes the cases in Kuklinski's opposition. *See Sosa*, 2022 WL 1211506, at *2 (alleging "almost no notice whatsoever"); *In re Clearview AI, Inc., Consumer Priv. Litig.*, No. 21-CV-0135, 2022 WL 444135, at *2 (N.D. Ill. Feb. 14, 2022) (alleging covert collection from the Internet).

Kuklinski also relies on *Sosa* to argue that Section 14/15(b) does not regulate speech or trigger the First Amendment at all. But *Sosa* is unpersuasive. *Sosa* held that BIPA does not restrict speech based on *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937 (7th Cir. 2015), which considered a law banning "the acquisition of personal information from a single, isolated source." *Id.* at 948. But BIPA does not restrict a single source of information; rather, like the eavesdropping law cited in Jumio's motion and distinguished in *Dahlstrom*, it restricts *any* collection of biometric data unless its strictures are satisfied. *See Am. Civ. Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012). It therefore restricts speech.

## CONCLUSION

Jumio respectfully asks the Court to dismiss Kuklinski's claims against it with prejudice.

-6-

Dated: May 13, 2022                                 Respectfully submitted,


                                                    */s/ Susan D. Fahringer*

                                                    Susan D. Fahringer
                                                    Nicola C. Menaldo (*Pro Hac Vice*)
                                                    Anna Mouw Thompson (*Pro Hac Vice*)
                                                    **PERKINS COIE LLP**
                                                    1201 Third Avenue, Suite 4900
                                                    Seattle, WA  98101-3099
                                                    Telephone: (206) 359-8000
                                                    Facsimile: (206) 359-9000
                                                    SFahringer@Perkisncoie.com
                                                    NMenaldo@Perkinscoie.com
                                                    AnnaThompson@perkinscoie.com

                                                    Debra R. Bernard
                                                    **PERKINS COIE LLP**
                                                    110 North Wacker Drive
                                                    34th Floor
                                                    Chicago, IL 60606
                                                    Telephone: (312) 324-8400
                                                    Facsimile: (312) 324-9400
                                                    DBernard@perkinscoie.com

                                                    *Attorneys for Defendant Jumio Corporation*

**CERTIFICATE OF SERVICE**

    I hereby certify that, on May 13, 2022, a copy of the foregoing was filed electronically and sent to all counsel of record by operation of the Court's ECF System.

/s/ Susan D. Fahringer