IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| KAMIL KUKLINSKI, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>BINANCE CAPITAL MANAGEMENT CO, LTD. d/b/a BINANCE, BAM TRADING SERVICES INC. d/b/a BINANCE.US and JUMIO CORPORATION,<br><br>    Defendants. | Civil Action No. 3:21-cv-01425-SPM<br><br>Judge:   Hon. Stephen P. McGlynn |

**ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS**

The parties having stipulated to the entry of this Order, and the Court otherwise being advised in the premises;

IT IS ORDERED that the following provisions and conditions shall govern the parties compliance with the procedures and obligations for the exchange and production of hard-copy documents and electronically stored information ("ESI") in the format set forth below. The Parties agree:

**I.     PRODUCTION OF HARD-COPY DOCUMENTS**

    **1.     Format.**  Hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). Each image will have a file name that is the unique Bates number of that image. The database load file should contain the

following fields: "BegBates," "EndBates," "BegAttach," "EndAttach," "PageCount," "Pages," "Confidentiality," "Redacted," "Withheld Placeholder," "Privilege Asserted," "Production Volume," and "Custodian." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color, and color is necessary to understand the meaning of the content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-rotation" should be turned on during the OCR process.

## II.     PRODUCTION OF ESI

**1.     Format.** ESI will be produced to the requesting Party in a form ready to load to an electronic discovery platform. For all file types other than those identified in Section II.3, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image. Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (*i.e.*, portrait to portrait and landscape to landscape). The imaged data shall retain all attributes of the native file, such as document breaks, to the extent reasonably practicable. To the extent reasonably practicable, produced TIFF images

will show all text and images that are visible, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent available within a document in its native file format, shall, to the extent reasonably practicable, also be imaged so that such content is viewable on the image file. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party, which may include native format, or a combination of native and TIFF formats.

Except for documents that have been redacted, the full text of each electronic document shall be extracted from the native file ("Extracted Text") and produced with each text file corresponding to a single document in the production. The Extracted Text shall be in ASCII text format (or Unicode text format if the text is in a foreign language) and named with a unique Bates Number (i.e. the unique Bates Number of the first page of the document followed by .txt). For redacted documents and hard copy documents, text shall be provided for each document utilizing Optical Character Recognition ("OCR") technology. All text, whether extracted or OCR-based, shall be produced on a document-level basis, meaning that there shall be one text file for each document. All text shall also be provided with the load file. All text files shall be named with the BegBates of the produced document to which the text file relates.

2. **Parent-Child Relationships.** The Parties agree that if any part of an Email or its attachments is responsive, the entire Email and substantive attachments

will be produced, except any attachments that must be withheld or redacted on the basis of privilege or work product protection.  To the extent reasonably practicable and technologically possible, the relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved.  To the extent reasonably practicable and technologically possible without undue burden or cost, the child-document should be consecutively produced immediately after the parent-document.  Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

      3.    **Native Files.**  The Parties agree that ESI shall be produced as TIFF images consistent with the format described in Section II.1 with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 1 hereto.  The exception to this rule shall be spreadsheet-application files (*e.g.*, G Suite Sheets or Excel), presentation files (*e.g.*, G Suite Slides or PowerPoint), personal databases (*e.g.*, MS Access), and multimedia audio/visual files such as voice and video recordings (*e.g.*, .wav, .mpeg, and .avi), for which all ESI items shall be produced in native or other agreed upon format upon reasonable request.  In the case of personal database (*e.g.*, MS Access) files containing confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production.  When producing the above file types in native format, the producing Party shall produce a single-page TIFF slip sheet indicating that a native item was produced.  The corresponding load file shall include NativeFile information for each

native file that is produced. The Parties agree to meet and confer to the extent that there is data in database application files, such as SQL, to determine a reasonable form of production of usable data. Through the pendency of the Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

4.     **De-Duplication.**  Each Party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents is not acceptable. De-duplication should be done across the entire collection (global de-duplication) and the CustodianAll field should list each custodian, separated by a semicolon, who was a source of that document and the LogicalPathDup field will list each file path, separated by a semicolon, that was a source of that document. Should the CustodianAll or LogicalPathDup metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents should be produced prior to substantial completion of the document production.

5.     **Search and Review.**     The Parties may use search terms and other limiters, including by way of example only, date ranges and email domains in

metadata fields, as a means of limiting the volume of information to be reviewed for responsiveness. To the extent that search terms are used to identify responsive ESI, the producing Party will notify the requesting Party of its intent to use search terms and disclose to the requesting Party (i) an initial list of search terms the producing Party intends to use and (2) whether the producing Party intends to use different search terms with different document custodians or sources. The Parties will meet and confer in good faith regarding the disclosure and formulation of appropriate search terms and protocols to cull unstructured ESI.

If, after the completion of initial search methodology negotiations, a requesting or producing Party determines that any search terms should be added to or removed from the initial search term list, then the requesting or producing Party shall advise the affected Parties in writing of the proposed change(s) to the search term(s) and of the reason(s) for the proposed change(s).

This ESI protocol does not address or resolve any other objection to the scope of the Parties' respective discovery requests.

6. **Technology Assisted Review (or "Predictive Coding").** Technology Assisted Review ("TAR"), as defined herein, shall mean and refer to a process of machine learning to assist in the categorization and ranking for review of a collection of documents using a computerized system that utilizes the decisions that a Party, or its counsel, has made on a smaller subset of the collection and then applies those decisions to the balance of the document review population. The use of search terms will not preclude the Parties' use of other reasonable review tools, including, TAR. The Parties agree that a producing Party is best situated to evaluate the

procedures, methodologies, and technologies appropriate for producing their own hard-copy and ESI. If a producing Party intends to use TAR to cull documents for review and production, the producing Party shall disclose the TAR software that will be used, as well as whether a TAR 1.0 or TAR 2.0 (CAL) workflow will be implemented. When the producing Party determines that further review of documents in the TAR population is disproportionate, the producing Party will disclose the validation processes used to support ceasing review.

Nothing in this ESI Protocol prevents a Party from reviewing and analyzing information identified by search terms and/or TAR to determine whether that information is responsive to a request for production and withholding documents determined to be non-responsive. Further, the mere fact that a document hit on or is captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation.

**7.  Metadata/Database Load Files.**  ESI shall be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto, that can be loaded into a commercially acceptable electronic discovery platform (e.g. Relativity). The first line of each delimited data file must contain a header identifying each data field name (i.e., header row). The metadata produced should have the correct encoding to enable preservation of the documents' original language. To the extent metadata does not exist, is not reasonably accessible or available for any documents produced, or would be unduly burdensome to provide,

nothing in this Order shall require any Party to extract, capture, collect, or produce such data.

All ESI should be produced with an image load file (.opt) linking each page in the production to a single document record. Each TIFF in a production must be referenced in the corresponding image load file.

**8.   Email Collection and Processing.**

a. *Email Threading.* The Parties may use email thread suppression to avoid review of duplicate information. Only the final-in-time email need be produced, provided that all content in previous emails, including attachments, is contained within the final message such that no unique content is removed as a result of the threading process. For avoidance of doubt, if a thread member contains any additional data that is not contained in the final-in-time email (including without limitation attachments), it must be separately produced.

b. *Email Domains.* Producing Parties may utilize an ESI search process to identify and exclude from review and production categories of clearly non-responsive documents, such as emails from domains typically associated with junk email (*i.e.,* retailer advertising and newsletters or alerts from non-industry sources).

**9.   Password-Protected Files.** The Parties will make reasonable efforts to ensure that encrypted or password-protected documents and ESI are opened and/or decrypted prior to running any search terms and/or TAR so they can be successfully processed for review and production. To the extent encrypted or password-protected Documents are successfully processed, the Parties have no duty to identify further the prior encrypted status of such Documents. To the extent security protection for

such Documents and ESI produced in document families cannot be successfully processed despite reasonable efforts, the producing Party shall produce a slip-sheet placeholder in place of the encrypted file and populate the "Withheld Placeholder" metadata field.

10. **Embedded Objects.** To the extent reasonably practicable and technologically possible without undue burden or cost, substantive embedded files shall be produced as attachments to the document that contained the embedded file, with the parent-child relationship preserved. The substantive embedded files and the original document containing the embedded files will all be produced in accordance with the formats agreed upon herein (*e.g.*, Excel files as native files, etc.). The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field. The Parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

11. **Compressed File Types.** Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

12. **Structured Data.** To the extent a response to discovery requires production of ESI in a database, the Parties will meet and confer regarding methods of production. The Parties will consider whether relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

13. **Encryption.** To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, the

producing Party shall transmit the encryption key or password to the receiving Party, under separate cover, contemporaneously with sending the encrypted media.

14. **Redactions.** To the extent native spreadsheets require redactions, unless technologically unfeasible, a native redaction tool shall be used to implement the redactions and shall be produced in native format.

15. **Phasing**. The Parties will produce responsive ESI on a rolling basis, but make every effort to produce documents as expeditiously as possible. If either Party feels production has been unreasonably delayed, the Parties agree to confer via telephone or in person to attempt to reach a mutually agreeable consensus prior to court involvement.

16. **Privilege Log Production.** Documents withheld from a production pursuant to an attorney-client, work product, or other applicable privilege or immunity, shall be identified on a privilege log, which shall be provided by the producing Party within 30 days of production in a format that can be easily searched and sorted (*e.g.,* Excel). For each document withheld, the producing Party may provide a "Hybrid Categorical Privilege Log" with the following information:

   a. Extracted metadata (Custodian, CustodianAll, EmailSubject, Title, DateSent, To, From, CC, BCC, Author, FileName, DateMod, DateCreated, and DocExtension) to the extent it is applicable and/or reasonably available for the ESI being withheld and does not reflect the privileged and protected information;

   b. Attorneys and their staff in the To, From, CC, and BCC metadata fields shall be identified by using symbols, such as an asterisk, within the log itself;

   c. A listing of the privilege source for each entry if not apparent in the To, From, CC, and BCC fields;

      d.      A listing of any and all applicable categories from the predetermined and agreed upon privilege category descriptions; and

      e.      The type and nature of the privilege asserted (*e.g.*, attorney-client privilege, work product doctrine, etc.).

17. **Protocol for Partially Privileged or Protected Documents.** If only a portion of a responsive document, including, without limitation, E-mail, is claimed to be privileged or protected, the producing Party shall furnish a redacted version of the responsive document, removing only the part(s) thereof claimed to be privileged or protected from disclosure. The producing Party shall include documents that are redacted for privilege on the privilege log, with the same information required for fully withheld privileged documents.

18. **Protocol for Challenging Privilege Logs.** Following the receipt of a privilege log, a requesting Party may identify, in writing (by Bates/unique identification number), the particular documents that it believes require further explanation. The producing Party shall endeavor to respond to such a request within 14 days. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court.

19. **Rule 502(d).** Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding, whether inadvertent or otherwise, shall not, for the purposes of this or any other federal or state proceeding, constitute a waiver by the producing Party of any privilege applicable to those documents, including the attorney-client privilege, attorney work product protection, or any other privilege or

protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing Party and all physical and digital copies destroyed, and its production shall not constitute a waiver of such protection.

20. **Modification**. This protocol may be modified by stipulation of the Parties or by the Court for good cause shown.

**IT IS SO ORDERED**.

Dated: June 27, 2023

*s/Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**United States District Judge**

*/s/ Kyle Shamberg* (with consent)

Joel D. Beckwith
Shane M. Moskop
FREEARK, DENNIS, MURPHY & MOSKOP, P.C.
115 W. Washington Street, P.O. Box 546
Belleville, IL 62222-0546
jbeckwith@freeark.com
smoskop@freeark.com
618-233-2686 – 618-233-5677 (fax)

Katrina Carroll
Kyle Shamberg
LYNCH CARPENTER, LLP
111 W. Washington Street, Suite 1240
Chicago, IL 60602
katrina@lcllp.com
kyle@lcllp.com
312-750-1265 – 773-598-5609 (fax)

*Attorneys for Plaintiff and the Putative Class*

*/s/ Anna Mouw Thompson*

Susan D. Fahringer
Nicola C. Menaldo (Pro Hac Vice)
Anna Mouw Thompson (Pro Hac Vice)
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
SFahringer@Perkinscoie.com
NMenaldo@Perkinscoie.com
AnnaThompson@perkinscoie.com
Telephone: (206) 359-8000
Facsimile: (206) 359-9000

Debra R. Bernard
PERKINS COIE LLP
110 North Wacker Drive, 34th Floor
Chicago, IL 60606
DBernard@perkinscoie.com
Telephone: (312) 324-8400
Facsimile: (312) 324-9400

*Attorneys for Defendant Jumio Corporation*

*/s/ Daniel Roeser*

Daniel Roeser (admitted *pro hac vice*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
DRoeser@goodwinlaw.com
Telephone: (212) 813-8800

Sylvia R. Ewald (admitted *pro hac vice*)
GOODWIN PROCTER LLP
520 Broadway, Suite 500
Santa Monica, CA 90401
SEwald@goodwinlaw.com
Telephone: (424) 252-6400

Brendan R. Blake (admitted *pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
BBlake@goodwinlaw.com
Telephone: (617) 570-1000

Megan D. Bettles (admitted *pro hac vice*)
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
MBettles@goodwinlaw.com
Telephone: (415) 733-6000

*Attorneys for Defendant BAM Trading Services Inc.*

**Appendix 1: ESI Metadata and Coding Fields**

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact, Cellphone, or All*) | Field Description |
|---|---|---|
| BegBates | All | Beginning page Bates number. |
| EndBates | All | Ending page Bates number |
| BegAttach | All | Beginning page of attachment range (First production Bates number of the first document of the family). |
| EndAttach | All | Ending page of attachment range (Last production Bates number of the last document of the family). |
| AttachmentCount | Email | The number of attachments to an email. |
| Custodian | All | Custodian name (ex. John Doe). |
| DupCust, CustodianOther, or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | All ESI Items | The directory structure of the original file(s). Any container name is included in the path. |
| LogicalPathDup | Email Edoc | The file paths from the locations in which the duplicate documents were stored in the usual course of business. |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. (mm/dd/yyyy format) |
| TimeSent | Email | Time email was sent. |
| TimeZoneUsed[2] | All | Time zone used to process data during document collection and processing. |
| ReceiveTime | Email | Time email was received. |
| ReceiveDate | Email | Date email was received. (mm/dd/yyyy format) |
| DateMod | Email, Edoc | Date the document was modified. (mm/dd/yyyy hh:mm:ss format)[3] |
| To | Email | All recipients that were included on the "To" line of the email. |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, the Parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol.

[2] ESI items should be processed in a matter that preserves their existing time, date, and time-zone metadata. Parties agree that the entirety of each Party's ESI should be processed using a single zone.

[3] ESI items shall be processed as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact, Cellphone, or All*) | Field Description |
|---|---|---|
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created. (mm/dd/yyyy hh:mm:ss format) |
| FileName | Email, Edoc | File name of the edoc or email. |
| DocExt | Email, Edoc | File extension of the document. |
| File Size | Email, Edoc | Size (in kilobytes) of the source native file. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Confidentiality | All | Indicates if document has been designated as "Confidential" under the Protective Order. |
| Page Count | All | Indicates the number of pages within the document |
| Production Volume | All | Production Volume Name |